1   SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
    Sanjiv N. Singh, Esq. (SBN 193525)
2   1700 S. El Camino Real Suite 503
    San Mateo, CA 94402
3   Phone: (650) 389-2255
    Email: ssingh@sanjivnsingh.com
4
    INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
5   Michael B. Indrajana, Esq. (SBN 258329)
    1700 S. El Camino Real Suite 503
6   San Mateo, CA 94402
    Phone: (650) 597-0928
7   Email: michael@indrajana.com

8   Attorneys for Plaintiff MICHAEL BISCH

9                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
10

11  MICHAEL BISCH, an individual,              Case No.: 2:23-cv-00455-MCE-DB

12                    Plaintiff,

13  vs.                                        **PLAINTIFF'S OPPOSITION TO DEFENDANT
                                               YOLO COUNTY ET AL'S 12(B)(6) MOTION
14  COUNTY OF YOLO, CALIFORNIA, a public       TO DISMISS**
    corporation; CITY OF WEST SACRAMENTO, a
15  public corporation; CITY OF DAVIS, a public **[Fed. R. Civ. Pro. 12(b)(6)]**
    corporation; CITY OF WOODLAND, a public
16  corporation; ANGEL BARAJAS, an individual;  Judge: Hon. Morrison C. England
    OSCAR VILLEGAS, an individual; CHAD RINDE,  Hearing Date:   TBD
17  an individual; AARON LAUREL, an individual; KEN Time:            TBD
    HIATT, an individual; MICHAEL WEBB, an      Dept. No.:      7
18  individual; DONALD SAYLOR, an individual; and
    DOES 1 through 50, inclusive,
19
                      Defendants.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................... 1

   A.   Plaintiff Bisch's employment with YFB .............................................. 1

   B.   Plaintiff Bisch's protected activities under the First Amendment starting in 2019 ........................... 1

   C.   Defendants' Harassment and Retaliation against Plaintiff Bisch's Exercise of His Free Speech......... 2

   D.   Allegations regarding the individual Defendants' concerted actions to violate Plaintiff Bisch's constitutional rights ................................................................................ 5

III.    LEGAL STANDARD ................................................................................. 8

IV.     ARGUMENT ............................................................................................. 8

   A.   FIRST AMENDMENT RETALIATION THEORY ............................... 8

      1.   Factor 1: Plaintiff Bisch Engaged in Constitutionally Protected Activity ............................ 9

      2.   Factor 2: Plaintiff Bisch was Subjected to Adverse Action by Defendants ............................ 9

      3.   Factor 2: Defendants' Action Would Have Chilled a Person of Ordinary Firmness from Continuing to Engage in the Protected Activity ........................................................ 10

      4.   Factor 3: There was a Substantial Causal Relationship Between the Constitutionally Protected Activity and the Adverse Action ....................................................... 10

         a.   The Complaint Alleges Facts to Show Temporal Proximity of Retaliation and Protected Conduct ...................................................................... 11

         b.   The Complaint Alleges Sufficient Facts to Show Defendants' Expressed Opposition to the Speech ............................................................................ 12

         c.   The Complaint Alleged Facts to Demonstrate that the Explanation was Pretextual .......... 13

      5.   Whether Plaintiff Bisch Acted as a Private citizen or as the Executive Director of YFB is Irrelevant to the First Amendment Retaliation Analysis........................................ 13

   B.   PROCEDURAL DUE PROCESS VIOLATION UNDER FOURTEENTH AMENDMENT ....... 13

1.  The Complaint has Alleged Sufficient Facts to Support a claim for Procedural Due Process Violation 13

    a.  The Complaint has Sufficiently Alleged that Plaintiff Bisch has a Property Interest in Employment with YFB in Connection with His Employment Contract with YFB ..................... 14

    b.  The Complaint has Sufficiently Alleged that Defendants were Responsible for the Deprivation of Plaintiff Bisch's Property Right in Anticipated Further Employment ................. 14

C.  SUBSTANTIVE DUE PROCESS VIOLATION UNDER FOURTEENTH AMENDMENT ....... 15

1.  Plaintiff Bisch's Liberty Interest Was Implicated when Defendants Falsely Accused Bisch of Moral Turpitude ................................................................................................................................. 15

2.  The Complaint has Sufficiently Alleged Facts that Defendants' Actions Were Clearly Arbitrary and Unreasonable ................................................................................................................................. 17

D.  NO QUALIFIED IMMUNITY SHOULD APPLY IN THE FIRST AMENDMENT RETALIATION CLAIM AND BOTH PROCEDURAL AND SUBSTANTIVE DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT ........................................................... 17

1.  Legal Standard for Qualified Immunity ........................................................................................ 17

2.  No Qualified Immunity on the First Amendment Retaliation Claims ............................................. 18

3.  No Qualified Immunity on the Fourteenth Amendment Due Process Violation Claims.................. 19

V.  CONCLUSION ..................................................................................................................................... 19

# TABLE OF AUTHORITIES

## U.S. SUPREME COURT CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987)......................................................................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) .............................................................. 8

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ................................................................... 14

*Conn v. Gilbert*, 526 U.S. 286 (1999) ................................................................................. 15

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)........................................................ 17

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)........................................................................... 13

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................................ 16

*Greene v. McElroy*, 360 U.S. 474 (1959) ............................................................................ 14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................................ 18

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ................................................................. 8

*Hope v. Pelzer*, 536 U.S. 730 (2002)................................................................................... 18

*Paul v. Davis*, 424 U.S. 693 (1976) .................................................................................... 16

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................................................... 18

*Saucier v. Katz*, 533 U.S. 194 (2001) .................................................................................. 18

*Siegert v. Gilley*, 500 U.S. 226 (1991)................................................................................ 16

*United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) ......................... 16

## U.S. COURT OF APPEALS CASES

*AE ex rel. Hernandez v. City of Tulare*, 666 F.3d 631 (9th Cir. 2012).............................. 8

*Balistieri v. Pacifica Police Dept.*, 901 F. 2d 696 (9th Cir. 1990) .................................... 8

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010) .................................................... 9

*Capp v. County of San Diego*, 940 F.3d 1046 (9th Cir. 2019) ........................................... 15

*Coszalter v. City of Salem,* 320 F.3d 968 (9th Cir. 2003) ................................................ 10, 11, 19

*DiMartini v. Ferrin*, 889 F.2d 922 (9th Cir. 1989), amended, 906 F.2d 465 (9th Cir. 1990), cert. denied, 111 S. Ct. 2796 (1991)................................................................................................................................... 19

*Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007)..................................................... 16

*Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465 (9th Cir. 1991)..................................... 19

*Ford v. City of Yakima*, 706 F3d. 1188 (9th Cir. 2013) .............................................................. 19

*Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017)................................................... 18

*Hufford v. McEnaney*, 249 F.3d 1142 (9th Cir. 2001)................................................................. 16

*Hughes v. Kisela*, 862 F.3d 775 (9th Cir. 2016).......................................................................... 17

*Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001)...................... 11

*Krainski v.State ex rel. Bd. of Regents,*616 F.3d 963 (9th Cir. 2010) ......................................... 16

*Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997)....................................................... 18

*Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018)..................................................... 17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .............................. 8

*Mendocino Envt'l Cntr. v. Mendocino City*, 192 F.3d 1283 (9th Cir. 1999) ................................ 10

*Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016)....................................................................... 9

*Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) ...................................................... 15

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ......................................................................... 10

*Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996)........................................................................... 18

*Roth v. Veteran's Admin. of United States* 856 F.2d 1401 (9th Cir. 1988).................................. 16

*Schwartzman v. Valenzuela*, 846 F.2d 1209 (9th Cir. 1988)........................................................ 11

*Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008)............................................................... 13, 15

*Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994) ....................................................................... 19

*Starr v. Baca*, 652 F.3d 1202 (9th. Cir. 2011)............................................................................ 8

*Stretten v. Wadsworth Veteran's Hospital*, 537 F.2d 361 (9th Cir. 1976).................................. 15

*Ulrich v. City & Cty of S.F.*, 308 F.3d 968 (9th Cir. 2002) ........................................................ 16

*Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 1401 (9th Cir. 1988)....................................... 15

## U.S. DISTRICT COURT CASES

*Addison v. City of Baker City, et al.,* 258 F.Supp.3d 1207 (D. Or. 2017)........................................ 8, 9

*Schneider v. County of Sacramento*, 2014 WL 4187364 (E. D. Cal. 2014) .................................... 16

*Webb v. City of Trinity*, F. Supp.2d 1018 (E.D. Cal. 2010)............................................................ 16

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................... 8

PLAINTIFF'S OPPOSITION TO DEFENDANT YOLO COUNTY ET AL'S 12(B)(6) MOTION TO DISMISS
CASE NO.: 2:23-CV-004455-MCE-DB

## I.   INTRODUCTION

In 2021, as plead in the Complaint and now as set forth with significant evidence even before discovery has commenced, governmental entity Defendants and certain elected officials and appointed officials targeted Yolo Food Bank's then executive director Plaintiff Michael Bisch based on the views he expressed regarding a then pending legislative mandate SB 1383. Dkt. No. 1 (the "Complaint") at ¶30-34. Ultimately, due to the pressure Defendants placed on the YFB Board and pretextual, defamatory claims of alleged unethical conduct, Plaintiff Bisch was wrongfully terminated for exercising his first amendment right of free speech to criticize and shed light on Defendants' efforts to not comply with the state mandate set forth in SB 1383. *Id.* at ¶ 36.

Against this backdrop, it is clear that established Ninth Circuit precedent and other federal case law permit recovery where government and/or state actors retaliate against private citizens for exercising their First and/or Fourteenth Amendment Rights. Moreover, the same body of law confirms that individual Defendants have no qualified immunity when the rights that they violated are clearly established under law at the time of the violation. As such, the Court should deny the entirety of Defendants' Motion to Dismiss under Rule 12(b)(6).

## II.   FACTUAL BACKGROUND

Relevant portions of the Complaint are summarized here. Defendants' Motion fails to properly characterize the material allegations.

### A.   Plaintiff Bisch's employment with YFB

The Complaint alleges that Plaintiff Bisch became Yolo Food Bank's ("YFB") interim executive director on or around January 2018, and then as the ongoing executive director. Complaint at 2:11-15; ¶ 26 (11:15-17). The Complaint also alleges that Plaintiff Bisch has an employment agreement with YFB, and that he received salary and benefits from his position. The Complaint at ¶¶ 63-64.

### B.   Plaintiff Bisch's protected activities under the First Amendment starting in 2019

The Complaint alleges that by September 2019, Plaintiff Bisch was speaking publicly on issues related to the Food Assistance Mandates (including SB 1383 compliance). Complaint at ¶ 28. Specific key instances in which Plaintiff Bisch exercised his first amendment right to criticize the entity Defendants (Yolo County, City of Davis, City of Woodland, and City of West Sacramento) in connection with their implementation of the Food Safety Mandate include, but are not limited to, the following instances: **(i) Complaint at ¶ 28:** Plaintiff Bisch speaking at CalRecycle about County and City recalcitrance**; (ii) Complaint at ¶ 29-30:** Food Assistance Mandate kickoff event with CalRecycle with Plaintiff Bisch giving presentations on his views of SB

1383 compliance**; (iii) Complaint at ¶33(a)-(f):** numerous instances in 2021 where Plaintiff Bisch repeatedly challenged the County and Cities on their approach to SB 1383, and ultimately rejected, with the YFB Board, the County's and City's funding proposal, which angered and upset elected and appointed officials; and **(iv) Complaint at ¶ 34:** allegations that starting in February 2022, though open public discourse had died down, Plaintiff Bisch exercised his First Amendment rights to report through email and portals what he believed was noncompliance by Defendants to State regulators (including CalRecycle).

### C.  Defendants' Harassment and Retaliation against Plaintiff Bisch's Exercise of His Free Speech

As plead, the retaliatory campaign to silence Bisch began with conduct ranging from reaching out to the YFB Board to silence Bisch to direct attacks on Bisch's character: **(i) Complaint at ¶33 (f):** On September 20, 2021, Plaintiff Bisch received a call from an irate then YFB Board Chairperson Tom Muller, after Muller had received angry calls from Defendant Saylor and from YFB Board member Kate Stille (who seems to have received yet another call from Defendant Saylor). Defendant Saylor was apparently upset with Plaintiff Bisch because Bisch had purportedly declined the Yolo SWM Enterprise's "untenable" funding proposal. **(ii) Complaint at ¶33 (i):** From October 2021 to January 2022, Plaintiff Bisch was pressured by the YFB Board to stop speaking publicly to government agencies or third parties about SB 1383. For example, on November 4, 2021, a meeting was convened by Muller and Stille, and unexpectedly a Yolo County official (then County of Yolo HHSA Service Center Branch Director Nolan Sullivan) attended. In the meeting, in front of the Yolo County official, Plaintiff Bisch was cautioned about his communications with the community.

By March of 2022, the Complaint alleges that  the campaign to silence and ultimately oust Bisch increased in intensity and scope exponentially.[1] Specifically, the Complaint alleges that Defendants began making false statements about Plaintiff Bisch blackmailing and/or threatening other third party nonprofits, and used these false accusations as a pretext to improperly withhold and redirect the ARPA funding previously approved for YFB to other non-profits unless the YFB Board did something about the "Bisch problem": **(i) Complaint at ¶ 35(b):** The Complaint alleges that on March 11, 2022, Defendants Rinde (Yolo County), Webb (City of Davis), Laurel (City of West Sacramento) and Hiatt (City of Woodland) met where Laurel falsely made statements to the other attendees at the meeting, accusing Plaintiff Bisch of extorting a West

---

[1] Discovery conducted in the state court matter and California Public Records Act (CPRA) Requests have further confirmed the basis for these allegations. *See* Singh Declaration in Support of Plaintiff Michael Bisch's Opposition to Motion to Strike at ¶ 5, Exhibit 4.

Sacramento nonprofit (i.e., the Mercy Coalition, as further detailed below), alleging that Plaintiff Bisch and YFB were allegedly "terminating or threatening to terminate subcontracts with partner nonprofits who consider or accept funding from the County related to the expansion of the edible food recovery program." It is alleged that these officials then agreed at this meeting among themselves to reach out to their respective Yolo County supervisor(s) to silence and put pressure on Plaintiff Bisch; (ii) **Complaint at ¶ 35(c):** On March 11, 2022, in response to Plaintiff Bisch requesting an update on the expected ARPA funding for YFB, Defendant Laurel, City Manager for West Sacramento, copying Woodland city manager Defendant HIATT, responded with a one-sentence email, stating "Yes, I would like an explanation for why YFB has attempted to extort one of our local service providers.;" **(iii) Complaint at ¶ 35(e):** On March 13, 2022, West Sacramento Mayor Martha Guerrero called Defendant Laurel who confirmed that he had indeed sent Plaintiff Bisch the "extortion" email and doubled down on his accusation by telling the Mayor he had an "unimpeachable source" for his extortion accusation; **(iv) Complaint at ¶ 35(f):** On March 14, 2022, in a telephone call between Plaintiff Bisch, then YFB Board members Daniel Ramos and Kate Stille, Mr. Ramos informed Plaintiff Bisch and Stille that he had received a call from Defendant Laurel accusing Plaintiff Bisch of "cutting off" food supplies to the Mercy Coalition. Ramos said he had received a call from Defendant Webb with a similar accusation. Stille said she too had received such a call from Defendant Hiatt; **(v) Complaint at ¶ 35(h):** On the afternoon of March 15, 2022, then YFB Board chairperson Muller called Plaintiff Bisch to warn him that YFB would be receiving a "nasty" letter from Defendant Yolo County's Board of Supervisors about the Mercy Coalition incident; **(vi) Complaint at ¶ 35(j):** On March 17, 2022, Abound Food Care CEO Mike Learakos (Yolo SWM Enterprise's consultant), confirmed in a phone conversation with Plaintiff Bisch that Defendant Yolo County contacted Feeding America HQ in Chicago because Defendant Yolo County was upset with YFB, specifically by Plaintiff Bisch's public comments on SB 1383. It is alleged that Yolo County officials were making defamatory statements and were communicating them directly to third parties including Learakos and Sjostrom, and once again were also attempting to silence him by discrediting him with third parties and his employer; **(vii) Complaint at ¶ 35(k):** The Complaint alleges that on March 17, 2022, Defendant Chad Rinde, CFO of Yolo County, initiated an email exchange with Plaintiff Bisch making various outrageous accusations against Bisch regarding the Food Assistance Mandates and that Bisch had improperly threatened a local nonprofit (i.e. Mercy Coalition). It is specifically alleged that such accusations were copied internally among Yolo County officials, and/or on information and belief were disseminated to third party entities or individuals. Plaintiff Bisch stated unequivocally in reply that Defendant RINDE's accusations were inaccurate; **(viii)**

**Complaint at ¶ 35(l):** Also on March 17, 2022, then YFB Board Chairperson Muller received a call from then Yolo County Supervisor Defendant Saylor pressuring YFB to terminate Plaintiff Bisch; **(ix) Complaint at ¶ 35(n):** On March 18, 2022, Defendant Rinde emailed a formal letter from the County Board of Supervisors to Plaintiff Bisch and to Plaintiff Bisch's direct supervisors, the YFB Board, which letter threatened to redirect ARPA funding from YFB to other local nonprofits if the Board did not take action against YFB management (i.e. Bisch). The County's counsel, Philip Pogledich ("County Counsel"), and the city managers of all four incorporated cities in Yolo County, were copied on the County Supervisors' March 18, 2022 letter and were also copied on the accompanying email from Defendant Rinde (i.e., they all had actual knowledge of the letter contents); **(x) Complaint at ¶ 35(o):** On March 19, 2022, a YFB Board member contacted Bisch with a scheme he and another YFB Board person had concocted proposing to put Plaintiff Bisch on a "pretend" paid leave while they would conduct a "pretend" 2-3 week investigation to appease the Yolo County Board of Supervisors and the rest of the Yolo SWM Enterprise. Plaintiff Bisch refused to participate in the scheme; **(xi) Complaint at ¶ 35(p):** On March 24, 2022, then YFB Board Chairperson Muller called Plaintiff Bisch saying (paraphrasing closely): "Staff needs to ease off on 'the Food Assistance Mandates' for a little bit, so that we can get that ARP funding secured." **(xii) Complaint at ¶ 35(q):** On March 30, 2022, shockingly and in continued retaliation against Plaintiff Bisch, then County of Yolo Interim HHSA Director Sullivan told Plaintiff Bisch the Yolo County Board of Supervisors was not prepared to release any of the previously approved ARPA funding to YFB until they saw how the YFB Board would respond to the Supervisors' March 18, 2022 letter which demanded action against YFB management (i.e. Bisch). Defendant Yolo County, specifically through Defendant Rinde, then delayed a previously scheduled American Rescue Plan Act grant agreement meeting between Defendant Yolo County and Plaintiff Bisch. Plaintiff Bisch was told by Sullivan, "Yeah, County Supervisors are upset and want their pound of flesh;" **(xiii) Complaint at ¶ 35(s):** Also on April 22, 2022, in an effort to appease Defendants, the YFB Board sent a response letter to the County Board of Supervisors. The letter went on to say Plaintiff Bisch was being replaced as the "primary liaison" between YFB and the government Defendants; and **(xiv) Complaint at ¶ 35(u):** On April 27, 2022, during a YFB Board meeting via online video conference (where the meeting was at least partially recorded), three YFB Board members stated they had received calls that very day from Yolo County Board of Supervisors Angel Barajas, and Oscar Villegas, demanding "retribution" against Bisch and then YFB Programs Director Zane Hatfield. Then YFB Board Chairperson Muller went on to make a statement to the effect that YFB's continuing employment of Plaintiff Bisch and the employment of then YFB Program Director Hatfield (who had participated in voicing

concerns about Defendants), was no longer tenable. As the plead in the Complaint, this campaign ultimately culminated in the termination of Bisch. Complaint at ¶ 36.

**D.  Allegations regarding the individual Defendants' concerted actions to violate Plaintiff Bisch's constitutional rights**

The Complaint alleges specific conduct associated with each of the individual Defendants as follows:

**(i) Defendant Angel Barajas**: The Complaint alleges that Defendant Barajas, in a concerted effort with Defendants Villegas, Saylor, Rinde, Laurel, Hiatt, and Webb, signed a March 18, 2022 correspondence addressed to the YFB Board, and made false and defamatory accusations that Plaintiff Bisch was improperly threatening local partner non profits.  These statements were communicated to various third parties, including but not limited to YFB Board members, various county and city employees, and third-party community stakeholders. Complaint at ¶ 48(a)(i). The Complaint further alleges that separately, Defendant BARAJAS had one or more phone conversations with YFB Board members and propagated the false and defamatory narrative about Plaintiff Bisch "extorting" third-party nonprofits, and improperly demanded the YFB Board members to seek retribution against Plaintiff Bisch by improperly terminating him from his position as the executive director of YFB. Specifically, in one example of such conduct, on April 27, 2022, Defendant BARAJAS called then YFB Board Chairperson Muller to pressure the YFB Board to terminate Plaintiff Bisch after Defendant YOLO COUNTY received the April 24, 2022 YFB Board letter. Complaint at ¶ 48(a)(ii).

**(ii) Defendant Oscar Villegas**: The Complaint alleges similar conduct for Defendant Villegas including signing the same March 18, 2022 letter. Complaint at ¶ 48(b)(i). The Complaint further alleges that Defendant Villegas had several phone conversations with YFB Board members and propagated the false and defamatory narrative about Plaintiff Bisch extorting third-party nonprofits, and improperly sought retribution against Plaintiff Bisch by pressuring the YFB Board to terminate him from his position as executive director of YFB. On April 27, 2022, Defendant Villegas called then YFB Board Member Daniel Ramos to pressure the YFB Board to terminate Plaintiff Bisch after Defendant Yolo County received the April 24, 2022 YFB Board letter. Complaint at ¶ 48(b)(ii).

**(iii) Defendant Donald Saylor**: The Complaint alleges that Defendant Saylor, in addition to the specific allegations in ¶ 33-35 of the complaint, in a concerted effort with Defendants Barajas, Villegas, Rinde, Laurel, Hiatt and Webb, had one or more several meetings and/or phone conversations with YFB Board members and propagated the false and defamatory narrative about Plaintiff Bisch extorting third-party nonprofits, and improperly demanded the YFB Board members to seek retribution against Plaintiff Bisch by improperly terminating him from his position as executive director of YFB. Complaint at ¶ 48(c)(i). The

Complaint also provides a specific example of Defendant Saylor's conduct, i.e., on March 17, 2022, Yolo County Supervisor Defendant Saylor called YFB Board Chairman Muller to pressure termination of Plaintiff Bisch. Complaint at ¶ 48(c)(ii).

(iv) **Defendant Chad Rinde**: The Complaint alleges that Defendant Rinde, as alleged in ¶ 35 of the Complaint, in a concerted effort with Defendants Barajas, Villegas, Saylor, Laurel, Hiatt and Webb, circulated a false and defamatory narrative that YFB through Plaintiff Bisch was improperly terminating or threatening access to food for third party food recovery agencies. Defendant Rinde circulated this false narrative among County officials, YFB Board members and on information and belief, also possibly to third-party community stakeholders. Complaint at ¶ 48(d)(i). The Complaint also alleges that separately, Defendant Rinde intentionally delayed steps in the ARPA funding approval process for YFB until the County saw how the YFB Board would respond to their demands to deal with Plaintiff Bisch. Defendant Rinde's conduct was relayed to Plaintiff Bisch by another Yolo County employee, who described the conduct as "County Supervisors are upset and want their pound of flesh." Complaint at ¶ 48(d)(ii).

(v) **Defendant Aaron Laurel**: The Complaint alleges that, as alleged in ¶ 35 of the Complaint, in a concerted effort with Defendants Barajas, Villegas, Saylor, Rinde, Hiatt and Webb, Defendant Laurel began circulating the false and defamatory narrative that YFB through Plaintiff Bisch was improperly terminating or threatening access to food for third party food recovery agencies. Defendant Laurel, along with Defendants Hiatt, Webb and Rinde, deliberately made the concerted effort to call their respective County Supervisors to encourage Defendant Yolo County and its Supervisors to take action against Plaintiff Bisch for his public advocacy on the Food Assistance Mandates and his whistleblower activities. Defendant Laurel circulated this false narrative among County officials, City of West Sacramento officials, YFB Board members and on information and belief, possibly to third-party community stakeholders. Complaint at ¶ 48(e)(i). The Complaint further alleges that, separately, as alleged in ¶ 35 of the Complaint, Defendant Laurel had one or more phone conversations with YFB Board members (particularly with then YFB Board Member Daniel Ramos on or around March 14, 2022 as Ramos confided to Plaintiff Bisch) and propagated the false and defamatory narrative about Plaintiff Bisch extorting third-party nonprofits, and improperly demanded the YFB Board members to seek retribution against Plaintiff Bisch by improperly terminating him from his position as the executive director of YFB. Complaint at ¶ (48)(e)(ii).

(vi) **Defendant Ken Hiatt**: The Complaint alleges that, as alleged in ¶ 35 of the Complaint, in a concerted effort with Defendants Barajas, Villegas, Saylor, Rinde, Laurel and Webb, Defendant Hiatt began

circulating the false and defamatory narrative that YFB through Plaintiff Bisch was terminating or threatening access to food for third party food recovery agencies that may opt-in to accept funding from the Yolo SWM Enterprise as part of the edible food recovery program as early as March 11, 2022. Defendant Hiatt, along with Defendants Laurel, Webb and Rinde, deliberately made the concerted effort to call their respective County Supervisors to encourage Defendant Yolo County and its Supervisors to take action against Plaintiff Bisch, on the pretext of addressing supposed improper conduct but in reality for his public advocacy on the Food Assistance Mandates and his whistleblower activities. Defendant Hiatt circulated this false narrative among City of Woodland officials, YFB Board members and on information and belief, possibly to third-party community stakeholders. Complaint at ¶ 48(e)(i). The Complaint further alleges that in at least one instance, Defendant Hiatt made such defamatory statements to YFB Board member Kate Stille on March 14, 2022, as alleged previously on ¶ 35 of the Complaint, in order to improperly pressure YFB Board members to silence and wrongfully terminate Plaintiff Bisch from his position as the executive director of YFB. Complaint at ¶ 48(e)(ii).

(vii) **Defendant Michael Webb**: The Complaint alleges that as alleged in ¶ 35 of the Complaint, in a concerted effort with Defendants Barajas, Villegas, Saylor, Rinde, Laurel and Hiatt, Defendant WEBB began circulating the false and defamatory narrative that YFB through Plaintiff Bisch was improperly terminating or threatening access to food for third party food recovery agencies. Defendant Webb, along with Defendants Hiatt, Laurel, and Rinde, deliberately made the concerted effort to call County Supervisors to encourage Defendant Yolo County and its Supervisors to take action against Plaintiff Bisch, on the pretext of addressing supposed improper conduct but in reality for his public advocacy on the Food Assistance Mandates and his whistleblower activities. Defendant Webb circulated this false narrative among City of Davis officials, YFB Board members and on information and belief, possibly to third-party community stakeholders. Complaint at ¶ 48(f)(i). The Complaint further alleges that, separately, as alleged in ¶ 35 of the Complaint, Defendant Webb had one or more phone conversations with YFB Board members and propagated the false and defamatory narrative about Plaintiff Bisch extorting third-party nonprofits, and improperly demanded the YFB Board members to seek retribution against Plaintiff Bisch by improperly terminating him from his position as the executive director of YFB. Complaint at ¶ 48(f)(ii).

The Complaint alleges that these individuals, including various Supervisors and government counsel acting on behalf of the entity Defendants, deprived Plaintiff Bisch of his constitutional rights by pressuring the

YFB Board to suppress Plaintiff Bisch's speech and, ultimately through the pressure of withholding financing from YFB, to wrongfully terminate Michael Bisch. Complaint at ¶ 49.

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Complaint "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). Even under the heightened pleading standard regime of *Iqbal* and *Twombly*, Rule 12(b)(6) analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 (1984). In making this context-specific evaluation, the Court **must** construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007); see also *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). see also *Starr v. Baca*, 652 F.3d 1202, 1212-1216 (9th. Cir. 2011) which clarified that factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Starr v. Baca*, 652 F.3d. 1202, 1216 (9th Cir. 2011) (emphasis added). This standard also applies to claims against municipal entities. *AE ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Finally, following *Balistieri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1990), the Complaint "should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

### IV. ARGUMENT

#### A. FIRST AMENDMENT RETALIATION THEORY

In their motion, Defendants contend that First Amendment liability cannot extend to a government official who causes the loss of *private* employment based on a private employee's protected speech. Dkt. No. 8-1 at 3:15-17. However, this is simply incorrect. As shown in a relatively recent district court decision *Addison v. City of Baker City, et al.,* 258 F.Supp.3d 1207 (D. Or. 2017) which analyzed 9th Circuit precedent, a private employee may seek recovery for First Amendment retaliation by a government official. The *Addison* court specifically relied on 9th Circuit guidance to conclude that government liability can be extended to loss of private employment and specifically cited to the 9th Circuit's decision in *Coszalter v. City of Salem*:

"In *Coszalter v. City of Salem,* the Ninth Circuit held that there is not "an exclusive, category-based limitation on the kind of retaliatory action that is actionable under the First Amendment," and that case does not allow the government "to take severe retaliatory actions—such as ... engaging in campaigns of harassment and humiliation—because those actions do not result in the loss of a valuable governmental benefit or privilege." 320 F.3d at 975–76. Indeed, the Ninth Circuit has recognized that "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment also."… (quoting *Bantam Books, Inc. v. Sullivan* , 372 U.S. 58, 67, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963))."

*Addison*, 258 F.Supp.3d at 1222.

In general, the Ninth Circuit has clarified that in order to prevail on a claim of First Amendment Retaliation, a plaintiff must prove "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Applying the standard set under *Mulligan* with the plausible pleading standard set forth in *Starr* and in view of the specific precedent set forth in *Addison* and *Coszalter* indicating a private employee can make this kind of claim, the Complaint has plead more than adequate factual details to support Plaintiff's claim of First Amendment Retaliation against Defendants.

### 1. Factor 1: Plaintiff Bisch Engaged in Constitutionally Protected Activity

As to the first element, which Defendant appears to concede, the Complaint has alleged in considerable detail Plaintiff Bisch's free speech, First Amendment activities as detailed in Section II-B, *supra*.

### 2. Factor 2: Plaintiff Bisch was Subjected to Adverse Action by Defendants

As to the second element, consistent with *Addison, Coszalter*, and *Mulligan*, the Complaint has also alleged in significant details the actions of the Defendants that cause injury to Plaintiff Bisch, which actions would chill a person of ordinary firmness from continuing to engage in that activity. Specifically, the Complaint first alleges the long history of a pattern of harassment and retaliatory behavior by Defendants culminating in a campaign to oust him as executive director of YFB (See Complaint at ¶ 33), including but not limited to the incidents alleged in the Complaint as reviewed in Section II-C and II-D, *supra*.

Second, and more importantly, the Complaint alleges the precise sequence of events in which Defendants exerted a targeted, concerted, and improper pressure (to silence and/or terminate Bisch) on specific members of the YFB Board who had significant personal business interests (agribusiness and real estate in

particular) with the governments of Yolo County, City of Davis, City of Woodland, and/or City of West Sacramento. Complaint at ¶ 33(a)-(i); ¶35(a)-(u). Specifically, the Complaint also alleges that Defendants began making false statements about Plaintiff Bisch blackmailing and/or threatening other third party nonprofits, and used these false accusations as a pretext to improperly withhold and redirect the ARPA funding previously approved for YFB to other non-profits unless the YFB Board did something about the "Bisch problem" as discussed in Sections II-C and II-D, *supra*. The Complaint also alleges that pressure exerted on YFB Board was real and immediate to Plaintiff Bisch's working condition: within 1 day of the letter, Plaintiff Bisch was approached by YFB Board members with a plan to put Plaintiff Bisch on a pretend paid leave to appease the Yolo County supervisors. Complaint at ¶ 35(o).

### 3. Factor 2: Defendants' Action Would Have Chilled a Person of Ordinary Firmness from Continuing to Engage in the Protected Activity

Following Ninth Circuit precedent, the test for whether Defendants' actions would chill a person of ordinary firmness from engaging in protected First Amendment activities is "generic and objective." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). Whether Plaintiff Bisch himself was, or would have been, chilled is **not** the test. *Mendocino Envt'l Cntr. v. Mendocino City*, 192 F.3d 1283, 1300 (9th Cir. 1999). In this case, the Complaint alleges real time actions of YFB Board members when faced with the March 18, 2022 letter – within 1 day of receiving the letter, YFB board members were attempting to put Plaintiff Bisch on a pretend paid leave to appease the Yolo County supervisors. Complaint at ¶35(o). In addition, Plaintiff Bisch was expressly informed by his employer on multiple occasions that government entities and elected officials were contacting the Board to take action against Bisch. Complaint at ¶ 33(i); ¶ 35(f), ¶ 35(h), ¶ 35(q), ¶ 35(t)-(u). Indeed, the complaint further alleges subsequent YFB board actions that show duress and chilling effect that ultimately led to Plaintiff Bisch's termination on May 31, 2023. Complaint at ¶ 35(p)-(u). The Complaint alleges that Plaintiff Bisch was terminated from his Executive Director position on May 31, 2022 as a result of Defendants' actions. Complaint at ¶ 36. It should be undisputed that the prospect of losing a job in a small city and/or county like Yolo would chill the First Amendment activities of a person of ordinary firmness.

### 4. Factor 3: There was a Substantial Causal Relationship Between the Constitutionally Protected Activity and the Adverse Action

The Ninth Circuit has listed three types of circumstantial evidence that a plaintiff may present in order to demonstrate a genuine issue of material fact on the issue of causation: (i) the temporal proximity of the retaliation and protected conduct; (ii) expressed opposition to the speech, or (iii) facts to demonstrate that the explanations were pretextual. *Coszalter v. City of Salem*, 320 F.3d 968, 975-77 (9th Cir. 2003), *citing Keyser v.*

*Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001); *see also Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988).

In their motion, Defendants argue that the Complaint fails to show most of the Defendants caused his job loss. Dkt. No. 8-1 at 5:14-15. However, as discussed below, the complaint alleges the actions of the each named individual defendants that taken together as a whole, supports a § 1983 First Amendment Retaliation claim under *Coszalter*. Specifically, the Complaint alleges that within 2 weeks of Plaintiff Bisch's termination, Yolo County signed the grant agreement with YFB to release the stalled $1,178,000 American Rescue Plan Act grant agreement that was improperly withheld by the supervisors in the March 18, 2022 letter. Complaint at ¶ 37. The proximity and sequence of events, as alleged in the Complaint, plausibly suggests that the March 18, 2022 letter withholding the funds from YFB had the sole purpose of pressuring YFB to terminate Plaintiff Bisch. Complaint at ¶ 35(a)-(u).

### a. The Complaint Alleges Facts to Show Temporal Proximity of Retaliation and Protected Conduct

The Ninth Circuit in *Coszalter* held that there is no *per se* rule of proximity: "Retaliation often follows quickly upon the act that offended the retaliator, but this is not always so…***We therefore reject any bright-line rule about the timing of retaliation. There is no set time beyond which acts cannot support an inference of retaliation...***" *Coszalter*, 3230 F.3d at 978.

Applying the rule set in *Coszalter* and the pleading standard set forth in *Starr*, the Complaint has alleged facts to show the close proximity between Plaintiff Bisch's speech and the ultimate retaliation that occurred: **(i) Complaint at ¶ 33(a)-(i)**: Defendants had repeatedly expressed their ire over the views expressed by Plaintiff Bisch, and went as far as trying to get his employer to muzzle him; (ii) **Complaint at ¶ 34(a)-(c):** As late as March 2022, immediately before the retaliatory campaign escalated, on February 11, 2022,  Plaintiff Bisch was reporting his concerns about Defendants' willful effort to not comply with the SB 1383 mandate to CalRecycle (in which Defendants Webb, Hiatt and Rinde were copied on the correspondence), and he also made a March 15, 2022 submission to the CalRecycle online portal, which led to an April 18, 2022 zoom video meeting with CalRecycle on April 18, 2022; **(iii) Complaint at ¶ 35(b):** The Complaint also alleges that during the same time period in March 2022, on March 11, 2022, Defendants Webb, Hiatt and Laurel met to discuss Plaintiff Bisch's public advocacy and began to make false statements about Plaintiff Bisch extorting other third-party nonprofits even though no such extortion took place. The Complaint then alleges that on the same day, March 11, 2022, Defendant Laurel openly accused Plaintiff Bisch (copying Defendant Hiatt) of extortion, writing "Yes, I would like an explanation for why YFB has attempted to extort one of our local

service providers." **(iv) Complaint at ¶ 35(k):** The Complaint alleges that on March 17, 2022, Defendant Rinde initiated an email exchange with Plaintiff Bisch making various outrageous accusations against Bisch regarding the Food Assistance Mandates, including the false and defamatory accusation that Plaintiff Bisch is extorting third-party nonprofits by terminating or attempting to terminate access to food for those food recovery agencies that may opt-in to accept funding from the entity Defendants**;  (v) Complaint at ¶ 35(l)**: The Complaint alleges that then Yolo County Supervisor Defendant SAYLOR called then YFB Board Chairman Muller to urge termination of Plaintiff Bisch**; (vi) Complaint at ¶35(n)**: The Complaint alleges that on March 18, 2022, Defendant RINDE sent an email correspondence attaching a formal letter from Yolo County's Board of Supervisors signed by Defendants Barajas and Villegas, cc'ing Yolo County Board of Supervisors (including Defendant SAYLOR), and Defendants Rinde, Laurel, Webb and Hiatt. A true and correct copy of the letter is attached as Exhibit A to the declaration of Defendant Barajas (Dkt. No. 9-2)**; (vii) Complaint at ¶ 36**: The Complaint alleges that Plaintiff Bisch was terminated from his position on May 31, 2022 by the YFB Board, with the primary reason stated by the YFB Board for the termination was that the community was upset with Plaintiff Bisch's communications**; (viii) Complaint at ¶ 37**: The Complaint alleges that within two weeks of Plaintiff Bisch's termination, Defendant Yolo County signed with YFB the stalled ARPA grant agreement that was improperly withheld by the County in the March 18, 2022 letter.

Taken altogether, the Complaint has alleged sufficient facts that would have put Defendants on notice as to the proximity of the retaliation with the protected conduct.

**b.  The Complaint Alleges Sufficient Facts to Show Defendants' Expressed Opposition to the Speech**

The Complaint alleges robustly that Defendants expressly objected to Plaintiff Bisch's speech. *See supra* at Section II(B)-(C). Moreover, the March 18, 2022 letter signed by Defendants Barajas and Villegas (copying the other Defendants Saylor, Rinde, Laurel and Hiatt ) expressly acknowledges Plaintiff Bisch's speech and simultaneously opposed Plaintiff Bisch's speech. Complaint at ¶ 35(n). As well, the Complaint alleges that on numerous occasions, Plaintiff Bisch was told by YFB board members that they received angry calls from Yolo County supervisors, and on April 27, 2022, three YFB Board members stated they had received calls from Defendants Barajas and Villegas demanding "retribution" against Plaintiff Bisch. Complaint at ¶ 35(f), ¶ 35(h), ¶ 35(q), ¶ 35(t)-(u); *see also supra* at Section II(D)(i)-(ii). As such, under *Starr*, the Complaint has sufficiently alleged facts that Defendants expressed opposition to Plaintiff Bisch's speech.

**c.   The Complaint Alleged Facts to Demonstrate that the Explanation was Pretextual**

The Complaint alleges that Defendants' March 18, 2022 letter was pretextual because on multiple occasions, several county officials expressly told Plaintiff Bisch and YFB board members that the County wanted its "pound of flesh" and "retribution" for Plaintiff Bisch's exercise of his speech by criticizing Defendants' local implementation of the SB 1383 food safety mandate. *See supra* at Section II(B) and II(C); *see also* Complaint at ¶¶ 33(i), ¶ ¶35(a)-(u). Indeed, the Complaint alleges that the County, through its officials, expressly communicated to Plaintiff Bisch and YFB Board members that the "nasty" letter was coming to them no matter what. Complaint at ¶ 35(h) and ¶ 35(l). The Complaint also alleges that the County's true intent was known to third-party non-profit executive directors outside of Yolo County who told Plaintiff Bisch that County officials were upset and were planning to seek retribution against Plaintiff Bisch. Complaint at ¶ 35(d) and ¶35(j). Taken altogether, under *Starr*, the Complaint has sufficiently alleged facts that Defendants' explanation for their actions against Plaintiff Bisch was pretextual.

**5.   Whether Plaintiff Bisch Acted as a Private citizen or as the Executive Director of YFB is Irrelevant to the First Amendment Retaliation Analysis.**

In their motion to dismiss, Defendants made an *arguendo* argument that Bisch is somehow a public employee because according to Defendants' logic, Yolo County so controlled YFB that it renders the County functionally Bisch's employee. Dkt. No. 8-1 at 4:18-20. This argument is defective because the Complaint never alleges that YFB is a public entity or functionally a Yolo County organization, and never alleges fact suggesting Bisch is a public employee. *See generally* Complaint.  The arguments is an improper attempt to fit Plaintiff Bisch into the public employee exception under *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

**B.   PROCEDURAL DUE PROCESS VIOLATION UNDER FOURTEENTH AMENDMENT**

The Due Process Clause of the Fourteenth Amendment "forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082; 1090-91 (9th Cir. 2008). Plaintiff Bisch alleges both procedural and substantive due process claims. To prevail on a procedural due process claim, a plaintiff must establish (i) a constitutionally protected liberty or property interest; (ii) a deprivation of that interest by the government; and (iii) the lack of adequate process. *Id.* at 1090.

**1.   The Complaint has Alleged Sufficient Facts to Support a claim for Procedural Due Process Violation**

In their brief, Defendants did not analyze any procedural due process case law on property interests in the context of private employment. As it turns out, the Ninth Circuit has held that the same test applies for both public and private employment property interest claims, namely that an employee "must show that he had more

than a 'unilateral expectation' of continued employment; he must demonstrate a 'legitimate claim of entitlement.'" *Merritt v. Mackey,* 827 F.2d 1368, 1371 (9th Cir. 1987), *quoting Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

### a. The Complaint has Sufficiently Alleged that Plaintiff Bisch has a Property Interest in Employment with YFB in Connection with His Employment Contract with YFB

More specifically, in the Ninth Circuit, in order for the court to determine whether due process requirements apply to an asserted interest, the Court initially looks to the nature of the interest at stake. *Merritt*, 827 F.2d at 1370 (citing *Roth*, 408 U.S. at 571). "It is indisputable that an individual may have a protected property interest in private employment." *Id.* "[T]he right to hold specific private employment and to follow a chosen profession free from reasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492 (1959). Applying *Greene*, the Ninth Circuit noted in *Merritt*: "[W]here the actions of private individuals operate to deprive an individual of his employment, a suit for interference with private contractual relationships would lie, but where government officials are involved, the nature of the interest at stake in private employment is a property interest." *Merritt*, 827 F.2d at 1371. Employees have a "property interest" in the terms and conditions of their employment if that interest is established "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S. Ct. 2701; see also *Merritt*, 827 F.2d at 1371.

As such, the Complaint has alleged that Plaintiff Bisch was employed as YFB's Executive Director at all times relevant in this action. Complaint at 2:12-15; 11:15-17. The Complaint also alleges that Plaintiff Bisch and YFB were in an economic relationship in which Plaintiff Bisch was employed as a full-time executive director at YFB, and received salary and benefits for his position. Complaint at ¶ 662. The Complaint also alleges that Defendants knew the existence of Plaintiff Bisch's employment agreement with YFB leading the nonprofit as its executive director. Complaint at ¶ 63. Under *Starr*, construing the allegations in the Complaint in the most favorable light to Plaintiff Bisch, it is plausible that there is an existence of a property interest in Plaintiff Bisch's continued employment at YFB, and that there is a reasonable expectation for continued employment based on Plaintiff Bisch's employment agreement with YFB that was violated due to Defendants' conduct.

### b. The Complaint has Sufficiently Alleged that Defendants were Responsible for the Deprivation of Plaintiff Bisch's Property Right in Anticipated Further Employment

As discussed above, once the Complaint sufficiently alleged a property interest in Plaintiff Bisch's continued employment with YFB, the Court then must evaluate whether the Complaint has sufficiently alleged

facts to show that Defendants were responsible for the deprivation of Plaintiff Bisch's employment. In this case, the legal framework set forth in *Merritt* is particularly persuasive. In *Merritt*, the plaintiff was a counselor at a non-profit corporation that contracted with Klamath County and Indian Health Services to provide treatment and support to patients. *Merritt*, 827 F.2d at 1369. He was then fired after the defendants in that case issued a report that further conditioned further funding on the non-profit on the requirement that Merritt be terminated. *Id.* at 1370. Merritt then sued under the Due Process Clause for deprivation of liberty and property. Critically, the Ninth Circuit held that the fact that the non-profit corporation, rather than government terminated *Merritt* was of no legal significance because the government set "***in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury***." *Merritt*, 827 F.2d at 1372 (9th Cir. 1987)

Applying *Merritt*, as outlined above in Sections II-C and II-D, *supra*, the Complaint has alleged in great detail the actions of each of the Defendants as to how they acted in concert with one another to falsely accuse Plaintiff Bisch of an act of moral turpitude, and to use such false accusations and pretext to improperly pressure the YFB Board to terminate Plaintiff Bisch. *See also* Complaint at ¶ 33(a)-(i); ¶ 35(a)-(u).

## C. SUBSTANTIVE DUE PROCESS VIOLATION UNDER FOURTEENTH AMENDMENT

To establish a substantive due process claim, a plaintiff, as a threshold matter, must show a governmental deprivation of life, liberty or property. *Shanks*, 540 F.3d at 1097; *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998); *Capp v. County of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019). Moreover, the plaintiff must show that the state action was arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare. *Shanks*, 540 F.3d at 1089 (stating that a "sudden change in course, malice, bias or pretext" suggests constitutional arbitrariness).

### 1. Plaintiff Bisch's Liberty Interest Was Implicated when Defendants Falsely Accused Bisch of Moral Turpitude

As a fundamental legal principle, there is a due process liberty interest "to choose one's field of private employment." *Conn v. Gilbert*, 526 U.S. 286, 291-92 (1999). In the Ninth Circuit, the liberty interest in a person's chosen field of private employment derives from the more general "interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustifiable label of infamy." *Stretten v. Wadsworth Veteran's Hospital*, 537 F.2d 361, 366 (9th Cir. 1976). The Ninth Circuit further held that "[O]ne's liberty interest is implicated . . . when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 1401, 1411 (9th Cir. 1988). Most importantly, the Ninth Circuit has held that the government implicates a

citizen's protectable liberty interests "when his or her 'good name, reputation, honor, or integrity' is at stake." *Roth v. Veteran's Admin. of United States,* 856 F.2d 1401, 1411 (9th Cir. 1988) (This citation will be described as "*Roth VA*" for the remainder of the brief to distinguish the case from the *Roth* Supreme Court decision).

In this case, the Complaint alleges that Defendants falsely accused Plaintiff Bisch of extorting third-party non-profit agencies on numerous occasions as alleged in Complaint at ¶¶ 35(c)-(h), (k), and (n), which could be reasonably construed in the most favorable light for Plaintiff Bisch under *Starr* as an accusation of moral turpitude, and therefore implicates Plaintiff Bisch's liberty interest as set forth under *Vanelli* and *Roth VA*. This is not an accusation of incompetence (which under *Roth VA* does not infringe on liberty interest), but rather was an accusation designed to prevent Plaintiff Bisch from working as a non-profit executive director anywhere with such a significant charge of moral turpitude (i.e., extorting other third-party nonprofit entities).

It should be noted that the infringement of liberty interest here based on accusations of moral turpitude is a distinct constitutional property interest from Plaintiff Bisch's first amendment right of free speech that is also violated by the Defendants. When a court is faced with several possible claims on the same set of facts, "[t]he proper question is not which Amendment controls but whether either Amendment is violated. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 50 (1993); *Webb v. City of Trinity*, F. Supp.2d 1018, 1027 (E.D. Cal. 2010); *Schneider v. County of Sacramento*, 2014 WL 4187364 at *5 (E. D. Cal. 2014). There is no overlap between here between the due process claims and first amendment claims.

This factual distinction separates Plaintiff Bisch's case from past precedent cited by Defendants in their brief. *See e.g., Paul v. Davis*, 424 U.S. 693 (1976) (plaintiff did not suffer from any employment loss as a result of the alleged defamatory statement by the state); *Siegert v. Gilley*, 500 U.S. 226 (1991) (following *Paul v. Davis* where the plaintiff did not lose his job as a result of the alleged defamatory statement by the state); *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007) (wrongful termination due to discrimination without accusation of moral turpitude in violation of equal protection clause); *Ulrich v. City & Cty of S.F.*, 308 F.3d 968 (9th Cir. 2002) (physician plaintiff resigning when faced with an adverse action alleging professional incompetence, not moral turpitude, that was retaliatory after he protested a decision by San Francisco Dept. of Health to lay off a class of physicians at the hospital); *Krainski v.State ex rel. Bd. of Regents,*616 F.3d 963 (9th Cir. 2010) (substantive due process claim was dismissed on the basis of qualified immunity without reaching the underlying constitutional question).

This is also distinguishable from the Ninth Circuit case *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) in which the Ninth Circuit held that under *Graham v. Connor*, 490 U.S. 386, 395 (1989), a First

Amendment retaliation claim preempted a substantive due process claim based on the same retaliatory discharge. Specifically, in *Hufford*, a former firefighter was wrongfully discharged after reporting that fellow firefighters had downloaded a large cache of hardcore pornographic files in the fire station's computer system, but there was never an allegation of moral turpitude against the plaintiff in *Hufford*. *Hufford*, 249 F.3d at 1144.

### 2. The Complaint has Sufficiently Alleged Facts that Defendants' Actions Were Clearly Arbitrary and Unreasonable

As extensively discussed above in Sections II-C and II-D, *supra*, the Complaint has alleged that Defendants actions to falsely accuse Plaintiff Bisch of moral turpitude, combined with the improper pressure exerted on YFB board members that ultimately lead to Plaintiff Bisch's wrongful termination, are arbitrary and unreasonable, and have no substantial relation to public health, safety, morals, or general welfare. Under *Starr*, these allegations are sufficient to support a claim that Defendants' actions were clearly arbitrary and unreasonable in light of the circumstances.

Finally, Defendants argue in their brief that substantive due process liability requires conduct by the defendant that "shocks the conscience," citing *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Dkt. No. 8-1 at 11:11-16. However, the *Lewis* Court carefully limited this test to circumstances where the state actor does not have time to deliberate, and in instances where the state actor does have time to deliberate, the deliberate indifference ("arbitrary or improper motive") test is more appropriate. *Lewis*, 523 U.S. at 836. Indeed, the Ninth Circuit has rejected arguments by Defendants to apply the "shocks the conscience" standard set forth in *Lewis* in inappropriate cases. *See e.g., Mann v. County of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018) (rejecting the "shocks the conscience" standard and applying the "arbitrary or improper motive" test in a § 1983 action alleging that county's custom and practice of subjecting children to invasive medical examinations). Defendants here had time to deliberate on their actions. See Sections II-C and II-D, *supra*

Thus, applying the pleading standard set forth in *Starr*, the Complaint has alleged sufficient facts to show that Defendants' actions were clearly arbitrary and unreasonable and violated Plaintiff's substantive due process rights. Complaint at ¶ 35(a)-(u); *see supra* at Section II(C) and II(D).

### D. NO QUALIFIED IMMUNITY SHOULD APPLY IN THE FIRST AMENDMENT RETALIATION CLAIM AND BOTH PROCEDURAL AND SUBSTANTIVE DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT

#### 1. Legal Standard for Qualified Immunity

Qualified immunity protects government officials from suits for money damages to the extent that the misconduct alleged "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hughes v. Kisela*, 862 F.3d 775, 782 (9th Cir. 2016). The standard set forth by the

United States Supreme Court is whether or not the rights alleged to be violated were "clearly established" at the time of the misconduct alleged. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); citing to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard is meant to give breathing room to officials that make reasonable but mistaken judgments, but does not spare "the plainly incompetent or those who knowingly violate the law." *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015); quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986); *see also Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003).

As such, qualified immunity analysis involves two questions: (1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. *Pearson*, supra, 555 U.S. at 232; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). A public official is not entitled to qualified immunity where the contours of the alleged violation were sufficiently clear that a reasonable official would understand that their actions violated that right. *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997); citing to *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996); see also *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Importantly, a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, supra, 483 U.S. at 741; quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); *see also Anderson, supra*, 483 U.S. at 640.

### 2.   No Qualified Immunity on the First Amendment Retaliation Claims

In applying the first element of the qualified immunity test, i.e., whether the defendant violated a constitutional right, as extensively discussed above, the Complaint has alleged at length how each of the individual Defendants retaliated against Plaintiff Bisch's exercise of his First Amendment freedom of speech by retaliating against him for his criticism of the County and City's non-compliance with the Food Assistance Mandates and/or SB 1383. *See* Section II-C and II-D, *supra*. As such, under *Starr*, this element has been satisfied.

The salient question in determining whether the application of qualified immunity is appropriate for Plaintiff Bisch's claim for first amendment violation is "whether the state of the law" when the conduct at issue occurred gave the Yolo County supervisors and Davis, Woodland, and West Sacramento city managers "fair warning" that bringing false allegations of abuse and neglect against Plaintiff Bisch in response to his exercise of free speech was unconstitutional. *Hope*, 536 U.S. at 741; *see also Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017). Under long-established case law, a private citizen has the right to be free from

governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future. *Sloman v. Tadlock*, 21 F.3d 1462, 1469-70 (9th Cir. 1994). More specifically, other courts have consistently denied qualified immunity against government actors that violated a private citizen's First Amendment protected speech to criticize them. See *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ( "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions for speaking out."); see also *Sampson v. County of Los Angeles*, 974 F.3d. 1012, 1022 (9th Cir. 2020), and *Ford v. City of Yakima*, 706 F3d. 1188, 1195 (9th Cir. 2013), both with similar holdings on First Amendment rights. In *Coszalter v. City of Salem,* 320 F.3d 968, 975-76 (9th Cir. 2003), the Ninth Circuit held that severe retaliatory actions including campaigns of harassment and humiliation could support as § 1983 claim for First Amendment retaliation claims.

As such, all of the Defendants should have known that taking retaliatory action against Plaintiff Bisch in retaliation for the expression of his views on SB 1383 violated his first amendment rights. Complaint at ¶ 35(a)-(u).

### 3. No Qualified Immunity on the Fourteenth Amendment Due Process Violation Claims

The Ninth Circuit in *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465 (9th Cir. 1991) established Plaintiff Bisch's property interest in his contractual arrangement as the permanent Executive Director with YFB. Complaint at 10:16-18. Specifically, government officials, including Defendants, have been on notice since *Federal Deposit* was decided in 1991, that interference with such an arrangement violates due process. Further, as *Merritt v. Mackey* reiterated in 1987, "[i]t is clearly established that state law or an independent source may create a property right in employment protected by the Due Process Clause." *Merritt*, 827 F.2d at 1373. Further, it was established in the Ninth Circuit, at all times relevant to Plaintiff Bisch's claims, that a private-sector employee like Plaintiff Bisch "has a clearly established constitutional right to be free from unreasonable government interference with his private employment*." DiMartini v. Ferrin*, 889 F.2d 922, 927 (9th Cir. 1989), amended, 906 F.2d 465 (9th Cir. 1990), cert. denied, 111 S. Ct. 2796 (1991). As such, Defendants cannot claim qualified immunity against the Fourteenth Amendment violations claimed here.

## V.  CONCLUSION

For the reasons stated above, Plaintiff requests that the Court deny Defendants' Motion to Dismiss for Failure to State a Claim. If the Court grants any part of the Motion, the Court should grant leave to amend.

DATED: June 13, 2023                    Respectfully Submitted by,

                                        /s/ Sanjiv N. Singh
                                        Sanjiv N. Singh
                                        SANJIV N. SINGH, A PLC

                                        /s/ Michael B. Indrajana
                                        Michael B. Indrajana
                                        INDRAJANA LAW GROUP, A PLC

                                        Attorneys for Plaintiff Michael Bisch

PLAINTIFF'S OPPOSITION TO DEFENDANT YOLO COUNTY ET AL'S 12(B)(6) MOTION TO DISMISS
CASE NO.: 2:23-CV-00455-MCE-DB