SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
Sanjiv N. Singh, Esq. (SBN 193525)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
Michael B. Indrajana, Esq. (SBN 258329)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Attorneys for Plaintiff MICHAEL BISCH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BISCH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF YOLO, CALIFORNIA, a public corporation; CITY OF WEST SACRAMENTO, a public corporation; CITY OF DAVIS, a public corporation; CITY OF WOODLAND, a public corporation; ANGEL BARAJAS, an individual; OSCAR VILLEGAS, an individual; CHAD RINDE, an individual; AARON LAUREL, an individual; KEN HIATT, an individual; MICHAEL WEBB, an individual; DONALD SAYLOR, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-00455-MCE-DB<br><br>**DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**<br><br>Judge: Hon. Morrison C. England<br>Hearing Date: TBD<br>Time:        TBD<br>Dept. No.:    7 |

I, Michael Bisch, hereby declare:

1.      I am the Plaintiff in the above captioned matter. I am submitting this declaration in support of Plaintiff's Opposition to Defendants' Motion to Strike. From January 2018 to May 31, 2022, I was employed by Yolo Food Bank as its executive director. I have personal knowledge of the facts stated in this declaration, and that, if sworn as a witness, I would be competent to testify thereto. I have used headings to make it easier to read for the Court or anyone reviewing this matter.

**My Employment Agreement with Yolo Food Bank.**

2.      On January 4, 2018, the YFB Board issued an employment offer letter signed by then Board President Tom Muller issued to me for the position of Interim Executive Director with an annual salary payable per regular payroll schedule, as well as other employee benefits including PTO, paid holidays, optional health insurance premium shared cost, and optional employee participation in a 403(b) retirement savings program. A true and correct copy of this employment letter is attached hereto as **Exhibit 1** [YOLO_000256-000258]. I accepted this offer letter by signing and returning the executed copy of the offer letter on January 8, 2018. As part of my role as interim executive director, the YFB Board attached an interim executive director's deliverables plan for me to perform and deliver in my capacity as Interim Executive Director from January 8, 2018 to December 31, 2019. A true and correct copy of these deliverable plans is attached hereto as **Exhibit 2** [YOLO_000271-000289] [TO BE FILED UNDER SEAL]. Before accepting the employment offer letter, I specifically negotiated a termination "for cause" only clause into my employment agreement, which YFB accepted and included. The "for cause" clause in my agreement, as shown in Exhibit 1, expressly stated that the "for clause" provision would continue "thereafter" i.e., even after my initial term completed. Pursuant to the Handbook rules which applied to all employees, while all other employees had by default an at will agreement, the Board and Executive Director could agree otherwise for any particular employee including myself and that is what we did. Attached as **Exhibit 3** is a copy of the excerpt of the Handbook permitting the Board and I to expressly agree that my employment would **not** be at will.

3.      On February 27, 2019, while still working under the terms of the interim executive director offer letter, the YFB Board, through Mr. Muller, orally offered to me two employment agreement amendments, changing the job title from "Interim Executive Director" to "Executive Director", and making my employment permanent. I accepted both amendments which became effective immediately.

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

4.     Separately, from time to time, the YFB Board increased my compensation. I accepted said increases in compensation in every instance it was offered to me by the YFB Board. The nature of my compensation and my position is a matter of public record. For example, the Yolo Food Bank website publishes YFB's IRS Form 990 filings in which my signature as Executive Director and the breakdown of YFB's payroll expenses on a given year. For example, the link to the 2020 YFB Form 990 filing is available at the following URL: http://yolofoodbank.org/wp-content/uploads/2022/08/990-Yolo-Food-Bank-FYE-6.30.2021-signed.pdf (last accessed June 13, 2023).

5.     Continuing in my role as executive director, and consistent with the ongoing agreement to continue as executive director, terminable only for cause, for agreed upon compensation and with agreed upon benefits, I successfully performed my tasks which was acknowledged by, among other things, my performance evaluation submitted by Elizabeth Schmitz on February 17, 2020, in which the performance report stated that I had an excellent year as Executive Director, and through my leadership, the finances of YFB had been stabilized [as of early 2020] and a more cohesive team had been developed, and the Board was looking forward to working with me in 2020. A true and correct copy of my 2020 performance review signed by Elizabeth Schmitz is attached hereto as **Exhibit 4** [*See e.g.*, YFB_000351]. This is clear evidence of the fact that my agreement terms were continued, whether by oral agreement or as implied by the combination of various written communications and conduct of the Board, following the conclusion of the Interim Executive Director year.

6.     By early 2020, as a result of my excellent performance as interim executive director, YFB had indeed transitioned me from an Interim Executive Director to a full-time Executive Director, a position I held until my wrongful termination on May 31, 2022 (*See e.g.*, Exhibit 3 at YFB_000348 YFB's January 2020 performance review of Michael Bisch in which it states that I was an Executive Director). Up until May 31, 2022 when I was wrongfully terminated from my executive director position, I faithfully worked and acted as YFB's executive director reporting directly to the YFB Board, and I was fully compensated for my time and effort by YFB.

7.     Some of the objectively measurable metrics of my work performance can be summarized as follows:

a.     Prior to my tenure, YFB only distributed 3.9 million pounds of food annually and on average raised funds in the amount of $1.6 million. During the final year of my tenure at YFB, YFB

distributed 12.6 million pounds of food (3x more than prior to my tenure), with a $6.2 million annual fundraising amount.

b. Prior to my tenure, YFB only had 24 staff members with average annual staff salary of $36,425.00. During my final year, YFB had over 50 staff members, with the minimum wage at YFB at $17.60 (well above State minimum), and average annual staff salary of $51,100.

c. Prior to my tenure, YFB's annual *Big Day of Giving* campaign only netted $34,161.55. In my final year, the Big Day of Giving netted $368,061, with Yolo Food Bank topping the regional BDOG leaderboard among 700 nonprofits participating in the metro Sacramento area including 103 nonprofits based in Yolo County.

8.    During my tenure as YFB executive director, YFB received numerous accolades and I was personally recognized for my work. For example, in 2018 the Davis Chamber of Commerce named me "Executive Director of the Year" and they selected the Food Bank "Nonprofit of the Year" in 2020 after we essentially acted as first responders during the pandemic. Similarly, in 2019, the Woodland Chamber of Commerce awarded the Food Bank "Business of the Year." And shortly after dramatically increasing the number of residents served via food distributions in the city of West Sacramento, the West Sacramento City Council in 2021 presented the Food Bank with a "Civic Leadership for Community" award. My other accomplishments during my tenure as the Executive Director of YFB included:

a. Leading an effective $5.1 million second capital campaign in 2018 resulting in a 300% larger food recovery warehouse and operations facility;

b. Elevating food security countywide by meeting the pandemic demand for food assistance that increased three-fold in a matter of weeks;

c. Creating and implementing a new home delivery program during the pandemic;

d. Increasing staff compensation to living wages, and getting voted "Best Places to Work" in 2020 by the Sacramento Business Journals;

e. Adding more than 250 new food access events at 25 distribution sites countywide via the "Eat Well Yolo" program connecting residents to free, fresh food through walk-up and drive-thru distributions in 2021;

f.  Garnering public support from important dignitaries and elected leaders deeply committed to food security including UC Davis Chancellor Gary May, U.S. Congressman John Garamendi, U.S. Congresswoman Doris Matsui, U.S. Congressman Mike Thompson, and many others; and

g.  Cultivating significant partnerships with entities working on innovative food security solutions such as the AI Institute for Food Systems and UC Innovation Institute for Food and Health.

9.  I was also expressly recognized by the YFB Board for the transformative work in taking YFB from a struggling entity to one of the premier nonprofits in the Northern California region.

**My Interactions with the Government from 2019 to 2021 Prior to SB 1383 Becoming Effective and Why the County and Cities Views Began to View Me as An Impediment to Their Views on SB1383.**

10.  During my tenure with Yolo Food Bank ("YFB"), the newly passed Short-Lived Climate Pollutant Reduction Law, often referred to as SB 1383, was passed on September 2016 with an effective date (i.e., the date on which compliance with the law was required) of January 1, 2022 with the purpose of feeding hungry Californians and reducing disposal of organic waste into landfills. As was my job and as was my right, after the law was passed and prior to January 1, 2022, I pursued the objectives of the SB 1383 mandates pertaining to feeding hungry Californians (the "Food Assistance Mandates"), and readily communicated my views and the views of other experts and professionals (such as William Schoen) in this field as to what was needed by YFB and what actions were required by the state, county, and cities with whom YFB regularly interacted and transacted. Beginning in June 2019, under my leadership, the YFB executive team began meeting with officials of the county and municipal governments (including cities of Davis, Woodland, Winters, and West Sacramento) to propose a collaborative process for developing a Food Assistance Mandates compliant, countywide edible food recovery and distribution program. The activities of the YFB executive staff (which included Joy Cohan, Corkey Mapalo, Zane Hatfield, Valerie Dennis) were fully known and disclosed to the YFB Board; I had regular discussions with the Board about the enormous opportunity presented by the Food Assistance Mandates to advance YFB's mission. Unfortunately, during a series of meetings between myself and each of the Yolo County municipal jurisdictions, which meetings occurred from June 2019 through September 2019, the representatives from Yolo County, Davis, Woodland, Winters and West Sacramento made it generally clear that they were resistant to complying with the Food Assistance Mandates and resistant to collaborating with YFB because they indicated that Yolo County, Davis,

Winters, West Sacramento, and Woodland were not willing to create a funding mechanism for the Food Assistance Mandates as required by state law Food Assistance Mandates:

a. On June 24, 2019, William Schoen (YFB's SB 1383 consultant) and I met with County of Yolo Waste Reduction and Sustainability Manager Marissa Juhler at Yolo Food Bank's main office. Juhler was remarkably noncommittal about partnering with YFB despite YFB's status as de facto sole player on Food Assistance Mandates services in Yolo County. She made it very evident that she did not have working knowledge of the physical, software, and financial capacity necessary to meet the Food Assistance Mandates. Juhler was very pointed in her hostility when YFB's consultant raised the subject of the mandated requirement of Yolo County developing a funding stream to support a Food Assistance Mandates program. Juhler said something to the effect that (verbatim or very nearly so), "Raise rates or tipping fees to fund edible food recovery? That's never going to happen. If the Supes raise rates for anything, it will be to fund roadside garbage pickup." She was only open to assisting YFB in seeking one-time grants or to supporting YFB in charging food donors.

b. On August 3, 2019, William Schoen and I met with City of Woodland officials (Environmental Sustainability Manager Ken Loman and Woodland's Environmental Analyst Rosie Ledesma) at Yolo Food Bank's main office. In addition to providing the city officials a tour of the newly constructed YFB facility, a sit-down meeting was held to discuss how YFB might support Yolo County's pending efforts to meet the Food Assistance Mandates. The meeting was similar to the June 24, 2019 meeting with Marissa Juhler albeit with the visitors signaling indifference to the Food Assistance Mandates funding requirements rather than outright hostility.

c. On August 8, 2019, William Schoen and I met with City of West Sacramento officials (then Environmental Services Manager Paulina Benner and Environmental Program Specialist Susan Strand) at Yolo Food Bank's main office. Once again, the meeting was similar to the previous two meetings, in which the City of West Sacramento signaled apathy to the Food Assistance Mandate funding requirements and did not appear to be interested in cooperating with YFB.

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

d.  On September 5, 2019, William Schoen and I met with City of Davis officials (Environmental Resources Manager Richard Tsai and Conservation Coordinator Jennifer Gilbert) at Yolo Food Bank's office. The meeting was similar to the June 24, 2019 meeting with Marissa Juhler albeit with the visitors signaling indifference to the Food Assistance Mandates funding requirements rather than outright hostility. A significant difference to the previous meetings was that the City of Davis officials expressed their preference of partnering with Davis nonprofits rather than YFB. This was concerning to me because: (a) it showed they did not appear to me have a good working knowledge of how a food recovery and distribution program actually works (i.e., a food bank functions as a hub for a network of smaller nonprofits who have contracts or partnership arrangements with entities like YFB); (b) the Davis nonprofits which the Davis city officials specifically named were YFB subcontractors; (c) the Davis nonprofits which they suggested did not operate at the necessary scale to effectively meet the Food Assistance Mandates; and (d) the city officials were in no position to make such a far-reaching policy decision; rather, such a decision is or should be the purview of the city council.  Of course, against this backdrop, I continued to communicate our views to the cities and County and tried to ensure that at least they were operating with a correct understanding of how the food recovery nonprofit sector actually worked.

11.    It was ultimately discovered that the county and municipal governments of Yolo County, Davis, Woodland, Winters, and West Sacramento were secretly lobbying the state legislature and regulators (which was documented in several lobbying letters I uncovered), both directly and indirectly, to delay or rescind the Food Assistance Mandates which efforts led to the introduction of SB 619 to the California State Assembly that ultimately failed to pass (as originally proposed) as further discussed below[1]. This is why many individuals and elected officials in the cities and the County became hostile to

---

[1] At first, SB 619 sought to indefinitely delay the January 1, 2022 deadline for local jurisdictions to comply. However, these efforts ultimately failed in October 2021, when the final version of SB 619 that became law on October 5, 2021 retained the compliance deadline of January 1, 2022 but allowed local jurisdictions to file a notice to comply and have CalRecycle waive the penalty fees if said jurisdictions implemented the actions proposed in the notification to remedy the violations.

me because we ended up being on the opposite side of the issues in discussions and meetings regarding SB1383 in 2019, 2020 and 2021 prior to SB 1383 going into effect on January 1, 2022. Meanwhile, in sharp contrast and in a good faith effort to comply with and prepare for the Food Assistance Mandates, YFB successfully launched its own Food Assistance Mandates outreach to Tier One Generators (i.e., large-scale food businesses) to bridge the information and messaging gap created by the resistance described above by Yolo County, Davis, Winters, West Sacramento, and Woodland.

12.     By September of 2019, it is true that I was presenting data and information at various conferences and sessions on issues related to the Food Assistance Mandates. It is important to note that this kind of advocacy was what Executive Directors do in our industry and was not the same as the private discussions we would have with our subcontractors about partnership terms. The latter were not only private, but were controlled by a complex set of contractual and partnership requirements YFB had as a Feeding America affiliate. It was and has always been my belief, that regardless of the different views the cities and County may have had with YFB and/or me, they should not have been interfering with our private partner communications and should have recognized that we had private contractual and partnership arrangements that should have been respected. Regardless, in retrospect, I now understand that the cities and Counties became increasingly hostile to me from the end of 2019 to 2021 because I communicated my views on SB 1383 compliance openly. For example, I was invited to present on SB 1383 issues at a statewide CalRecycle conference where I was asked whether the Defendant entities were preparing for compliance with the Food Assistance Mandates alongside YFB. The California Department of Resources Recycling and Recovery (commonly known as "CalRecycle"), is a governmental branch of the California Environmental Protection Agency ("CalEPA") specifically overseeing waste management, recycling, and waste reduction programs (including Food Assistance Mandates oversight). I truthfully and in good faith informed the attendees that it appeared to me that the Defendant entities were not taking any action at all (i.e., were failing to take steps to prepare to comply with the Food Assistance Mandates). I expressed this opinion as an invited speaker to the conference. Obviously, the Cities and County learned of my disclosure to CalRecycle and were not happy about it. In contrast, I believe my disclosure was noted and suitably received by CalRecycle who showed appropriate consternation over the lack of response by the Defendant governmental entities. CalRecycle, on the spot, reacted to this disclosure by offering to support YFB in its Food Assistance Mandates

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

efforts. This partnership with CalRecycle eventually included two grants totaling $800,000, joint community communications and outreach efforts, and support for YFB's interactions with the apparently recalcitrant county and municipal government entities.

13.    In February of 2020, YFB hosted a formal Food Assistance Mandates kickoff event, together with CalRecycle, in the hopes of making Yolo County a pilot for the rollout of compliant programs statewide. The response by Yolo County and the Cities of Davis, Woodland, Winters, and West Sacramento to this event was not positive and noncommittal. By September of 2020, recognizing that none of the County or municipal entities were supportive of partnering on a fully funded, countywide Food Assistance Mandates program, YFB, on its own initiative, launched a road show giving presentations to a number of city and county commissions and other environmental and social services stakeholders.

14.    By December 2020, officials from county and municipal governments of Yolo County, Davis, Woodland, Winters and West Sacramento appeared to circulate what we as members of the nonprofit food recovery sector reasonably believed to be incorrect and/or misleading information about: (i) requirements for meeting the Food Assistance Mandates, (ii) the scale of the challenge, and (iii) the potential service providers. These developments were highly concerning to me, the YFB executive staff, and the YFB Board because at this point in time, YFB was already operating at maximum capacity to receive and process food donations, and without the support and/or cooperation from Yolo County and the municipal governmental entities to expand the infrastructure and program capacity needed to comply with Food Assistance Mandates, any food donations beyond the current capacity of YFB would be literally wasted and any food donations recovered from the Tier One Generators would never reach food-insecure community members. As such, in the interest of protecting bona fide public interest in food recovery and to comply with Food Assistance Mandates, the YFB executive staff and the YFB Board, and I believed in good faith that we had to speak up and fight against the disinformation campaign which the county and municipal governmental entities appeared to have launched, and we did so accordingly. This all occurred in 2021, and once again, had nothing to do with private dialogue about partnership terms with our subcontractors which occurred much later in 2022.

15.    Separately, around March 2021, I learned of a renewed effort by county and municipal governmental entities acting to lobby the state legislature to delay, defund, and ultimately rescind the

Food Assistance Mandates. It is important to note that, on information and belief, these lobbying efforts by county and city officials were never publicly disclosed until I was made aware of the introduction of SB 619 in the California legislature in early 2021.

**My Observations of The Growing Disagreement Between YFB and the Cities and County on SB 1383 Issues.**

16.     By around May or June 2021, it became evident to me from recorded public meetings and records, which I monitored and reviewed as part of my job as Executive Director, that the county and municipal government entities had developed several strategies for evading the Food Assistance Mandates, one of which was to disseminate what appeared to be and what I reasonably believed to be known, false underestimates of the amount of surplus food generated by Tier One Generators in Yolo County. During this time, I reasonably believed, and believe now, that these were knowingly and/or recklessly false statements made by government officials in violation of rules and regulations governing their conduct. Examples of other false statements and/or misleading conduct include, but are not limited to, the following examples:

    a.     In an October 12, 2021 Yolo County Board of Supervisors Official Meeting[2], officials from Yolo County made the following statement: "[s]ecure agreements with the nine food recovery organizations identified as having the capacity and with the Yolo Food Bank." The agenda statement was false and/or misleading for two reasons: (a) the county and municipal government entities had at that time failed to confirm whether, and to what extent, the nine recovery organizations had any capacity; and (b) Yolo Food Bank had already informed the county and municipal government entities that it would <u>not</u> be entering into any such agreement because the terms were untenable.

    b.     In a December 14, 2021 Davis City Council Meeting[3], officials from City of Davis made the following false statement in their staff report:

---

[2] A video recording of the October 12, 2021 meeting and presentation can be found at the Yolo County Supervisor's Meeting Archive at the following URL: https://yolocountyca.swagit.com/play/10122021-819 – last accessed Mar. 8, 2023.

[3] A copy of the December 14, 2021 Davis City Council Meeting Minutes can be found at the following URL:

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

i. *"The main focus of SB 1383 is waste diversion and associated methane reduction. However, a secondary benefit in redirecting food that should not go to waste was identified in the regulations, along with the complementary high need for serving those in the community that are food insecure."* While the county and municipal government entities all along did indeed treat the Food Assistance Mandates as a secondary consideration to the other components of SB 1383, this statement is false and misleading because SB 1383 and the related state regulations contains no such foci, rankings, or prioritizations.

17. During the summer of 2021, while continuing to educate my colleagues in the food recovery sector and other community partners about SB 1383 issues, along with YFB executive staff and the YFB Board, I had a reasonable basis to believe that many of the county and municipal government entities' efforts to circumvent the Food Assistance Mandates were failing. I repeatedly reported all of this through emails, phone calls, and meetings to officials and employees of Yolo County, City of Davis, City of Woodland, City of Winters, and City of West Sacramento. In response to our communications and disclosures, my YFB colleagues including Zane Hatfield and I were harassed and retaliated against by County and City officials even though all we were trying to do was to shed light on the county and municipal government apparent efforts to circumvent compliance with the Food Assistance Mandates. At first the interactions began with what might be characterized as strong expression of disagreement. Examples of this include but are not limited to:

a. On July 14, 2021, Woodland City Manager Ken Hiatt told me by telephone that Davis City Manager Michael Webb was accusing me of some kind of improper "money grab" in my Food Assistance Mandates advocacy, and Mr. Webb went on to tell Mr. Hiatt that was supposedly why I submitted an unsolicited funding proposal to Yolo County and the cities of Davis, Woodland, West Sacramento, and Winters. I followed up afterwards by forwarding an email from the City of West Sacramento, dated November 23, 2020, to Mr.

---

https://documents.cityofdavis.org/Media/CityCouncil/Documents/PDF/CityCouncil/CouncilMeetings/Minutes/2021/Minutes-2021-12-14-City-Council-Meeting.pdf – last accessed Mar. 8, 2023.

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

Hiatt, refuting Mr. Webb's accusation. A true and correct copy of this email is attached hereto as **Exhibit 5.**

b.   On July 20, 2021, then Yolo County supervisor Donald Saylor, with then Yolo County Assistant Deputy Sara Simmons in attendance, berated me during a meeting at Mr. Saylor's Davis office for my Food Assistance Mandates advocacy. During the meeting, Mr. Saylor also made the astonishing claim that the Food Assistance Mandates had nothing to do with increasing food security. YFB Impact and Innovation Officer Robb Davis, also in attendance, afterwards summarized the meeting as Mr. Saylor taking me "to the woodshed."

c.   On August 25, 2021, I learned that in a Food Assistance Mandate "stakeholder meeting" between large-scale food donors and county and municipal government officials, YFB Board member Kate Stille (who is also co-owner of the local Nugget Markets chain) informed attendees that YFB would not be participating in the county and municipal entities' Food Assistance Mandate program because the proposed program was <u>not</u> compliant. According to Stille who later summarized the meeting for me, a Yolo County official (Marissa Juhler), "threw it [the YFB rejection] back in my face."

d.   On September 14, 2021, in the aftermath of the stakeholder meeting described above, the county and municipal entities demanded that YFB accept an untenable funding proposal requiring YFB to provide below-cost services to the Defendants to assist them in effectively circumventing the Food Assistance Mandates. Specifically, in a private letter dated September 27, 2021 from the Defendant governmental entities to YFB addressed to me, the Defendant governmental entities demanded that YFB re-allocate $1.4 million of YFB funding received from the State so that the county and municipal entities could meet the Food Assistance Mandates. A true and correct copy of this September 27, 2021 letter is attached hereto as **Exhibit 6**. The letter itself read as if coordinated by the county and municipal governments officially acting together in concert. It was on County of Yolo Director Taro Echiburu's letterhead, signed by County of Yolo Division Director Ramin Yazdani, emailed to me by County of Yolo Waste Reduction and Sustainability Manager Marissa Juhler, and stated "With the support of the Cities of Davis, West Sacramento,

Winters and Woodland" (the letter also included the logos of all five public entities). The September 27, 2021 letter also repeated the untenable funding proposal. With the authorization from the YFB Board (and after internally discussing the potential consequences and ramifications to the proposal through formal YFB Board meetings), I rejected the untenable funding proposal from the County that demanded YFB use its own funding so that the municipal Defendants could meet their state mandates. A true and correct copy of YFB meeting minutes in October 2021 showing the YFB Board's decision to send the response letter is attached hereto as **Exhibit 25** [BISCH000080] [TO BE FILED UNDER SEAL]. The county and cities' untenable funding proposal also resulted in a minimum $2 million funding gap that YFB had to somehow fund on its own effectively subsidizing the County and the Cities.

e. On September 17, 2021, in a Zoom meeting, then Yolo County Supervisor Donald Saylor attempted to bully me and YFB into accepting said county and municipal entities' "untenable" funding proposal. Mr. Saylor made a statement to the effect of, "How dare you, a mere nonprofit ED, decline a proposal that all four city managers said was fair?" I respectfully informed Mr. Saylor that I was acting at the direction of the YFB Board whose position was the county and municipal entities' "untenable" funding proposal would result in a more than $2 million annual funding gap for YFB, which YFB had no ability to sustain. Mr. Saylor and his deputy, Tara Thronson, then peppered me with a number of "gotcha" style questions, clearly with the mistaken belief that I was somehow being disingenuous, all of which I responded to matter-of-factly and appropriately.

**Efforts to Silence YFB and Me Began in The Fall of 2021 and Escalate Quickly to Retaliation**

f. Also on September 20, 2021, I received a call from an irate, then YFB Board Chairperson Tom Muller, after Muller had received angry calls from Yolo County Supervisor Don Saylor and from YFB Board member Kate Stille (who seems to have received yet another call from Mr. Saylor). According to Muller, Mr. Saylor was apparently upset with me because I had purportedly declined the county and municipal entities' "untenable" funding proposal. Mr. Saylor was now demanding that the YFB Board reverse themselves by accepting the "untenable" proposal, putting undue and inappropriate

pressure on YFB Board to accept the "untenable" proposal. It was becoming evident from these interactions that Yolo County, through Mr. Saylor, appeared to be manipulating or pressuring the YFB Board members against me for speaking up and going against the demands of Yolo County, despite the fact that the demands of Yolo County and the cities of Davis, Woodland, Winters and West Sacramento were against public interest and contrary to the Food Assistance Mandate and had been rejected by the YFB Board, not just by me personally.

g. On October 12, 2021, despite YFB appropriately declining the county and municipal entities' funding proposal and other obviously unreasonable demands from Yolo County, Davis, Woodland, Winters and West Sacramento related to the Food Assistance Mandates, Yolo County, in a highly unusual maneuver which seemed obviously intended to publicly pressure YFB, submitted the untenable funding proposal to its Board of Supervisors (on information and belief, County officials submitted the proposal to the Board of Supervisors without publicly disclosing YFB's prior rejection of the proposal, which the Supervisors then unanimously approved), practically sidestepping and ignoring YFB's decision and clearly communicated statement to the cities and County that we had declined the funding proposal. A true and correct copy of the October 12, 2021 Yolo County Board of Supervisors meeting minutes approving the submission is attached hereto as **Exhibit 7**.

h. On November 2, 2021, after Yolo County, Davis, Woodland, Winters, and West Sacramento had previously demanded a formal response from the YFB Board, the YFB Board formally declined the "untenable" funding proposal and communicated the rejection of the proposal to Yolo County, Davis, Woodland, Winters, and West Sacramento. A true and correct copy of the letter rejecting the county/cities proposal is attached hereto as **Exhibit 8**.

i. From October 2021 to January 2022, in direct response to communications by the Defendant governmental entities such as the Saylor phone call to our board chairperson, Tom Muller, I was pressured by the YFB Board to stop speaking publicly to government agencies or third parties about the County's and cities' noncompliance and to modulate

how I spoke. In a shocking development, Yolo County actually attempted to intervene in our operations and management and sent a representative to essentially ensure that I was muzzled. Specifically, on November 4, 2021, a meeting was convened by then YFB Board Chairperson Tom Muller, YFB Board Member Kate Stille, and unexpectedly a Yolo County official (then County of Yolo HHSA Service Center Branch Director Nolan Sullivan) attended. In the meeting, in front of the Yolo County official, I was cautioned about my communications with public officials—it became immediately apparent that Yolo County was beginning to put pressure on YFB to reign in my speech regarding noncompliance with the Food Assistance Mandates.

**January 2022 to March 2022: My Formal Whistleblowing Reporting to CalRecycle.**

18. By January 1, 2022 and thereafter, it was clear to me, based on my industry expertise, that Yolo County, Davis, Woodland, and West Sacramento were noncompliant with Food Assistance Mandates despite their false public reports and presentations to the contrary (on information and belief, this noncompliance is believed to be ongoing as of this date). I reported the noncompliance and incorrect reporting to State regulators (CalRecycle) on three separate occasions in the February – April 2022 timeframe, and twice to Yolo County, Davis, Woodland, Winters, and West Sacramento during this same timeframe. I was exercising what I believed was the most protected kind of speech available to me as an executive director of a nonprofit or for that matter as a private citizen. In other words, I decided to whistle blow to CalRecycle because I believed I had a civic duty to do so:

   a. On February 11, 2022, I emailed CalRecycle officials Pinar Kose and Robert Carlson alerting them to the actions of Yolo County, Davis, Woodland, Winters and West Sacramento, specifically alleging that the County and the cities were significantly underestimating the total amount of edible food generated in Yolo County; i.e., alerting state officials to the governmental Defendants' efforts to circumvent the Food Assistance Mandates by dramatically underreporting the mandated program and infrastructure needs. A true and correct copy of this email is attached hereto as **Exhibit 9.** County and City officials copied on this email include Chad Rinde (then interim administrator for Yolo County), Davis City Manager Michael Webb, Woodland City Manager Ken Hiatt, West

Sacramento City Manager Aaron Laurel, and Winters City Manager Kathleen Trepa. The email was also forwarded to Winters City Councilmember Jesse Loren.

b. On March 15 2022, I had my subordinate, Valerie Dennis, a significantly more detailed written complaint to CalRecycle's Shaina Meiners via the CalRecycle grants reporting portal. Ms. Meiners confirmed receipt on March 22, 2022. Ms. Meiners at that time invited YFB to an April meeting with CalRecycle "management." A true and correct copy of this email correspondence is attached hereto as **Exhibit 10**.

c. On March 18, 2022, I had then YFB Program Director Zane Hatfield send an email similar to my March 15, 2022 complaint emailed to the Yolo Food Security Coalition, which includes officials from Yolo County, Davis, Woodland, West Sacramento, and Winters. A true and correct copy of this email is attached hereto as **Exhibit 11**.

d. On April 18, 2022, along with YFB executive team members Zane Hatfield, Corkey Mapalo, and Valerie Dennis, I met remotely with CalRecycle officials at their request to discuss the March 15, 2022 YFB complaint uploaded to the CalRecycle grant portal. The CalRecycle officials in attendance were Shaina Meiners, Stephanie Frieders, Marissa Cota, Pinar Kose, Kyle Pogue, Robert Carlson, Alex Byrne, and Tim Hall. I specifically stated "…we've hit an immovable wall of jurisdictional intransigence…" as far as Food Assistance Mandates program implementation in Yolo County. I went on to report my good faith belief that the county and municipal entities were employing a strategy to intentionally understate the program requirements "to reduce their state-mandated funding obligations." I also went on to express my good faith concerns that the actions of Yolo County, Davis, Woodland, Winters, and West Sacramento were actually resulting in less food assistance in Yolo County instead of more as was required under the Food Assistance Mandates.

**The Private Call with Mercy Coalition and Donald Bosley that became the Pretense for Retaliation Against Me by Officials from the Cities and County.**

19.    On March 2, 2022, as part of our private negotiations with our various subcontractors and/or nonprofit partners, I asked Zane Hatfield, then a YFB executive staff member who reported directly to me, to follow up with Don Bosley, the executive director of the private nonprofit Mercy Coalition of West Sacramento (the "Mercy Coalition"). Mercy Coalition was a longstanding YFB

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

partner nonprofit organization that at the time, and I believe had a written contractual agreement or formal partnership with YFB[4], and said agreement or partnership was subject to the contractual obligations of YFB to another national nonprofit organization known as Feeding America, a nationwide network of more than 200 food banks, where YFB was (and I believe still is) an affiliate of said network.

20.    During this time period, as we negotiated with our partners (subcontractors), YFB had become aware that Yolo County and/or the cities were offering direct payments to YFB subcontractors (including Mercy Coalition) for S.B. 1383 compliance by subcontractors sharing YFB's proprietary data among other potential conflicts with our subcontract terms. Indeed, prior to this March 2, 2022 call with Mercy Coalition, YFB had met with another nonprofit Countryside Community Church (CCC) in Esparto and, in a similar private negotiation between two nonprofits, matched the compensation that Yolo County offered to CCC to ensure CCC would remain in our network and be compensated for their work. A true and correct copy of the CCC-YFB Agreement is attached hereto as **Exhibit 12** [TO BE FILED UNDER SEAL]. As such, any issues relating to the agreement between Mercy Coalition and YFB would have been a private issue and/or discourse between two nonprofits with a contractor and subcontractor relationship or partnership relationship, and therefore in either case should not have been the subject of any public discourse and/or subject to any government intervention by the Cities or County.

21.    On March 2, 2022 afternoon, I received a surprising call from Zane Hatfield informing me that the call with Don Bosley at Mercy Coalition did not go well. Based on what Zane Hatfield told me about Bosley not accepting our proposal, I instructed one of my staff members, Corkey Mapalo, to adjust the delivery/pick-up schedule for Mercy Coalition so that in the event Mercy Coalition was not agreeable to stay exclusive with us, they could still access YFB's resources but not directly pickup said

---

[4] It should be noted that I attended Don Bosley's deposition on June 6, 2023, in which Mr. Bosley was unable to recall whether there was a written contract between Mercy Coalition and YFB in March 2022, but nonetheless acknowledged that there was a partnership between YFB and Mercy Coalition at the time. Bosley Deposition at 110:7-9. Bosley also notably used the term partnership and contract interchangeably in the deposition. See i.e., Bosley Deposition at 101:12-18. Conversely, YFB's former Director of Operations Zane Hatfield testified in his declaration that Mercy Coalition signed an MoU agreement in 2017 (Hatfield Decl. at ¶ 7).

resources  from Raley's and Nugget Market, **which are Feeding America Food Donor partners** (such food donation pickups are governed under the clear terms of the subcontract).  This was NOT a move to cut off food access, but a reassignment of site access while still maintaining Mercy Coalition's ability to procure food from us. Why the cities and County did not investigate this properly or understand this or ignored it because it was convenient for them to spin an "extortion" narrative is shocking to me.

22.     On March 3, 2023, Don Bosley texted me and asked me to call him in the afternoon to discuss what he described as "interesting calls over here from YFB in the past 24 hours." When he called there was no real hostility or tension in the call. He seemed to be mulling what my colleague and employee Zane Hatfield had told him about our obligations vis a vis Feeding America, and he seemed frustrated but amicable. He said something to the effect that he would not be accepting money from either side, and even went as far as to say that YFB should be more vocal about its needs. At no point did I make any threat or reference to cutting off food and/or access to Mercy Coalition and/or Don Bosley – they never lost their access to YFB's food.

23.     From March 4, 2022 to March 11, 2022, I was never contacted by anyone from either Yolo County, or any of the Cities on the Mercy Coalition issue for them to hear YFB's or my perspective on the private contractual interactions with Mercy Coalition. Instead, the first contact I heard from any city or county official was through the email by West Sacramento city manager Aaron Laurel as described in Paragraph 24(c) below where I was accused of extorting another nonprofit.

**March 2022 to May 2022: Escalating Retaliation Against Me by City and County Officials Set the Stage for My Termination**

24.  The following events occurred after the private call with Mercy Coalition:

   a.   I have learned through a very recent CPRA Request that the March 2nd to March 3rd incident with Mercy Coalition was used by Yolo County and West Sacramento officials to disseminate a narrative that we were acting unethically, and to essentially campaign for my termination at YFB. The CPRA Request emails are attached to my counsel's declaration and speak for themselves. Now seeing them in retrospect, they confirm what I had alleged in my complaint and also connect the dots for the events which I witnessed and experienced firsthand which are outlined below.

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

b. On March 11, 2022, YFB Board Member Kate Stille (and Nugget Markets Co-Owner), thoroughly frustrated with county and municipal entities' intransigence and bullying regarding the Food Assistance Mandates, sent me the following text message:

> "…Eric's [Kate Stille's husband and Nugget Markets Co-Owner] given the okay for me to write a scathing letter to all electives, city managers and staff that I have interacted with on this issue. I'll put it together this weekend. They are successfully ignoring the concerns of a prominent local business that has been more than willing to educate them as to the complexity of our business – and ultimately asking me to put aside a successful [Food Assistance Mandates] program and replace it with one that is not fully thought out, will eventually lead to reduction of food to the needy in our community and put more of the burden on tier 1 generators."

A true and correct copy of this text message is attached hereto as **Exhibit 13.**

c. On March 14, 2022, I was informed by YFB Board members Daniel Ramos and Kate Stille (as discussed below) that on March 11, 2022, then Yolo County Interim Chief Administrative Officer Chad Rinde, and City Managers Kathleen Trepa (Winters), Ken Hiatt (Woodland), Michael Webb (Davis), and Aaron Laurel (West Sacramento) met to discuss YFB's 2021 decision to not participate in the county/cities' Food Assistance Mandates program and to discuss my whistleblower activities. It should be noted that I never made any public statement about the threat to withhold ARPA funding or about YFB's contract negotiations with Mercy Coalition while I was YFB's Executive Director. At this meeting, West Sacramento city manager Aaron Laurel falsely made statements to the other attendees at the meeting, accusing me of extorting a West Sacramento nonprofit (i.e., the Mercy Coalition, as alleged above), alleging that YFB and I were allegedly "terminating or threatening to terminate subcontracts with partner nonprofits who consider or accept funding from the County related to the expansion of the edible food recovery program." These statements were false because no such extortion, subcontract terminations or threats thereof took place; rather, YFB had offered the Mercy Coalition a funding proposal. Ramos informed me that he was told by Mr. Laurel, and separately by Mr. Webb, that these senior public officials then agreed at this meeting among themselves to reach out to their respective Yolo County supervisor(s) to silence and put pressure on me. I was deeply concerned at this time that government officials were

reaching out specifically to Dan Ramos, as it was well known that Dan Ramos had a pending real estate development megaproject under consideration and pending County and City of Davis approval at that very time. It seemed improper for County and city officials to be reaching out to him specifically to deliver this message to me.

d.   Coincidentally on March 11, 2022, I had emailed West Sacramento City Manager Mr. Laurel and Woodland City Manager Mr. Hiatt to follow up on my outstanding July 26, 2021 request for $700,000 in American Rescue Plan Act funding from each city (Davis, West Sacramento, and Woodland). The ARPA funding was the type of funding which YFB, as a well-regarded prominent food assistance service provider, would likely generally receive given the enormous services it provided to each of the cities (particularly during the COVID-19 pandemic). Shockingly, Mr. Laurel promptly responded with a one-sentence email, stating "***Yes, I would like an explanation for why YFB has attempted to extort one of our local service providers,***" again repeating by the same false accusation that I was committing extortion against a third-party nonprofit. Mr. Hiatt was copied on Mr. Laurel's email reply. A true and correct copy of this March 11, 2022 email thread is attached hereto as **<u>Exhibit 14</u>**. Until I saw the recent CPRA request response from City of Woodland, I was not able to confirm (although I reasonably suspected) that at this very same time, the County and Cities were exchanging a defamatory narrative about me through emails, and that they were also preparing a plan to generally withhold all funding from YFB to see what YFB would do. *See* Singh Decl. at ¶ 5, Exhibit 4. Now having seen the CPRA response of City of Woodland, all of my reasonable suspicions have been confirmed.

e.   On March 8, 2022, the CEO of Food Bank of Contra Costa and Solano, Joel Sjostrom, called me, demanding to know why I was "cutting off" nonprofit partners from food supplies. I told Sjostrom I was not cutting off anyone. Sjostrom equivocated when I questioned him about his information source; I now believe that his source of information was likely the Cities or County based on what I have seen in the CPRA response of City of Woodland. YFB operates as a Feeding America Subcontractor (a "Partner Distribution Organization") under Food Bank of Contra Costa and Solano, and without said Feeding

America contract, YFB and 25,000 low-income residents in Yolo County would be severely impacted.

f.   On March 13, 2022, during a social get together at a restaurant in Davis between myself, Winters City Councilmember Jesse Loren, and West Sacramento Mayor Martha Guerrero, I shared Mr. Laurel's "extortion" email with Mayor Guerrero. Mayor Guerrero then called Mr. Laurel who confirmed that he had indeed sent me the "extortion" email and doubled down on his accusation by telling the mayor he had an "unimpeachable source" for his extortion accusation.

g.   Also on March 15, 2022, as previously stated above, YFB executive staff and I submitted to the CalRecycle Financial Resources Branch a quarterly grant report via the CalRecycle grant reporting portal, stating expressly that Yolo County and the cities of Davis, Woodland, and West Sacramento were not Food Assistance Mandates compliant and were understating the amount of surplus edible food generated in Yolo County by Tier One Generators. The YFB report was made in good faith and based on reasonable data and evidence and concluded that Yolo County, Davis, Woodland, and West Sacramento's noncompliance was responsible for YFB missing certain agreed upon CalRecycle grant goals, thereby harming YFB and making YFB ineligible for future CalRecycle grants. The report, one of several, is believed to have ultimately triggered retaliation by Yolo County, Davis, Woodland, Winters, and West Sacramento because it shed light on Food Assistance Mandates noncompliance by Yolo County, Davis, Woodland, and West Sacramento.

h.   On March 17, 2022, Abound Food Care CEO Mike Learakos confirmed in a phone conversation with me that officials from Yolo County contacted Feeding America HQ in Chicago because Yolo County was upset with YFB. Specifically, Learakos went on to say to me that Yolo County officials were upset, in that they were purportedly insulted and embarrassed by my public comments (made previous to 2022). The conversations with Learakos and Sjostrom suggested to me that Yolo County officials were making defamatory statements and were communicating them directly to third parties including Learakos and Sjostrom, and once again were also attempting to silence me. I now believe

that his source of information was likely the Cities or County based on what I have seen in the CPRA response of City of Woodland

i.   On March 17, 2022, then Yolo County Interim Administrator Chad Rinde initiated an email exchange with me, making various outrageous accusations against me regarding the Food Assistance Mandates. A true and correct copy of this email thread is attached hereto as **Exhibit 15**. On information and belief, such accusations were copied internally among Yolo County officials, and/or on information and belief were disseminated to third party entities or individuals. Mr. Rinde's statements and accusations were false and defamatory, including statements claiming that "the Yolo Food Bank (YFB) is possibly terminating or threatening to terminate access to food for those food recovery agencies that may opt-in to accept funding from the County and cities as part of the edible food recovery program that the County's Board of Supervisors and the cities of Davis, Woodland, West Sacramento and Winter's collectively approved in October/November 2021." While he used the word "possible" with me, the CPRA response of City of Woodland shows that Yolo County and the Cities were participating in dissemination of a narrative that unequivocally labelled me as unethical. *See* Singh Decl. at ¶ 5, Exhibit 4. At that time, I stated unequivocally in reply to him that Mr. Laurel's accusations were inaccurate. While he was using qualifiers such as "possibly," because we had received other Yolo County calls and emails making outright accusations, it was clear that he was essentially reciting the same false narrative. I did make a point to tell him that the accusations were inaccurate, but also reminded him that the transaction between Mercy and YFB was private, and it was not proper for a government entity to interfere. *Id.*

j.   On March 17, 2022 (late morning), I was told by then YFB Board Chairperson Tom Muller, during a visit to his ranch, that he had received a call from then Yolo County Supervisor Don Saylor earlier in the day. Muller said Saylor had called to make a number of threats against YFB and me related to the Food Assistance Mandates and Supervisor Saylor expressly asked for my termination, a day before the letter from the Yolo County Board of Supervisors threatening with withhold federal ARPA funding was served on YFB as discussed below.

k. On March 18, 2022, despite me having expressly told Defendant Rinde that his description of threats was inaccurate and also reminding Mr. Rinde that the whole transaction was a private matter where the government should not be interfering, Defendant Rinde moved forward and emailed a formal letter from the County Board of Supervisors, specifically signed by Supervisors Barrajas and Villegas, to me and to my direct supervisors, the YFB Board. A true and correct copy of this letter is attached hereto as **Exhibit 16**. The County Supervisors, clearly in an effort to shut down my Food Assistance Mandates whistleblower activities ("We also recognize that your CEO, Michael Bisch, contends that the local approach to Food Assistance Mandates compliance is somehow legally deficient…"), threatened to redirect American Rescue Plan Act funding from YFB to other local nonprofits (the County had approved, but not yet released, $1,178,000 in American Rescue Plan Act funding to YFB on January 25, 2022; and Davis had approved, but not yet released, $500,000 in American Rescue Plan Act funding to YFB on March 1, 2022) if the YFB Board did not take action against YFB management. This was clearly a coordinated letter speaking not only for Yolo County, but also speaking for and in direct coordination with the municipal Defendants who had been urging Yolo County and coordinating with Yolo County Supervisors to muzzle, silence or force my ouster from my position as YFB's executive director. CPRA responses from the City of Woodland now confirm this. See Singh Declaration at ¶ 5, Exhibit 4. The County's counsel, Philip Pogledich ("County Counsel"), and the city managers of all four incorporated cities in Yolo County were copied on the County Supervisors' March 18, 2022 letter and were also copied on the accompanying email from Defendant Rinde (i.e., they all had actual knowledge of the letter contents). Later that evening, I received a forwarded email from Winters city manager Kathleen Trepa, wherein she forwarded the County Supervisors' March 18, 2022 letter and Defendant Rinde's cover email to the entire Winters city council (i.e., they too had actual knowledge of the letter contents). This further shows that the actions against me, and statements about me engaging in threatening behavior, were being disseminated between Yolo County and all four of the cities (including the three Defendant cities I have named in my

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

lawsuit). A true and correct copy of this email correspondence is attached hereto as **Exhibit 17**. My counsel has since confirmed through CPRA requests that similar email forwards and dissemination of this information occurred among the leadership of Yolo County, Davis, Woodland, Winters, and West Sacramento in this matter. See Singh Declaration at ¶ 5, Exhibit 4. The County Board of Supervisors' March 18, 2022 letter had a profoundly chilling effect on my speech and action, and I now feared that my employment termination was imminent. Moreover, YFB Board members including but not limited to Elizabeth Schmitz and Donald Hartman, in private communications with me, agreed that the accusations in the letter were either false, sounded conspiratorial, and/or were very damaging to my professional reputation, and the letter also placed pressure on YFB to act against me to protect its position with the governmental entities exerting the improper pressure on YFB and me. A true and correct copy of Donald Hartman's email to me is attached hereto as **Exhibit 18**.

l.   On March 30, 2022, shockingly and in continued retaliation against me, then County of Yolo Interim HHSA Director Nolan Sullivan told me in a phone call, the Yolo County Board of Supervisors were not prepared to release any of the previously approved American Rescue Plan Act funding to YFB until they saw how the YFB Board would respond to the Supervisors' March 18, 2022 letter which asked for investigation and action against YFB management. Defendant Yolo County, specifically through its then interim administrator Chad Rinde, then delayed a previously scheduled American Rescue Plan Act grant agreement meeting between Yolo County and YFB. I was also told by Yolo County's Sullivan, "Yeah, County Supervisors are upset and want their pound of flesh." Sullivan also told me, without naming names, that a Yolo County official had been blocking all attempts, over many months, to arrange a substantive meeting between YFB and County and municipal government officials because said County official was "butt-hurt" or unjustifiably offended.

m.  On April 22, 2022, in a further effort to appease county and municipal officials, the YFB Board sent a response letter to the County Board of Supervisors. A true and correct copy of the letter is attached hereto as **Exhibit 19**. The letter stated I was being replaced as the

"primary liaison" between YFB and the county and municipal entities. It should be noted that the tone and content of the YFB Board letter was clearly influenced by, and resulted from, the months of pressure by the government Defendants on the YFB Board and retaliation against me and the comments made by Interim Yolo County HHSA Director Nolan Sullivan stating that the County Supervisors were upset and wanted their pound of flesh.

n.   On April 27, 2022, Winters city council member (and YFB employee) Jesse Loren informed me via text message that the YFB Board's April 22, 2022 response letter (i.e., the YFB Board letter essentially succumbing to months of pressure exerted by Defendants) had been shared with the County Counsel and the city managers of all four incorporated cities in Yolo County who in turn shared the response letter with all of their governing bodies (i.e., they all had actual knowledge of the response letter contents). Once again this was evidence of the concerted effort to take action against me.

**March 2022 to May 2022: Defendants' Retaliation Against Me Ultimately Causes YFB Board to Terminate Me by Text Message**

25.   The impact of Defendants' concerted effort to retaliate and seek retribution against me cannot be overstated. Indeed, Defendants intentionally targeted and leveraged certain YFB Board members who had clear conflicts of interests in their private and/or corporate financial interests that are dependent on the relationship with one or more of the Defendants:

a.   Tom Muller:

i.   The YFB website listed Tom Muller as Chairperson of the YFB Board, and his title as Partner Farmer/Muller AG, LLC, Woodland, CA. (URL: https://web.archive.org/web/20220316005336/https://yolofoodbank.org/about-yolo-food-bank/ – last accessed June 9, 2023)

ii.   Tom Muller and Muller Ranch ("Muller Ranch" shall, for the purpose of this response, refer to the Muller family entities which succeeded it, namely Muller AG and M Three Ranches) has been prominently covered in the news.

iii.   Muller Ranch's receipt of governmental agricultural subsidies are well documented in publicly available databases on the internet. One such database from Environmental Working Group (EWG)' has shown that Muller Ranch LLC

has received over $3 million in agricultural commodity program subsidies from 1995 to 2021, ranking number 6 in Yolo County overall (URL: https://farm.ewg.org/top_recips.php?fips=06113&progcode=totalfarm&regionname=YoloCounty,California – last accessed on Apr. 27, 2023)

    iv.  Other publicly available websites from credible sources document Tom Muller's co ownership and/or affiliation with Muller Ranch:

        1.  https://www.thefoodfront.org/partner/muller-ranch/ - last accessed June 9, 2023

        2.  https://www.linkedin.com/in/tom-muller-829ab922a/ - last accessed June 9, 2023 (which lists Muller AG LLC as the company owned and run by Tom Muller and which shares the same address as Muller Ranch)

    v.  In addition, throughout the relevant time period, Tom Muller had invested significant time and financial resources to be prominent and influential figures in the Yolo County community in general. As the President and/or Chair of the YFB Board, Mr. Muller often appeared in YFB's social media posts to solicit donations from YFB donors. Mr. Muller had given numerous interviews to news media outlets regarding agricultural topics, and had built a reputation as a steward of the land by promoting sustainable agricultural practices. (Example: https://www.dailydemocrat.com/2016/10/27/mullers-recognized-for-sustainable-ag-practices/ – last accessed June 9, 2023).

  b.  Dan Ramos:

    i.  The YFB website listed Daniel Ramos as VP of Ramco Enterprises LLC in West Sacramento, California. His father Frank Ramos is the CEO and owner of Ramco Enterprises.

      (https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/141123110072141066234119148074126249157190119002 – last accessed June 9, 2023)

    ii.  The Ramos family's history with real estate development in Yolo County has been well documented in the Davis History Book titled "Growing Pains: Thirty Years in the History of Davis." The book is publicly available on the City of

Davis website at https://www.cityofdavis.org/about-davis/history-symbols/davis-history-books/growing-pains-thirty-years-in-the-history-of-davis (last accessed Apr. 27, 2023). The book documents extensive dealings made between Ramco Enterprises, City of Davis, and Yolo County officials in a quest to develop 500 acres of land into a real estate development.

iii. Ramco Enterprises is a member of Davis Chamber of Commerce: https://web.davischamber.com/Real-Estate-Commerical-Development/Ramco-Properties,-LP-1249 – last accessed April 27, 2023.

iv. Ramco Enterprises is also a member of the West Sacramento Chamber of Commerce: https://www.westsacramentochamber.com/list/member/ramco-properties-lp-8243 – last accessed April 27, 2023.

v. Example of Ramco Enterprises' West Sacramento projects include the Office of State Publishing. URL: https://www.m1b.com/projects/office-of-state-publishing/ – last accessed April 27, 2023.

vi. Based on my research, I have determined that Ramco Enterprises is known to have a long-term partnership work with Buzz Oates, one of the largest real estate developers in the Sacramento valley region, including Yolo County. Indeed, many executives at Buzz Oates are long time partners and include members of the Ramos family (including Kevin Ramos, son of Frank Ramos and brother of Daniel Ramos). *See Bardis v. Oates* (2004), 119 Cal. App. 4th 1 ("Defendant Marvin "Buzz" Oates (Oates), is a successful real estate developer who owns and controls a family of satellite companies. These include defendant A & A Properties (hereafter A & A), which manages commercial property and also does business as a real estate brokerage under the name Buzz Oates Real Estate (hereafter BORE). BORE is managed and operated by Kevin Ramos (Kevin), son of Frank Ramos (Ramos), a longtime friend and business partner of Oates.").

vii. It is well known in the community that Ramco Enterprises is heavily involved in the development of the proposed Davis Innovation & Sustainability Campus (DISC) project for the past several years (going as far back as 2020, if not earlier)

which had been struggling to get majority voter approval for annexing land that is currently in use for agriculture. Ramco Enterprises had submitted multiple proposals, amendments, and/or project reviews that were subject of numerous hearings before the Davis City council and commissions, and hearings before the Yolo County Board of Supervisors. Ramco Enterprises also invested more than half a million dollars in developer contributions to the campaign committee for the relevant City of Davis ballot Measure H in 2022. Examples of news articles covering such topic include, but are not limited to, a June 8, 2022 Sacramento Business Journal article ("Davis voters again rejecting innovation park," – Van Der Meer, Ben – URL: https://www.bizjournals.com/sacramento/news/2022/06/08/davis-voters-again-rejecting-innovation-park.html).

viii. The Davis Chamber of Commerce has a dedicated page for the DiSC Project, in which the page expressly listed relevant City of Davis Planning Commission meetings and City Council meetings. (URL: https://www.davischamber.com/disc-2022.html – Last Accessed April 27, 2023)

ix. Daniel Ramos has personally admitted to me that he is friends with various county and city officials, including Defendant Oscar Villegas and Defendant Aaron Laurel.

x. Supervisors Oscar Villegas and Angel Barajas have routinely voted and/or were involved in approving projects relating to Daniel Ramos and/or Ramco Enterprises. Specifically, within two weeks of the April 27, 2022 calls made to Muller and Ramos about me and YFB management, it appears to me from my review of online records that both Supervisor Barajas and Villegas voted yes on adopting a resolution "authorizing execution of a Revenue Sharing and Property Tax Exchange Agreement between Yolo County and the City of Davis related to the planned annexations for the Davis Innovation and Sustainability Campus (DiSC 2022), and approve memorandum of understanding between City, County, and the project applicants on traffic and traffic infrastructure." This was fully

reflected in Item No. 41 on the May 10, 2022 Yolo BOS Meeting Minutes, in which Ramco Enterprises was the main developer behind the DiSC project[5]. A true and correct copy of the May 10, 2022 Meeting Minutes are attached hereto as **Exhibit 20**.

c. James Durst:

    i.  James Durst is a member of the prominent Durst Family, currently the owner of Durst Organic Growers, one of the largest organic food producers in Northern California.

    ii.  Durst Organic Growers, just like Muller Ranch, receives substantial subsidies in connection with its agricultural operations. For example, based on publicly available data at Environmental Working Group (EWG)'s website, Durst Organic Growers has received $523,588 in subsidies since 2016. (URL: https://farm.ewg.org/persondetail.php?custnumber=B06875016 – Last Accessed June 9, 2023)

    iii.  In addition, it should be noted that Mr. Durst had an explicit conflict of interest that had to be addressed by the YFB Board in February 2022 in connection with YFB's efforts to establish a fully-funded countywide edible food recovery program under SB 1383:

        1.  On February 15, 2022, I brought to the attention of the YFB Finance & Audit Committee that YFB board member James Durst had a significant conflict of interest in his role at Countryside Community Church that was undermining YFB's years-long effort to establish a fully-funded countywide edible food recovery program. The church had negotiated a $24,000 one-time funding agreement with the County that was jeopardizing $2 million or more in annual funding to YFB in perpetuity.

---

[5] See City of Davis Ordinance No. 2617, Exhibit A (Developer Agreement between City of Davis, Ramco Enterprises, Inc., and Buzz Oates – URL: https://destinyhosted.com/yolocdocs/2022/BOS/20220510_3435/12242_12242_-_Development_Agreement.pdf – last accessed June 12, 2023.

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

2. On February 23, 2022, in the lead up to the February 23, 2022 meeting, I called YFB Board chairperson, Tom Muller's, attention to the James Durst conflict of interest. Mr. Muller agreed to address the issue in closed session. Muller requested I prepare talking points for him. During this time, I was informed that Mr. Durst admitted that the funding agreement proposed by the county for his church was ineffectual and claimed it would be the most expensive agreement in edible food recovery history costing the county upwards of $100/pound. Mr. Durst agreed to recuse himself in future discussions. During the conversation, Mr. Muller suggested to me to reach out to Mr. Durst to discuss a potential win-win solution between YFB and Countryside Community Church.

3. On February 24, 2022, Mr. Durst and I successfully negotiated a $28,000 edible food recovery agreement in lieu of the church entering into an agreement with the county. The agreement between YFB and the church was executed March 10, 2022. A true and correct copy of this agreement is attached hereto as **Exhibit 21**[TO BE FILED UNDER SEAL].

26. Against that backdrop, a timeline of events chronicling the internal YFB response under duress and threat by Defendants include, but are not limited to the following events:

a. On March 14, 2022, in a 3-way telephone call between myself and YFB Board members Daniel Ramos and Kate Stille, Mr. Ramos falsely accused me, saying I had called and made threats to the Mercy Coalition of West Sacramento's executive director, Don Bosley, of "cutting off" or threatening to "cut off" food supplies to Mercy Coalition. Mr. Ramos made this false and defamatory accusation in front of Kate Stille. Mr. Ramos then told me and Ms. Stille that he heard such accusations during a previous call he had with his known friend Aaron Laurel, City Manager of West Sacramento and a separate call from Mike Webb, City Manager of Davis. Ms. Stille claimed she had received a similar call from Ken Hiatt, City Manager of Woodland. Upon hearing these false accusations, I immediately responded that none of the false accusations were true, and I told both Mr. Ramos and Ms. Stille that it was Zane Hatfield who had a phone conversation with Don

Bosley, and that no threats were made; rather, Hatfield had offered a funding proposal to Bosley that was identical to the funding proposal offered to YFB Board member James Durst's church, CCC, (which Mr. Durst accepted on behalf of CCC). It was also during this 3-way call that I learned from Ramos of the March 11, 2022 meeting of the four city managers and Yolo County's interim chief administrative officer where the five local government officials each agreed to contact their respective county supervisors to complain about YFB's 2021 decision to not participate in the county/cities' Food Assistance Mandates program and my whistleblower activities and to encourage the Yolo County Board of Supervisors to take action against me and YFB.

b.  On the afternoon of March 15, 2022, then YFB Board chairperson Tom Muller called me to warn me that YFB would be receiving a "nasty" letter from Yolo County's Board of Supervisors. Muller told me our "county friend" (I understood this, and Muller likely stated this, as a reference to then County of Yolo Interim Health & Human Services Agency Director Nolan Sullivan) told Muller the Supervisors had met and were issuing such a letter. I indeed recognized at that time that the Board of Supervisors had likely formally met in closed session earlier that day, in direct response to requests made by municipal Defendant officials, without any public notice, to discuss how to pressure YFB to silence or remove me. This (at that time) pending letter was the culmination of months of pressure placed on me by Yolo County, city managers and officials who asked Yolo County Supervisors to use their influence with the YFB Board to silence, muzzle or remove me. After the call, I confirmed online through the County's publicly available website that the Board of Supervisors had indeed met in closed session that day— "Conference with Legal Counsel – Anticipated Litigation"—in potential violation of the Ralph M. Brown Act.

c.  On March 19, 2022, in a shocking development that speaks to the enormous improper governmental pressure on the YFB Board, one day after the March 18, 2022 Yolo County letter, Mr. Ramos contacted me with a scheme he and YFB Board chairperson, Tom Muller had concocted. They proposed putting me on a "pretend" paid leave while they would conduct a "pretend" 2-3 week investigation to appease the Yolo County Board of

Supervisors. I refused to participate in the obviously dishonest and outrageously improper scheme. This improper scheme heralded more defamatory conduct that was about to occur.

d. On March 23, 2022, as later conveyed to me by Tom Muller, at a YFB Board meeting where Tom Muller, Dan Ramos, Elizabeth Schmitz, James Durst, Kate Stille, Louise Walker, Donald Hartman and Jennifer Engstrom, were believed to be in attendance, Mr. Muller, Mr. Ramos, and other YFB Board members recklessly and wrongly accused me in a defamatory manner of having unprofessionally and improperly threatened Mercy Coalition and Don Bosley, without having investigated the merits of the accusation. The accusation was false, and Mr. Muller and the other YFB Board members should have known it to be false or could have taken reasonable steps to investigate the matter to determine that it was false. After the meeting, Mr. Muller contacted me and demanded I attend a meeting with Mr. Ramos and Don Bosley on March 25, 2022 to apologize to Mr. Bosley (and sign a letter of apology). At the time, I found this to be highly disturbing and it seemed to show how YFB Board members were terrified and intimidated by the actions of the officials from the County and Cities to the point that they would force me to "apologize" to Don Bosley even though they knew or should have known that I did nothing wrong.

e. On March 24, 2022, then YFB Board Chairperson Tom Muller called me and told me (paraphrasing closely): "Staff needs to ease off on" the Food Assistance Mandates "for a little bit, so that we can get that ARP funding secured."

f. On April 22, 2022, despite facts supporting my assertions about my innocence in the Mercy Coalition issue, the YFB Board sent a response letter to the Yolo County Board of Supervisors apologizing for my communications (essentially stating to the County Board of Supervisors that I had done something wrong when I had not) even though the YFB Board had admitted internally that the March 18, 2022 letter from the Yolo County Board of Supervisors was outrageous and sounded like a "conspiracy." I later learned on April 27, 2022 from Winters City Council Member Jesse Loren, that the April 22, 2022 letter had been shared with the County Counsel Phil Pogledich and the city managers of

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

Woodland, Davis, West Sacramento, and Winters, who in turn shared the YFB Board response letter with their respective governing bodies.

g. On April 27, 2022, in my presence and the presence of other YFB staff, Mr. Ramos, along with Mr. Muller, Mr. Durst, and other YFB board members, ambushed me and Zane Hatfield at the April 27, 2022 Zoom YFB Board meeting that was recorded[6], hurling numerous outrageous harassing and intimidating accusations at me and Mr. Hatfield based on threatening calls received by YFB Board members from Defendant Yolo County Supervisor Barajas and Defendant Yolo County Supervisor Villegas literally right before the YFB Board meeting took place that day. At least two other YFB Board members beside Ramos, Muller, and Durst (Ned Spang and Donald Hartman) were present.

h. Specifically, in the presence of other staff, Mr. Muller stated he received threatening calls from Yolo County Supervisor Angel Barajas, who claimed to Mr. Muller that he, Barajas, was coming out of a Yolo County Board of Supervisors closed session meeting in which he said he received communications about YFB cancelling that year's turkey donations program for the 2022 Thanksgiving holidays. In reality, this was not the case at all – after careful deliberation among me and YFB executive team staff, it was an executive decision made by the YFB executive team to preserve limited financial resources by cutting back the turkey donation program that, while popular, was: (i) not fundamental to YFB's primary mission as a food bank; (ii) jeopardized critically needed *weekly* grocery distributions; and (iii) cost YFB over $250,000 per year to operate. It should be noted that the logistics and other decision-making around this program was an internal YFB matter

---

[6] The recording was created by the meeting host on that day, YFB Admin Director Valerie Dennis as normal course of YFB protocol of recording Board meetings when there are critical issues to be discussed and there are board members who are unable to attend the meeting. During the zoom meeting, I specifically remembered accepting a mandatory Zoom recording notification prompt at the beginning of the meeting in which participants had to consent to the recording before being able to attend and/or participate in the video meeting. I obtained a copy of the video from Valerie Dennis who emailed me a link to the video as part of my role as Executive Director. The precise moments when the recording began and ended were reflected in the April 27, 2022 YFB Board meeting minutes.

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

and was not something that was discussed in a public forum. It was very obvious that the turkey issue was just a pretext being used by Barajas and Villegas, like the Mercy Coalition issue, and the culmination of the multiple communications, emails, calls and in person dialogue which began in March where the County and city government officials appeared to be targeting me simply because I had voiced concerns about SB 1383 in the past from 2019 through 2021, and because under my leadership YFB was not participating in the County's program in 2022, which was YFB's right to do.

i.   During the same meeting, Mr. Ramos reported that Defendant Villegas made the same false accusations of YFB and I engaging in extortionate behavior by cancelling the 2022 Thanksgiving turkey donations after allegedly receiving a call from Yolo County Children's Alliance ("YCCA") Mr. Villegas, to my knowledge, in his declaration in this matter, never disclosed his personal connection with YCCA to the YFB Board (i.e. that his wife was the former long-time executive director of YCCA and that YCCA was a quasi-Yolo County controlled nonprofit where the staff have had had Yolo County email addresses), and has never established how the turkey donations program was a matter of public discourse or was being considered in any public forum. The turkey program decision was a private operational decision made in good faith by YFB management.

j.   In response to Mr. Ramos' statement, Mr. Muller stated, with malice and in bad faith, that both Zane Hatfield and I had acted unprofessionally and improperly simply by doing our jobs by informing our contractual partners, including YCCA, that funding and resources likely would not be available later in the year. In the meeting, Mr. Muller made explicit references that these angry calls were "retribution." Chairperson Muller then went on to make a statement suggesting that YFB's continuing employment of myself and the employment of then YFB Program Director Zane Hatfield (who had participated in filing complaints against the county and municipal entities), was no longer tenable. Of note, shortly before he made that statement, he expressly referenced that one of the Supervisors had brought up the Mercy Coalition incident again and was upset about it.

k.   At this same meeting, Muller unwittingly disclosed the alleged fact that the Yolo County Board of Supervisors had once again possibly allegedly violated the Ralph M. Brown Act

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

by holding a closed session to discuss retaliation against YFB and me without proper public noticing. I later verified online that the Board of Supervisors had indeed met in closed session a second time, with such session described as "Conference with Legal Counsel – Anticipated Litigation," again at the very least potentially in violation of the Ralph M. Brown Act.

l.   At this stage, since March 18, 2022, I had endured at least two separate YFB Board meetings, either in the meeting or immediately thereafter, in which I had to defend myself repeatedly from the false accusations that were continuously being propagated by YFB Board members who had received angry and threatening calls from Yolo County supervisors and city officials falsely accusing me of extortion and threatening behavior without properly investigating the veracity of those false accusations—where government entities and officials were in fact using the private negotiations between Mercy Coalition and YFB as a pretext to retaliate against me for my vocal advocacy in 2019-2021 on SB 1383 compliance and for my whistleblowing in 2022. Specifically, these YFB Board members appeared to be thoroughly intimidated by the Defendants and had caved improperly by ultimately terminating me.

m.   On May 20, 2022, at an in-person meeting at the YFB office with the YFB executive team and myself present, YFB Board members Daniel Ramos, James Durst, and Elizabeth Schmitz attempted to fire me on the spot, reading out loud from a false and defamatory written statement prepared and approved by the YFB Board, announcing three pretextual and defamatory reasons for my firing with the entire YFB executive team in attendance. The statements essentially mirrored the defamatory narrative propagated by the government officials from Yolo County and the cities. Regardless, all three Board members approved of the termination letter and its contents prior to it being read and delivered the statement as a group. The three false and pretextual reasons given were read out loud to everyone at the meeting by Mr. Ramos on behalf of the other two YFB Board members and himself, and was deliberately and knowingly read to the group in attendance, including numerous YFB staff members, specifically stating in a defamatory and false manner that: (1) I had poor donor communications; (2) the whole community

was unhappy with the direction of Yolo Food Bank under my leadership; and (3) all of the nonprofit partners were unhappy with my leadership. Further evidence that the statements made by Mr. Durst and his colleagues were false is as follows: At the same May 20, 2022 meeting, YFB executive member Valerie Dennis told the three board members bluntly that there was no record of any YFB board discontent with my performance, that the action taken by YFB Board was clearly retaliatory, and therefore it would be a violation of company HR policy for her to participate in a firing process. She then refused to prepare any final paychecks. Ms. Dennis went on to say she had attended all YFB board meetings and she had not heard any dissatisfaction with my performance. At some point in the meeting, Mr. Durst said, "There are other issues with Michael that justify this firing decision, but we can't discuss them in front of Michael." Mr. Ramos gave the appearance of concurring with this and made no effort to correct or qualify Mr. Durst's statement. Durst then suggested that everyone except for me to relocate to the adjacent meeting room to discuss these other issues. I said at the time that I had no objections, but the YFB staff refused, insisting that I needed to continue to participate. The meeting eventually ended with Mr. Ramos scooping up the firing paperwork and telling the executive team, "We're going to go back to the board with your concerns." The three YFB Board members then started to exit the room. Valerie Dennis asked the Board members, "Wait. Wait. I'm confused. Is Michael fired or isn't he." Mr. Ramos then repeated himself, paraphrasing "We're going to go back to the board with your concerns." After making that last statement, Mr. Ramos, Ms. Schmitz, and Mr. Durst left the meeting. It should be noted that Mr. Ramos and Mr. Durst looked visibly frustrated and angry throughout the meeting while Ms. Schmitz looked confused.

During the meeting, the YFB executive staff delivered the first "no-confidence" letter to the YFB Board in protest of their retaliation and harassment of me and Zane Hatfield during the YFB April Board meeting. A true and correct copy of the first no-confidence letter is attached hereto as **Exhibit 22.**

n. On May 20, 2022, in response to the attempted firing and defamatory conduct at the meeting, I communicated a harassment and retaliation complaint against the YFB Board

with written details provided to YFB Human Resources the following day.

o. On May 21, 2022, the YFB executive team emailed the YFB Board a second "no confidence" letter based on the three YFB Board members' recent outrageous conduct, including my attempted firing based on false and pretextual reasons. A true and correct copy of the second no confidence letter is attached hereto as **Exhibit 23.**

p. On May 22, 2022, I submitted another harassment complaint to YFB's Human Resources against the YFB Board, specifically complaining of the plan to or proposal to put me on a "pretend" leave.

q. On May 23, 2022, I submitted a whistleblower retaliation complaint to YFB's Human Resources and a conflict-of-interest complaint against the YFB Board, specifically expressing concerns over conflicted YFB Board members putting pressure on me about the SB 1383 issues while being conflicted.

r. On May 31, 2022, the YFB Board terminated me as YFB's executive director despite ongoing remarkable successes under my leadership including YFB's record Big Day of Giving campaign on [insert date] with YFB coming in at number one on the leaderboard out of over 700 nonprofits in the Sacramento region. The termination notice was sent in a cursory offhand manner by YFB Board treasurer Jennifer Engstrom to me *via text message*. No reason for the firing was given. The text message read as follows:

> "Michael, this is Jennifer from the Yolo Food Bank Board. We voted unanimously last night to terminate you. Please report to the Food Bank at 9:30am this morning to receive your final paycheck and separation paperwork, return your Food Bank computer and other property, and gather your personal belongings. We also voted to revoke the separation package we previously offered you. Thank you."

A true and correct copy of a screenshot of this text message is attached hereto as **Exhibit 24**.

s. As a result of my termination, I lost my income and have not been able to work. My reputation in the nonprofit sector has been sullied, making it difficult for me to acquire another nonprofit job of the same caliber and kind.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge or belief based on reliable information, that I have personal knowledge of the facts stated above, and that, if sworn as a witness, I would be competent to testify thereto.

Executed this 13th Day of June, 2023, in Davis, California.

_____
MICHAEL BISCH

DECLARATION OF MICHAEL BISCH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
CASE NO.: 2:23-CV-00455-MCE-DB

# BISCH EXHIBIT 1

FOOD BANK

January 4, 2018

Michael Bisch
P.O. Box 74267
Davis, CA 95617

Re: Interim Executive Director Employment Offer

Dear Michael:

The Yolo Food Bank (Food Bank) is pleased to extend an offer of employment to you for the position of Interim Executive Director (Interim ED), reporting to the Food Bank Board of Directors, during the Food Bank's search for a regular Executive Director. This is a full time, exempt position.

The effective date of your employment with the Food Bank will be January 8, 2018. Generally, your regular hours of work will be 8:30 am – 5 pm, Monday through Friday, although work demands may dictate additional evening or weekend hours. The position of Interim ED will terminate on December 31, 2018, unless other arrangements are approved in writing in advance. Your status as Interim ED will not change from January 8 through April 8, 2018 unless termination is warranted for just cause. Should that arise, you will receive compensation and benefits through April 8, 2018. During said period and thereafter, your employment may be terminated for just cause, such as but not limited to dereliction of duty, gross negligence, or criminal activity, with or without advance notice. Your work location will be at the Food Bank's business location of 1244 Fortna Avenue, Woodland, CA. While you serve as Interim ED, you will not engage in any other employment, consulting or other business activity (whether full-time or part-time) that would create a conflict of interest with the Food Bank. You may, however, continue to serve on any boards of directors or committees thereof on which you served as of your start date. By signing this Agreement, you confirm to the Food Bank that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the organization.

Your annualized salary will be $96,000.00 payable per the regular payroll schedule and subject to applicable withholding and payroll taxes and other deductions required by law. The Food Bank will reimburse you for all reasonable and necessary expenses incurred by you when performing services as Interim ED on behalf of the Food Bank. You will also be able to receive and/or participate in all benefits available to full-time employees including, but not limited to, the following:

- Four weeks of Paid Time Off (PTO) accrues during your first year plus one additional day/year thereafter. PTO is Sick and Vacation time combined for use at your own discretion.
- Ten Paid Holidays per year.

YOLO_000256

FOOD BANK

- Optional Health Insurance Premium Shared Cost (50/50 share of insurance premium for employee)
- Optional Employee Participation in a 403 (b) Retirement Savings Plan with Annual optional employer match of 50% (up to 3% of employee annual salary)

The Food Bank will also indemnify you for activities in connection with your employment to the fullest extent provided by applicable law and to the same extent as the Food Bank indemnifies other officers or directors.

During your service as Interim ED, you are expected to perform the duties outlined in the Interim Executive Director job description (see Attachment A). In addition, you are expected to provide certain deliverables. Those deliverables, with timelines for completion and reporting, are detailed in Attachment B, which is to be formally agreed upon by both the Board and you no later than January 26, 2018.

On or before your first day of work, you must bring documents to establish your identity and authorization to work in the United States as required by the Immigration Reform and Control Act of 1986. Please contact Office Manager Valerie Dennis directly at (530) 668-0690 if you have any questions.

Be reminded that the Food Bank does not want you to use or bring with you to the Food Bank at any time any confidential information, trade secrets and/or proprietary information from any former employers.

We think you will find the Food Bank to be an exciting and dynamic place to work. We look forward to your leadership and to working with you as we advance the mission of the organization.

Please sign and date page 3 and return to me at the address noted below in the letterhead no later than January 5, 2018.

Sincerely,

T. A. Muller

Tom Muller
Board President

Enclosures:     Attachment A
                Attachment B

YOLO_000257

, FOOD BANK

I agree and accept the terms and conditions of this employment offer letter for the Interim
Executive Director position as stated on pages 1 through 2 of this document:

Michael Bisch
Michael Bisch

1-8-18
Date

YOLO_000258

BISCH EXHIBIT 2
PROVISIONALLY
FILED UNDER SEAL

BISCH EXHIBIT 3



# Employee Handbook

Our Mission:
*To End Hunger and Malnutrition in Yolo County*

Revised 3/23/2017

## Table of Contents

Employee Handbook ........................................................................................................1
Yolo Food Bank .............................................................................................................1
"To Alleviate Hunger and Malnutrition in Yolo County ................................................1
Introductory Statement ...................................................................................................4
Purpose Of Handbook .....................................................................................................4
At-Will Employment Status .............................................................................................4
Right to Revise ...............................................................................................................5
Employee Acknowledgement and Agreement .................................................................5
Equal Employment Opportunity .....................................................................................6
Unlawful Harassment ......................................................................................................6
Reporting Discrimination/Harassment ............................................................................7
**Employment Policies and Practices** ..........................................................................8
New Hires .......................................................................................................................9
Regular Employees .........................................................................................................9
Full-time Employees .......................................................................................................9
Part-time Employees .......................................................................................................9
Temporary Employees .....................................................................................................9
Inactive Status ...............................................................................................................10
Job Duties .....................................................................................................................10
Work Schedules .............................................................................................................10
Meal and Rest Periods ...................................................................................................10
Timekeeping Requirements ...........................................................................................11
Payment of Wages ........................................................................................................11
Automatic Deposit ........................................................................................................11
Pay for Mandatory Meetings/Training ...........................................................................12
Overtime for Non-exempt Employees ............................................................................12
Reduced Salary for Exempt Employees .........................................................................13
Makeup Time ................................................................................................................13
Advances ......................................................................................................................14
Personnel Records ........................................................................................................14
Names and Addresses ...................................................................................................14
Employee References ....................................................................................................14
Performance Evaluations ...............................................................................................14
Open-door .....................................................................................................................15
Employment of Relatives ..............................................................................................15
Conflicts of Interest ......................................................................................................16
Bridging of Time ...........................................................................................................16
Involuntary Termination and Progressive Discipline .....................................................16
Voluntary Termination ...................................................................................................16
**Standards of Conduct** .............................................................................................17
Prohibited Conduct ......................................................................................................18
Food Bank Property ......................................................................................................18
Off-duty Conduct ..........................................................................................................19
Drug and Alcohol Abuse ...............................................................................................20
Punctuality and Attendance ..........................................................................................21
Dress Code and Other Personal Standards .....................................................................22
Customer Relations .......................................................................................................22
Confidentiality ..............................................................................................................23
Business Conduct and Ethics .........................................................................................23
News Media Contacts ....................................................................................................23
**Operational Considerations** ....................................................................................**24**
Employer Property ........................................................................................................25
Use of Electronic Media ................................................................................................25
Prohibited Use of Food Bank Cell Phone While Driving ................................................26

BISCH000375

Personal Use of Food Bank Cell Phone ........................................................................... 26
Off-duty Use of Facilities ............................................................................................... 27
Security/Workplace Violence .......................................................................................... 27
Health and Safety ........................................................................................................... 27
Smoking ......................................................................................................................... 27
Housekeeping ................................................................................................................. 27
Solicitation and Distribution of Literature ...................................................................... 28
Conducting Personal Business ........................................................................................ 28
Employees Who Are Required to Drive .......................................................................... 28
Expense Reimbursement ................................................................................................. 28
**Employee Benefits** .................................................................................................... **29**
Holidays ......................................................................................................................... 30
Vacation ......................................................................................................................... 30
Sick Leave ...................................................................................................................... 31
Insurance Benefits .......................................................................................................... 32
Leaves of Absence .......................................................................................................... 33
Personal Leaves of Absence ........................................................................................... 35
Bereavement Leave ........................................................................................................ 35
Military Leave ................................................................................................................ 35
Jury Duty ........................................................................................................................ 36
Witness Leave ................................................................................................................ 36
Time Off for Voting ....................................................................................................... 36
Volunteer Firefighters and Peace Officers ...................................................................... 36
Domestic Violence Leave ............................................................................................... 36
Victims of Crime Leave .................................................................................................. 37
School Activities ............................................................................................................ 38
External Employee Education ......................................................................................... 38
Recreational Activities and Programs ............................................................................. 39
Inclement Weather/Natural Disasters .............................................................................. 39
**Addendums** ................................................................................................................. **40**
Addendum I: YFB Tobacco Free Workplace Policy ........................................................ 41
Addendum I: YFB Tobacco Free Workplace Policy (sign & return to HR) ...................... 42
Addendum II: Dress Code Details ................................................................................... 43
Addendum III: PTO Policy .............................................................................................. 45
Friday's Table Policy ...................................................................................................... 46
Flowers Policy ............................................................................................................... 47
Social Media Policy ....................................................................................................... 49
In- house Use of Donated Goods Policy .......................................................................... 50
Computer Policy ............................................................................................................. 51
Employee Acknowledgement and Agreement ................................................................. 53

## Introductory Statement

Welcome! As an employee of Yolo Food Bank (the "Food Bank"), you are an important member of a team effort. We hope that you will find your position with the Food Bank rewarding, challenging, and productive.

Because our success depends upon the dedication of our employees, we are highly selective in choosing new members of our team. We look to you and the other employees to contribute to the success of the Food Bank.

This employee handbook ("Handbook") should answer most of the questions you may have about the Food Bank. It also describes the benefits we provide and our expectations of you, as an employee. You are responsible for reading and understanding this Handbook. This Handbook, however, is intended to be only a general guide. If you have any questions, please ask your supervisor or manager.

## Purpose of Handbook

This Handbook is intended to acquaint you with the Food Bank and give you a quick reference to answer most of your questions regarding your employment with us. This Handbook is intended to explain both what you can expect from us and what we expect from you.

This Handbook is only a summary of the employee benefits, personnel policies and employment regulations that are in effect at the time of publication. This Handbook should not be construed as creating any kind of "employment contract."

This Handbook summarizes the policies and practices in effect at the time of publication. This handbook supersedes all previously issued handbooks and any policy or benefit statements or memoranda that are inconsistent with the policies described here. Your supervisor or manager will be happy to answer any questions you may have.

## At-Will Employment Status

Food Bank personnel are employed on an at-will basis. This means that you are not employed for a definite period of time, and that employment may be terminated with or without cause and with or without notice at any time by either the employee or the Food Bank. Nothing in this Handbook or in any other personnel document, including benefit plan descriptions, shall limit the right to terminate at-will employment. No manager, supervisor or employee of the Food Bank has any authority to enter into an agreement for employment for any specified period of time or to make an agreement for employment on other than at-will terms other than the Executive Director of the Food Bank, which is binding only if it is in writing.

BISCH EXHIBIT 4

 Executive Director Of Michael Bisch

**Form** Performance Evaluation: Executive Director (Manager's Copy)

### Authors and Signers

Submitted by Liz Schmitz on February 17, 2020

Signed off on February 25, 2020 by Michael Bisch

## YOLO FOOD BANK PERFORMANCE EVALUATION CRITERIA

## Performance Evaluation: Executive Director

## JOB PERFORMANCE GOALS TO BE RATED

**FINANCIAL:** Maintain financial sustainability by planning and performing tasks cost effectively and identifying, reporting on and/or resolving inefficiencies in a timely manner

Achieve goal by:

- Planning and leading major fund raising initiatives that achieve goals and objectives;

- Developing and implementing strategic planning efforts with Board approval and management/staff's active support that promote the Food Bank's vision and goals;

- Developing and managing business management and financial strategies that enhance revenues while effectively managing costs;
- Establishing and monitoring capital budgets and expenditures, including appropriate tracking and monitoring, to meet organizational budget expectations and initiating corrective actions as needed;

- Overseeing resource allocation, departmental priorities and major contracting efforts to meet organizational needs and goals cost effectively; and

- Ensuring appropriate financial controls are in place to maintain the organization's fiscal health long-term.

Acceptable

### Comments:

The Board is tremendously pleased with Michael's performance with respect to the financial health of the organization. The success of the 2nd phase of the EHY campaign far exceeded expectations, the Nourish Yolo major gifts campaign has already raised over 50% of its target of $1million and the overall financial condition of YFB has been stabilized. The Board recognizes the mitigating circumstances surrounding accounting and financial reporting issues and has the utmost confidence that these issues will be addressed in the coming year.

**CULTURAL ENVIRONMENT : Model Food Bank values as well as collaborating with and supporting internal customers to achieve organizational cohesion**

Achieve goal by:

• Maintaining and updating an organizational structure, operating practices and standards, and fiscal and human resource management practices that are responsive and adaptable to evolving business needs as well as in compliance with applicable laws, regulations and other requirements;

• Leading a performance management process throughout the Food Bank that effectively establishes and measures individual, team and departmental goals, then tracks and assesses progress against goals, provides timely feedback and addresses performance issues promptly;

• Maintaining and updating, as needed, an effective Total Rewards System (including compensation, benefits and development opportunities) that provides a competitive pay, benefit and development structure to attract, reward and retain a high-quality and effective work force; and

Acceptable

**Comments:**

Michael has made considerable progress in transforming the culture of YFB. The improvement in total rewards and compensation of staff as well as instituting a professional performance review and career development process were both seen by the Board as vital to improving employee retention, engagement and satisfaction.

**SOCIAL: Provide the highest quality of service when planning, implementing, administering, and/or assisting with programs and activities that have value to external Food Bank customers.**

Achieve goal by:

• Actively participating in Board meetings and providing timely, accurate and well-organized reports for review or approval;

• Establishing and maintaining strong relationships with key constituencies including community members, leaders and Board members, and utilizing these relationships effectively to further the company's goals;

• Hiring, supervising, training/developing, and evaluating direct reports to exceed performance expectations;

• Managing staff interaction with internal and external customers to ensure communications and support processes are professional and helpful at all times;

• Tracking internal system and process improvement outcomes and making practice and strategy changes as needed;

• Identifying potential or nascent problems and working collaboratively with management and/or the Board to resolve effectively as early as possible; and

• Actively participating in Food Bank and community events to further the organization's mission.

Acceptable

**Comments:**

Michael is tireless in promoting the mission of the Yolo Food Bank and under his leadership the visibility of the organization within the community has been significantly increased. While generally very positive, the increased exposure does come with some potential pitfalls, such as envy among other non-profits, which can adversely impact the reputation of the organization. For 2020, Michael needs to develop a strategy to prevent any unintended negative consequences that stem from the success YFB is achieving that could hamper the mission of YFB in the greater community.

## EVALUATION OF COMPETENCIES

YOLO_000349

### 1. Managing change:

The ability to demonstrate support for innovation and for organizational changes that are needed to improve the organization's effectiveness; initiate, sponsor, and implement unit, departmental or organizational change; help others to successfully manage change.

Acceptable

**Comments:**


### 2. Understand and promote a culture of philanthropy

The ability to serve as a philanthropic ambassador within the organization and community. Cultivate relationships on behalf of and in support of the organization by being sensitive to and aware of community leaders and partners, donors and funders, and clients; providing them with quality service; and paying attention to their interests.

Acceptable

**Comments:**


### 3. Leadership

The ability to lead through change and adversity, make the tough call when needed, build consensus when appropriate, and motivate and encourage others.

Acceptable

**Comments:**

Michael has been a strong leader and dramatically improved the performance of the organization. He has recruited new talent to be members of the Board and rounded out our pool of thinkers to help guide YFB into the future. He has taken steps to train internal leadership by allowing department managers to grow in their positions, with guidance from Michael, resulting in their sense of increased ownership in the organization.

### 4. Building collaborative relationships

The ability to develop, maintain and strengthen partnerships with others inside or outside the organization who can provide information, assistance and support by working collaboratively with allies to build consensus and create results, understand others' roles and perspectives and act and respond diplomatically and with empathy.

Acceptable

**Comments:**


### 5. Critical thinking:

The ability to break down problems into components and recognize interrelationships; detect flaws, inconsistencies, and illogical conclusions in poorly structured arguments; tackle problems by using a logical, systematic, sequential approach; find effective solutions by taking a holistic, abstract or theoretical perspective; and anticipate the implications and consequences of situations and take appropriate action to be prepared for possible contingencies.

Acceptable

**Comments:**

This is certainly one of Michael's many strengths. He has actively sought out vulnerable spots in the operations of the organization and taken steps to timeline changes that will lead to improvement in the overall health of the organization in the future.

## Goal Creation of Goals for Upcoming Evaluation Period

**Please create 3-4 goals for the employee to work on during their next evaluation period.**

**Be sure to use the 'category' function to indicate which one of YOLO's corporate goals (Social, Cultural Environment, Financial) that the goal falls under.**

### ADDITIONAL COMMENTS

**Feel free to provide additional feedback or comments here.**

Michael had an excellent year as Executive Director. Through his leadership, the finances of YFB have been stabilized and a more cohesive team has been developed. Key opportunities in 2020 include increasing fundraising for operations while focusing on a public relations strategy that emphasizes the good work that YFB does rather than the money it needs. The Board is looking forward to working with Michael in 2020.

## Managers:

Upon submitting this form, you will have the ability to 'sign-off.' Please do not sign off until you are ready for the employee to view the form.

## Review Signoffs

 **Michael Bisch**

Signed off on February 24, 2020 8:45 pm

"I appreciate the performance evaluation and feedback from my board. I would appreciate further details on the following comments so that I can be sure to meet the board's expectation: "...while focusing on a public relations strategy that emphasizes the good work that YFB does rather than the money it needs.""

# BISCH EXHIBIT 5

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | michael@yolofoodbank.org |
| **Sent:** | Wednesday, July 14, 2021 1:54 PM |
| **To:** | 'ken.hiatt@cityofwoodland.org' |
| **Subject:** | FW: Follow up on SB 1383 Community Meeting |

Thanks, Ken, for engaging so quickly. The YFB proposal was solicited by the City of West Sacramento. See email below. It was definitely not my idea (it struck me as premature).  Instead, I was seeking an invitation to deliver a presentation to the West Sacramento City Council regarding the community needs that SB 1383 could meet (staff generally only talk about the costs).

I'm looking forward to continuing the conversation.

-M

**From:** Maureen Paley <mpaley@pdx.edu>
**Sent:** Monday, November 23, 2020 2:52 PM
**To:** Michael Bisch <michael@yolofoodbank.org>; Suzanne Reed <csuzannereed48@gmail.com>
**Subject:** Follow up on SB 1383 Community Meeting

Hello Michael and Suzanne. I hope you both are having a good Monday!

I spoke with Martha about the presentation on SB 1383. And, Martha is interested in hearing more.

She's asking for a proposal from Yolo Food Bank for the city staff members to review. The City needs to understand the cost of working with Yolo Food Bank in staying SB 1383 compliant and how West Sacramento ranks relative to Yolo's other cities in terms of community need and service delivery in the city. Also, it would be helpful to understand the total funding requested from all cities in Yolo County and the percentage share of each city in that total. How is the request for funding spread/allocated across cities? What % does West Sacramento constitute? What is the basis for this funding allocation request?

It would be ideal to receive the proposal in early January if that's possible on your end.

Please let me know if you have any questions on this.

Many thanks,

Maureen

BISCH001163

BISCH EXHIBIT 6



# County of Yolo

Taro Echiburú
DIRECTOR

**DEPARTMENT OF COMMUNITY SERVICES**
**DIVISION OF INTEGRATED WASTE MANAGEMENT**

*44090 County Road 28H, Woodland, CA  95776*
*(530) 666-8852 Fax (530) 666-8853        www.yolocounty.org*

Yolo Food Bank
Attn: Executive Director
233 Harter Avenue
Woodland, California 95776

September 27, 2021

Dear Michael,

As you know, Yolo County and the Cities of Winters and Woodland worked with Total Compliance Management (TCM) and Abound Food Care (Abound), to evaluate the costs contained in the funding request submitted by the Yolo Food Bank (YFB), as provided below. To that end, TCM and Abound submitted several data requests to the YFB to fully understand how these costs were developed and why these specific items would be needed to service the remaining Tier 1 generators that do not currently have an edible food recovery program as required under SB 1383.

| YOLO FOOD BANK COSTS | | |
|---|---|---|
| **Operating Costs** | | **FY 2019/20** |
| Total Annual Functional Expenses[1] | $ | 14,471,209 |
| Total Pounds Distributed | | 5,908,696 |
| Cost Per Distributed Pound | $ | 0.41 |
| **Additional Capacity Needs[2][3]** | | **Currently** |
| 2nd warehouse (8,400 SF) | $ | 1,300,000 |
| Refrigerator (1,175 SF) | $ | 155,900 |
| Freightliner #1 | $ | 133,500 |
| Freightliner #2 | $ | 133,500 |
| Freightliner #3 | $ | 136,700 |
| Sprinter Van | $ | 36,500 |
| Forklift #1 | $ | 37,000 |
| Forklift #2 | $ | 37,000 |
| Pallet Jack w/ scale #1 | $ | 6,000 |
| Pallet Jack w/ scale #2 | $ | 6,000 |
| Pallet Jack w/ scale #3 | $ | 6,000 |
| Pallet Jack w/ scale #4 | $ | 6,000 |
| Pallet Jack w/ scale #5 | $ | 6,000 |
| **Total** | $ | 2,000,100 |

**Notes:**
1) From audited financials.

BISCH000425

2) YFB has been operating at max capacity since May 2020. Additional capacity is needed **before** any new accounts can be served.
3) Does not include equipment needed to increase capacity of YFB community partners.

Specifically, TCM and Abound requested detailed information to accurately determine the costs associated with the current collection practices of edible food recovery. The detailed data requested included driver logs, food bank route detail and that of their partner agencies who collect food on behalf of the YFB. Snapshots of this information were provided, but not complete data sets. This information is vital to analyzing the financial request of YFB which included 3 freightliners and a sprinter van. Without detailed transportation costs, including the number of collections per day, the length of time spent at each stop, and pounds of food collected at each stop, there was not enough data to validate the request.

TCM and Abound also reviewed the audited financials of YFB, Abound visited the operations in Woodland and the County received information on the operational flow of food, an overview of staffing costs (for collection), a description of the maintenance fee assessment to pantry partners, the number and type of vehicles currently operated by YFB, and the annual costs for fuel and maintenance of those vehicles and other supply costs.

Additionally, we understand that there are current capacity limitations at YFB that would be partially resolved through the development of the new warehouse per the requested funds. However, there was confusion surrounding whether the capital campaign to develop funding for the building had already started as it was included in the proposed request for the American Rescue Plan (ARP) funding submitted to the County. Furthermore, it was uncertain how much of Resiliency Funds the State of California would be providing to YFB or how much could be used to address the identified need for additional warehouse space. We now know that YFB will receive $1,438,684 from the State specifically for infrastructure enhancement which should reduce the $2M request down to $561,316.

Based on YFB's data request responses, interviews and information gathered during the site visit, the recommended cost proposal is focused on assisting YFB with their capacity limitations at the facility, as well as compensating YFB to provide administrative work associated with onboarding new donors, including the nine identified Tier 1 generators that do not currently participate in food recovery.

The recommended funding proposal is provided below:

**Funding Programs to Support YFB Operation**

| Budget Item | Quantity | Approx. Price | Total | Notes | Alternative Program |
|---|---|---|---|---|---|
| Program Coordinator | 1 | $88,500 | $88,500 | Food Bank Program Coordinator to expand current edible food collected from existing donors and on-board new donors. This would cost an annual salary of $75,000 plus 18% for benefits. This is based on YFB numbers. | |
| Program Coordinator Expenses | 1 | $7,500 | $7,500 | Program Coordinator expenses including transportation reimbursement, marketing materials, etc. Based on YFB numbers | |
| Pallet Jacks | 2 | $6,000 | $12,000 | Replace existing pallet jacks that need replacement. | |

BISCH000426

| Budget Item | Quantity | Approx. Price | Total | Notes | Alternative Program |
|---|---|---|---|---|---|
| Sorting Supplies | 1 | $21,280 | $21,280 | The Food Bank ramped up operations during the COVID pandemic.  When the pandemic has ceased, it is expected that Food Bank operations will stabilize to a new normal amount. In the meantime, Food Bank should be supported to ensure the food they have can be distributed easier to assist in their capacity demands. | |
| Logistics Fee Offset | 1 | $115,200 | $115,200 | Offset of logistic fees charged to pantry. This reduces the overall cost for all pantries who are shopping at the food bank providing a cost savings to the entire network. | |
| Distribution Truck | 1 | $34,450 | $34,450 | Enhancing Food Bank's distribution will put less of a strain on their existing operation. Leased 26 ft refrigerated freightliner truck ($2,000 per month for a three-year lease) that can be used for pick-ups and deliveries. Cost includes fuel, insurance and registration, based on YFB data. | |
| Driver | 1 | $53,000 | $53,000 | Operate truck for YFB, rate of $25.37 per hour fully loaded. | |
| Warehouse Associate | 1 | $55,000 | $55,000 | One full time, or two part time associates to assist in distribution. | |
| Software Program | 29 | $50.00 | $14,500 | Food Bank could promote the use of MealConnect, a software supported by Feeding America. 29 pantries have expressed a desire for software, where 4hours would be required to onboard each pantry and support them over the course of the year. A fully loaded rate of $50/hr is assumed for the Food Bank employee. These funds are designed to offset an existing salary, or for temporary staff as needed. | Chowmatch is an alternative software program that could cost $7-10,000 per year plus an administrator and training costs. |
| Management of Contracts | 44 | $50.00 | $8,800 | Food Bank is in the most optimal position to manage contracts between donors/recipients. It is assumed it will take a minimum of 4hrs per year for each agency. These costs must be revisited for Tier 2 donors. These funds are designed to offset an existing salary, or for temporary staff as needed. | A third-party organization could be hired to manage these contracts. |
| Total | | | $410,230 | Year One Cost⁺ | |

On Tuesday, September 14th this data was provided to you and your staff, at which time you declined to accept the proposal that all 5 jurisdictions (Yolo County, City of Davis, City of West Sacramento, City of Winters, and City of Woodland) agreed to fund to fulfill their SB 1383 obligations.  We ask that you review this letter and the attached Edible Food Recovery Capacity Study again to fully understand the offer that is being provided.

BISCH000427

County staff will be presenting this recommendation to the Yolo County Board of Supervisors on October 12th.  This recommendation includes $386,930 in direct funds to the YFB in year one of the program, plus an additional $23,300 to manage the contracts and oversee the software program to onboard the other pantries, if the YFB wishes to take on these two additional roles (highlighted in yellow above).  If the YFB accepts these additional roles, the total funding would be $410,230.

Please submit your comments to mjuhler@yolocounty.org by October 5th, 2021 if you wish them to be included in our Board report, including a statement as to whether the YFB will accept this funding offer if approved at the Yolo County Board of Supervisor's meeting.


Sincerely,

Ramin
Yazdani

Digitally signed by
Ramin Yazdani
Date: 2021.09.28
08:59:32 -07'00'

Ramin Yazdani
Division Director


*With the support of the Cities of Davis, West Sacramento, Winters and Woodland*

    


Cc: Yolo Food Bank Board of Directors

(Tom Muller, Jennifer Engstrom, Dan Ramos, Louise Walker, Elizabeth Schmitz, Donald Hartman, Ned Spang, Jim Durst, Matt Mariani, Kate Stille)

BISCH000428

BISCH EXHIBIT 7

Print    Reading Mode    Return

Regular-Community Services   # 38.

**Board of Supervisors**

| | |
|---|---|
| **Meeting Date:** | 10/12/2021 |
| **Brief Title:** | SB1383 Edible Food Recovery Recommendations |
| **From:** | Taro Echiburu, Director, Department of Community Services |
| **Staff Contact:** | Marissa Juhler, Waste Reduction & Recycling Manager, Department of Community Services, x8813 |

**Supervisorial District Impact:**

---

**Subject**

Approve funding option to meet the obligations set under the SB 1383 Edible Food Recovery regulations and direct staff to finalize a Memorandum of Understanding with the five jurisdictions in the staff recommendation; secure agreements with the nine food recovery organizations identified as having the capacity and with the Yolo Food Bank; and establish long-term goals to assist with Tier 2 Edible Food Generators. (No general fund impact) (Echiburu/Juhler)

**Recommended Action**

A. Approve staff recommended funding option to meet the obligations set under the SB 1383 Edible Food Recovery regulations;

B. Direct staff to finalize an MOU between the five jurisdictions to secure the staff recommendation;

C. Direct staff to secure agreements with each of the nine food recovery organizations identified as having the capacity and with the Yolo Food Bank; and

D. Direct staff to establish long-term goals to assist Tier 2 Edible Food Generators in gaining compliance by 1/1/24 and come back to the Board with a "beyond the requirements" proposal by 1/1/26 based upon the diversion efforts achieved with Tier 1 and Tier 2 Generators.

**Strategic Plan Goal(s)**

 *Thriving Residents*

 *Sustainable Environment*

**Reason for Recommended Action/Background**
**Background**

In 2016, Senate Bill (SB) 1383 set methane reduction targets for California in a statewide effort to reduce emissions of short-lived climate pollutants (SLCP).   The two targets set for 2025 are (1) to reduce organic waste disposal by 75% and (2) to rescue at least 20% of currently disposed of surplus food for people to eat, also known as "Edible Food Recovery".  While the rulemaking for these targets was not approved until November of 2020, County Integrated Waste Management Division (IWM) staff began working on SB 1383 Edible Food Recovery in December of 2019, defining the requirements of the new regulations.  IWM worked closely with the California Department of Resources Recycling and Recovery (CalRecycle) to narrow down the list of Tier 1 and Tier 2 Commercial Edible Food Generators that will be required to participate in Edible Food Recovery on January 1, 2022, and January 1, 2024, respectively.  While staff acknowledges that there is a

high need for serving those that are food insecure, addressing this need should be a part of a larger
and separate conversation from SB 1383 compliance. SB 1383 is aimed first at waste diversion and
methane reduction, with the benefit of feeding people, second. Therefore, IWM staff has prepared
recommendations that outline specifically, what the County is required to do, and fund, under these
new regulations.

In developing these recommendations, IWM staff has worked with staff from the City of Davis, City of
West Sacramento, City of Winters, and the City of Woodland and have reached an agreement on the
recommended actions and funding allocations for year one of SB 1383 Edible Food Recovery
requirements. Additionally, IWM hired Edgar and Associates to manage the preparation of an Edible
Food Recovery Capacity Study (Attachment A) which included the work of two additional consultants:
Total Compliance Management (TCM) and Abound Food Care. The consultants' work included
engagement with the Yolo Food Bank (YFB) and 29 other food recovery organizations in Yolo County,
as well as various Tier 1 and Tier 2 generators. Staff also hosted a stakeholder meeting on August 25,
2021, to engage the Tier 1 generators in this process, each of which will be required to comply with
this portion of the regulations. Attachments B, C, D & E are a sampling of the information staff
handed out and presented at that stakeholder meeting to assist these Yolo County businesses in
gaining compliance by January 1, 2022. In an effort to be ahead of the rollout, IWM worked with Yolo
County Environmental Health to develop an inspection checklist and review protocol that will be
needed to ensure food is recovered in a safe manner. Lastly, each step of this process has been
reviewed by our regulator and author of the SB 1383 rulemaking, CalRecycle.

Yolo County also has a long history of partnership with the YFB where major steps have already been
made towards expanding their edible food recovery capacity. In 2019, Yolo County and the YFB
jointly applied for and received $500,000 from CalRecycle to expand food recovery and distribution, in
preparation for the SB 1383 requirements, through the Food Waste Prevention and Rescue Grant
Program. Since the YFB plays an essential role in our countywide food recovery efforts, in 2020 we
requested and received a proposal from the YFB on what additional funding would be needed to meet
the obligations set under SB 1383. This proposal request was in the amount of $2 Million and
included $1.3 Million to add a new warehouse and $700,000 to purchase three new trucks and
various other operational equipment. Per Section 7.0 of the Edible Food Recovery Capacity Study,
TCM and Abound reviewed the audited financials of the YFB and requested detailed information to
accurately determine the costs associated with their current collection efforts vs. those new collection
efforts required under SB 1383. After three months of review, it was determined that not enough data
was provided to validate the $2 Million request.

**Staff Identified Solutions**
The options below illustrate three potential paths for the Board to take. Staff recommends Option 3.

Option 1 - Fund the YFB in their requested amount of $2 Million. Given that our consultant was unable
to justify the need for $2 Million, based upon the requirements of SB 1383, an additional funding
source will be required to support this option, if selected. One funding alternative to support this
"above and beyond" approach could be instituting a new SB1383 tax on all businesses who generate
this food waste. However, given that such a tax would apply to all businesses, the program would
also need to be expanded to all businesses as it would be unfair to have all eligible businesses
financially support a program for only a few such businesses. This approach would in turn increase
staff workload which cannot be met with existing resources. Environmental Health (EH) inspections
would increase from the 72 required business inspections per year to 886 business inspections per
year and would also require additional work by IWM staff. If the Board wishes to select this option,
staff requests that the Board authorize an additional part-time Recycling Coordinator in the amount of
$71,541 annually and two additional full-time Environmental Health Inspectors in the amount of
$317,990 annually. In total, this option would have an estimated cost of $2.4 Million, and if equally
shared amongst the edible food generating businesses in Yolo County, each business would see a fee
increase of $2,708 annually. Other funding alternatives include the General Fund and revenues from

fee increases subject to Prop 218 voter approval. Case 3:23-cv-00455-KES-DB Document 14-1   Filed 06/13/23   Page 64 of 134

Option 2 - Fund the "bare minimum" services necessary to comply with SB1383 in the unincorporated area of the County, estimated at $9,083, and direct staff to work with the Esparto Valley Market and RISE, Inc. (RISE), to service this single, required Tier 1 generator in the unincorporated area.  The $9,083 cost of this option would include the purchase of new scales and refrigeration/freezer units for RISE, as well as funding to provide both food safety training to all staff and an outside food consultant to help with the program setup.   This approach does not support the network of food recovery organizations in the County nor does it assist in covering the costs to get the food distributed once collected. This option can be fully funded by existing Solid Waste Franchise Fees at no impact to the General Fund.

**Option 3 - (Staff Recommendation)** Fund up to $17,311 to support the network of 9 food recovery organizations outlined on Page 17 of the Edible Food Recovery Capacity Study and Funding Assessment, as well as the YFB at a level that has been verified and is consistent with SB1383 requirements.  City staff supports this option.  This option also focuses on following strategic short-term recommendations, made by the County's consultant, allowing for the increased capacity needed to service Tier 1 edible food recovery generators over the next 12-18 months.   IWM has sufficient funds in FY 21-22 budget for this option, utilizing Solid Waste Franchise Fees.   This funding recommendation is being provided based upon a detailed assessment of the food recovery agencies, and the information and documentation provided by the YFB.  Much of this recommendation also comes out of discussions on how to implement the requirements of SB1383 while moving through the COVID pandemic.   Many of the food recovery organizations have been heavily impacted, in particular the YFB, which is one reason this network approach is so critical.  It will spread out the resources amongst 10 organizations throughout the county so that the burden of the additional food being recovered is not funneled to one organization.  The YFB provided feedback on this option stating that it is only partial funding to their overall request and therefore if approved as currently presented, they would decline to receive these funds to assist with SB1383 Edible Food Recovery (Attachment G). IWM staff has reached out to some of the other 9 organizations listed and they are interested in taking on these additional SB1383 roles, and corresponding funding, should the YFB definitively decline the recommended funds after Board direction.

Staff recommends choosing Option 3 and then directing staff to finalize an MOU between the five jurisdictions to secure the funding Option 3 above; directing staff to secure agreements with each of the 9 food recovery organizations identified as having the capacity and with the Yolo Food Bank, and directing staff to establish long-term goals to assist Tier 2 Edible Food Generators in gaining compliance by 1/1/24 and come back to the Board with a "beyond the requirements" proposal by 1/1/26 based upon the diversion efforts achieved with Tier 1 and Tier 2 Generators.

**Collaborations (including Board advisory groups and external partner agencies)**
Internal: County Counsel, Environmental Health
External:City of Davis, City of West Sacramento, the City of Winters, City of Woodland, Edgar and Associates (Total Compliance Management (TCM) and Abound Food Care), Stakeholders/Tier 1 Generators (Ex. Nugget Market, Grocery Outlet, Lorenzo's Market, etc.), CalRecycle

---

**Fiscal Impact**
**Fiscal impact (see budgetary detail below)**
**Fiscal Impact (Expenditure)**

| | | |
|---|---|---|
| **Total cost of recommended action:** | $ | 17,311 |
| **Amount budgeted for expenditure:** | $ | 17,311 |
| **Additional expenditure authority needed:** | $ | |
| **One-time commitment** | | Yes |

Case 2:23-cv-00455-MCE-DB   Document 14-1   Filed 06/13/23   Page 65 of 134

**Source of Funds for this Expenditure**

$17,311

## Explanation (Expenditure and/or Revenue)

**Further explanation as needed:**

If option #3 is selected then the amount not to exceed $17,311 is to implement year one of the Edible Food Recovery requirements of SB 1383.  It requires coordination with each of the four cities in Yolo County also contributing their agreed-upon portions to make the edible food recovery network succeed (City of Davis $155,799; City of West Sacramento $276,976; City of Winters $34,622 and City of Woodland $276,976). This allocation of funds totals $761,698 and is based upon total funding proportionally divided based upon the number of Tier 1 generators in each jurisdiction.  Next steps: The County and the four jurisdictions will enter into an MOU to identify all roles, responsibilities, and the division of these expenses.  IWM staff will return to the Board in 2022 to receive direction on Year 2 funding.

## Attachments

[Att. A. Edible Food Recovery Capacity Study and Funding Assessment](#)

[Att. B. EH Food Recovery Inspection Checklist](#)

[Att. C. EH Stakeholder Meeting Presentation](#)

[Att. D. Countywide Edible Food Recovery Poster for Tier 1 Generators](#)

[Att. E. CalRecycle Stakeholder Meeting Presentation](#)

[Att. F. Presentation](#)

[Att. G. YFB Letter October 3 2021](#)

---

## Form Review

| Inbox | Reviewed By | Date |
| --- | --- | --- |
| Marissa Juhler (Originator) | Marissa Juhler | 09/29/2021 09:38 AM |
| Marissa Juhler (Originator) | Marissa Juhler | 09/29/2021 04:17 PM |
| Marissa Juhler (Originator) | Marissa Juhler | 09/30/2021 08:56 AM |

**Form Started By:** Marissa Juhler                    **Started On:** 09/20/2021 08:25 AM

**Final Approval Date:** 10/04/2021

**GO TO PREVIOUS PAGE**          **GO TO THE TOP OF THE PAGE**



AgendaQuick ©2005 - 2023 Destiny Software Inc. All Rights Reserved.

BISCH EXHIBIT 8



**Executive Director**

Michael Bisch

**Director of Philanthropic Engagement**

Joy Cohan

**Director of Operations**

Corkey Mapalo

**Director of Administration**

Valerie Dennis

**Interim Director of Accounting**

Katie Schroeder

**Director of Programs**

Zane Hatfield

*Board of Directors*

**Chairperson**

Tom Muller

**Vice-Chairperson**

Elizabeth Schmitz

**Secretary**

Jim Durst

**Treasurer**

Jennifer Engstrom

**Members**

Donald Hartman

Matt Mariani

Dan Ramos

Ned Spang

Kate Stille

Louise Walker

*Yolo Food Bank*
233 Harter Ave
Woodland, CA 95776

yolofoodbank.org

info@yolofoodbank.org

(530) 668-0690

November 2, 2021

Chair Jim Provenza
and the Yolo County Board of Supervisors
jim.provenza@yolocounty.org
clerkoftheboard@yolocounty.org

**Re:  YFB Board response to Ramin Yazdani's request for written input,
dated September 27, 2021**

Dear Chair Provenza and members of the Board,

Our Executive Director Michael Bisch recently presented Ramin Yazdani's SB 1383 funding proposal dated September 27, 2021 to the Yolo Food Bank (YFB) Board of Directors at our October meeting last week (Attachment 1).

After careful consideration, the YFB Board affirmed its previous decision to respectfully decline the funding offer.  YFB does not support the approach to surplus edible food recovery outlined in Mr. Yazdani's proposal for several reasons; primary among them is that it does not account for a +$2 million structural program deficit for YFB.

YFB is grateful for the time and consideration that Mr. Yazdani and his staff have given to date to seeking options to fulfill SB 1383 obligations for the county and the incorporated cities.  The YFB Board remains hopeful that opportunities to re-engage in such conversations that simultaneously benefit the food insecure residents served by YFB will re-emerge in the near future.  So many residents are depending upon our organizations for local improvements to both the environment and food security in order to live their very best lives in Yolo County.

With gratitude,

Tom Muller
Chair, Yolo Food Bank Board of Directors

Cc:   Ramin Yazdani, Div. of Integrated Waste Management
Michael Bisch, YFB Executive Director
Yolo Food Bank Board of Directors

BISCH000431

BISCH EXHIBIT 9

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | michael@yolofoodbank.org |
| **Sent:** | Friday, February 11, 2022 9:58 AM |
| **To:** | 'Kose, Pinar@CalRecycle'; 'Carlson, Robert@CalRecycle' |
| **Cc:** | 'Chad.Rinde@YoloCounty.org'; 'Michael Webb'; aaronl@cityofwestsacramento.org; 'ken.hiatt@cityofwoodland.org'; 'Kathleen.trepa@cityofwinters.org' |
| **Subject:** | Underestimating Tier 1 surplus edible food generation in Yolo County |

Dear Pin and Robert,

I'm writing to alert you to the fact that the CalRecycle guidance tool developed to assist jurisdictions for SB 1383 edible food recovery capacity planning has resulted in **all of our local jurisdictions** significantly underestimating the total annual amount of edible food generated by Tier 1s located in Yolo County. The **actual amount of edible food recovered** in calendar year 2021 exceeds the total amount projected by the jurisdictions nearly **eleven-fold (7.5 million vs. 689,000 pounds)**. Please note the 7.5 million of actual recovered pounds does not account for the edible food still being landfilled by Tier 1s; i.e. the total amount of annual pounds generated in Yolo County is clearly much higher.



It is not clear to Yolo Food Bank (or our consultants) whether the jurisdiction's underestimate is due to a flawed capacity planning tool, misapplication of the tool, failure to include all existing Yolo County Tier 1 generators in the jurisdictions' study, or a combination thereof. What is clear, however, is the SB 1383-mandated capacity planning in Yolo County is significantly underestimating the quantity of edible food generated while significantly overestimating the capacity to recover said food.

A few notes about the graph:

1. The actual quantities of edible food recovered by Yolo Food Bank and our agencies in prior years is fully documented and aligns with our CalRecycle grant reporting, reporting to CDSS, reporting to Feeding America, tax reporting to the IRS and Franchise Tax Board, and aligns with Yolo Food Bank's independently audited financials.

BISCH000753

2. The estimated quantities of edible food recovered by non-YFB affiliated food recovery organizations is based on our familiarity with these organizations' food assistance programs.

3. YFB projections of landfilled edible food is based on an entity-level comparison of actual food donations as well as estimates for new Tier 1s entering Yolo County.

4. The reduction in projected edible food recovery by Yolo Food Bank in 2022 is due to a combination of:

    a. a dramatic reduction in donation funding and funding from the local, state and federal funding compared to 2020 and 2021 **(as documented in the jurisdictions' own capacity study)**;

    b. shifting to other food procurement approaches that enable YFB and our agencies to meet community nutritional needs not fully covered by recovered food; and

    c. our inability to reach a mutually agreeable contract with Yolo County jurisdictions to enable YFB to continue food recovery operations sustainably.

5. **The local jurisdictions' estimate of 689,000 total pounds generated by Tier 1s in Yolo County** was taken from 2021 staff reports from the County of Yolo and the cities of Davis, West Sacramento, Winters and Woodland, which have subsequently been adopted by each of their governing bodies.

With gratitude,
Michael



Michael Bisch

*Executive Director*

p: 530.256.6412
a: 233 Harter Ave
   Woodland, CA 95776
e: michael@yolofoodbank.org
w: yolofoodbank.org

**With a gift HERE, you can increase food and nutrition security for Yolo County neighbors and be a harbor of hope during turbulent times.**

BISCH000754

BISCH EXHIBIT 10

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | Valerie Dennis <valerie@yolofoodbank.org> |
| **Sent:** | Tuesday, March 22, 2022 3:56 PM |
| **To:** | Michael Bisch |
| **Subject:** | Urgent - Fwd: CalRecycle Teams check in call April 18th, 11 AM |

Please see the email below and let me know if you can be at this meeting?  I went ahead and put the meeting on your calendar in hopes you can attend, but please let me know so I can respond to Shaina.  I am not comfortable having this meeting without you present.  I really think they should get answers from you. I have no idea if all the grant recipients are having their meetings with CalRecycle management, or just ours.  This very well could be a result of the email you wrote for the most recent report!  I'm guessing you were expecting or at least hoping for inquiries from them!   What a brilliant strategist you are!

Sorry to bother you on vacation, but I thought we should get this nailed down.

Thanks, Boss!



**Valerie Dennis**

*Director of Administration*

p: 530.668.0690 ext. 108
f: 530.668.8530
a: 233 Harter Ave
   Woodland, CA 95776
e: valerie@yolofoodbank.org
w: yolofoodbank.org

**With a gift HERE, you can increase food and nutrition security for Yolo County neighbors and be a harbor of hope during turbulent times.**

---------- Forwarded message ---------
From: **Meiners, Shaina@CalRecycle** <Shaina.Meiners@calrecycle.ca.gov>
Date: Tue, Mar 22, 2022 at 3:02 PM
Subject: Teams check in call April 18th, 11 AM
To: Valerie Dennis <valerie@yolofoodbank.org>

Hi, Valerie,

Thanks so much for all you work on the most recent Progress Report. I am awaiting to see if the science/technical team has any questions on that report. Meanwhile I have also been asked to move forward scheduling check in meetings. Perhaps, two years into the pandemic, we are finally improving at this process without the site visits that were the norm prior. Are you available for a Teams call on April 18th at 11 AM? If not, are there two or three other times that week of

1

BISCH001164

the next that would work for you? There was interest in hearing more about your project from management who would also be on the call, so scheduling is a bit tighter. Thank you in advance for your cooperation!

Kind regards,

Shaina

BISCH001165

BISCH EXHIBIT 11

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | Zane Hatfield <zane@yolofoodbank.org> |
| **Sent:** | Friday, March 18, 2022 3:36 PM |
| **To:** | Michael Bisch |
| **Subject:** | Fwd: SB 1383 Overview |

---------- Forwarded message ---------
From: **Joy Cohan** <jcohan@mowyolo.org>
Date: Fri, Mar 18, 2022 at 3:34 PM
Subject: Re: SB 1383 Overview
To: Zane Hatfield <zane@yolofoodbank.org>
Cc: Suzanne Reed <csuzannereed48@gmail.com>, William Schoen <wschoen@r3cgi.com>, Yolo-Food-Security-Coalition@googlegroups.com <Yolo-Food-Security-Coalition@googlegroups.com>

Thank you, Zane, for providing this additional information.

As many of you may know, I was part of the YFB team through the end of last year, so the bullet point in Bill's document that Zane references did strike a chord with me when I read it yesterday, as it's definitely a statement that represents a far more loaded topic.  I hope that Bill and others might assist with the contextual understanding of this information so that a useful conversation can occur for the group.

Wishing you all a good weekend,

Joy

## Joy Cohan

**Executive Director**

**Meals on Wheels Yolo County**

**40 N. East Street, Suite C, Woodland, CA 95776**

**Voice/text (530) 383-1814**

**Office (530) 662-7035**

**jcohan@mowyolo.org**

**www.mowyolo.org**

**www.facebook.com/MOWYolo**

BISCH000635

On Fri, Mar 18, 2022 at 1:15 PM Zane Hatfield <zane@yolofoodbank.org> wrote:

Happy Friday everyone,

Yolo Food Bank is very appreciative of Bill's Overview and his terrific, years-long efforts to advance a fully-funded, countywide SB 1383 edible food recovery program in Yolo County. The Food Bank has invested tremendous resources over the past four years into unsuccessful advocacy efforts for development and implementation of a meaningful SB 1383 edible food recovery program. Unfortunately, these efforts have been rebuffed by the County of Yolo and the cities of Davis, West Sacramento, Winters and Woodland. This bullet from Bill's Overview caught our attention:

- Yolo County's capacity plan is the only capacity plan that we know of that has been completed and made public at this time.

While Bill's assertion aligns with Yolo Food Bank's own research around the state, he didn't mention that our local jurisdictions have misrepresented and/or completely disregarded a number of the study's findings and recommendations.

The jurisdictions have dramatically understated the quantity of surplus edible food generated in Yolo County while overstating the available capacity to recover and distribute said food. The jurisdictions have also insisted that they are only required to provide funding for food collection, not distribution (which they claim is "above and beyond"). This interpretation of the law runs counter to the plain language of SB 1383. And finally, the staff have insisted that the edible food requirements are a "secondary consideration" under SB 1383. This assertion is at clear odds with the law itself. No prioritization is mentioned anywhere in SB 1383 or the regulations. In fact, there is only a single sentence devoted to edible food recovery in the entire law:

*(2) Shall include requirements intended to meet the goal that not less than 20 percent of edible food that is currently disposed of is recovered **for human consumption** by 2025.*

**The graph below** displays in stark terms the unreasonable position the jurisdictions are taking in regard to the quantity of edible food generated by Tier 1 generators in Yolo County. It shows the contrast between the **actual** quantity of edible food YFB has been collecting from Tier 1 generators over the past four years (green) versus the **total estimated** quantity of edible food the county and cities claim is being generated (yellow). And finally, the County has been ignoring most of the findings and recommendations from its own consultant, Abound Food Care (Edible Food Recovery Capacity Study and Funding Assessment in Yolo County). In the Abound Food Care report, please see:

- Page 2, paragraph 2.1, where the consultant accurately points out that the County had provided $1.5 million in funding in 2020 (and is now offering less than half that amount).
- Page 4, final paragraph, where the consultant accurately describes significant capacity constraints.
- Page 5, first paragraph, where the consultant states a "large percentage of Tier one generators that are bulk specialty donors, such as rice manufacturers, that would not be appropriate to send to a small food agency."
- Page 5, second paragraph, where the consultant notes that the County (and the cities) have failed to determine the ultimate goals necessary "To provide the County with an effective roadmap and strategy for edible food recovery."

2

BISCH000636

- Page 5, bullet #4, where the consultant again states, the YFB "operations currently exceed the capacity of their distribution center."
- Page 5, bullet #5, where the consultant states, "Current Food Recovery efforts conducted by YFB have been funded in part with pandemic relief funds. This source of funding is unsustainable."
- Page 6, paragraph immediately above **Short-Term Strategy**, where the consultant states it "is providing short term recommendations" only covering the next 12-18 months.
- Page 7, bullet #13, where the consultant recommends a strategy for funding "the development of the second warehouse for YFB."
- Page 11, where the consultant points out that the actual amount of food currently recovered by YFB far exceeds the estimated amount generated by the "calculator" the county has adopted.
- Page 12, first paragraph following the table, where the consultant states, "Ultimately each jurisdiction must use a number that best reflects the actual amount of edible food within the jurisdiction, in order to best plan for SB 1383 compliance."

In addition, the county has attempted to coerce Yolo Food Bank into using our personal and separate grant funding to fund the county and cities' SB 1383 compliance requirements. The following is from a county letter to the Food Bank dated September 27, 2021:

*"Additionally, we understand that there are current capacity limitations at YFB that would be partially resolved through the development of the new warehouse per the requested funds. However, there was confusion surrounding whether the capital campaign to develop funding for the building had already started as it was included in the proposed request for the American Rescue Plan (ARP) funding submitted to the County. Furthermore, it was uncertain how much of Resiliency Funds the State of California would be providing to YFB or how much could be used to address the identified need for additional warehouse space. We now know that YFB will receive $1,438,684 from the State specifically for infrastructure enhancement which should reduce the $2M request down to $561,316."*

Please note that the state grant funding has been allocated to Yolo Food Bank to meet our capacity needs as the Food Bank determines, not as the county may wish to direct these funds. The grant funds are not at all related to SB 1383 uses.

We believe the county and cities are engaged in a lowest-denominator, box checking exercise to avoid stiff state penalties, one that will result in the least quantity of food recovered. We believe they have no interest in actually nourishing Yolo County residents, otherwise they would be trying to rescue and redistribute the most amount of food possible in our incredibly food rich county. Yolo Food Bank has repeatedly stated that we cannot support the county and cities strategy. Their strategy is fundamentally at odds with our mission and the missions of our nonprofit partners.

BISCH000637



Notes:

1. The actual quantities of edible food recovered by Yolo Food Bank and partner agencies in prior years is fully documented and aligns with YFB grant reporting to CalRecycle, reporting to CDSS, reporting to Feeding America, tax reporting to the IRS and Franchise Tax Board, and aligns with Yolo Food Bank's independently audited financials.
2. The estimated quantities of edible food recovered by non-YFB affiliated food recovery organizations is based on YFB's familiarity with these organizations' food assistance programs.
3. YFB projections of landfilled edible food is based on an entity-level comparison of actual food donations as well as estimates for new Tier 1s entering Yolo County.
4. The reduction in projected edible food recovery by Yolo Food Bank in 2022 is due to a combination of:
    1. a dramatic reduction in donation funding and funding from the local, state and federal funding compared to 2020 and 2021 **(as documented in the jurisdictions' own capacity study)**;
    2. shifting to other food procurement approaches that enable YFB and partner agencies to meet community nutritional needs not fully covered by recovered food; and
    3. YFB's inability to reach a mutually agreeable contract with Yolo County jurisdictions to enable YFB to continue food recovery operations sustainably.
5. **The local jurisdictions' estimate of 689,000 total pounds generated by Tier 1s in Yolo County** was taken from 2021 staff reports from the County of Yolo and the cities of Davis, West Sacramento, Winters and Woodland, which have subsequently been adopted by each of their governing bodies.

On Thu, Mar 17, 2022 at 5:40 PM Suzanne Reed <csuzannereed48@gmail.com> wrote:
Thank you Bill.  I have uploaded this as a pdf along with the Yolo County food recovery capacity report to our Google Drive here, https://drive.google.com/drive/folders/1wxTjRYAfwceQBAJdy0c3ryM07R_1RP47 and here, https://drive.google.com/drive/folders/1wxTjRYAfwceQBAJdy0c3ryM07R_1RP47

Suzanne

BISCH000638

On Thu, Mar 17, 2022 at 7:51 AM William Schoen <wschoen@r3cgi.com> wrote:

Hello All


Attached is an overview of SB 1383 edible food recovery requirements. Happy to discuss further if you like just let me know.


**William Schoen**

Project Director

**R3 Consulting Group, Inc.**

*Resources · Respect · Responsibility*

**o** 916.782.7821 | **c** 916.947.4880

**e** wschoen@r3cgi.com

***Connect with us!***



--

*Suzanne*
**Suzanne Reed**
**The Collaboration Connection**
**https://www.collaborationconnection.org/**
--
You received this message because you are subscribed to the Google Groups "Yolo Access Food and Nutrition Emails" group.
To unsubscribe from this group and stop receiving emails from it, send an email to Yolo-Food-Security-Coalition+unsubscribe@googlegroups.com.
To view this discussion on the web visit https://groups.google.com/d/msgid/Yolo-Food-Security-Coalition/CAE0%3DaUD0wwXNu27iBXLkonmO3AXcqxjFjakpU0Bo-5nO7GW9TQ%40mail.gmail.com.
For more options, visit https://groups.google.com/d/optout.


--

BISCH000639

Zane Hatfield
he/him

*Director of Programs*



p: 530.668.0690 x123
f: 530.668.8530
a: 233 Harter Ave
   Woodland, CA 95776
e: zane@yolofoodbank.org
w: yolofoodbank.org

**Your year-end gift HERE nourishes healthy, happy holidays for ALL Yolo County residents, and ensures free, fresh food despite continued pandemic disruptions. Change lives in 2022 with your generosity today!**

--
You received this message because you are subscribed to the Google Groups "Yolo Access Food and Nutrition Emails" group.
To unsubscribe from this group and stop receiving emails from it, send an email to Yolo-Food-Security-Coalition+unsubscribe@googlegroups.com.
To view this discussion on the web visit https://groups.google.com/d/msgid/Yolo-Food-Security-Coalition/CAHA2aEYAw2LA43Taajnzhk4aZTsyzp7V3XCQR3QbuysqvCMqFQ%40mail.gmail.com.
For more options, visit https://groups.google.com/d/optout.



--

Zane Hatfield
he/him

*Director of Programs*

p: 530.668.0690 x123
f: 530.668.8530
a: 233 Harter Ave
   Woodland, CA 95776
e: zane@yolofoodbank.org
w: yolofoodbank.org

BISCH000640

**Your year-end gift HERE nourishes healthy, happy holidays for ALL Yolo County residents, and ensures free, fresh food despite continued pandemic disruptions. Change lives in 2022 with your generosity today!**

BISCH000641

BISCH EXHIBIT 12
PROVISIONALLY FILED UNDER
SEAL

BISCH EXHIBIT 13

3/11/22 12:59:28 PM PST

No, a miss call. Dropped my phone

3/11/22 12:59:50 PM PST

Liked "No, a miss call. Dropped my phone"

3/11/22 2:13:15 PM PST

I persuaded the ED of FBCCS to hold off on Raley's for a few days. He and I are going to huddle up again Tue afternoon.

3/11/22 4:13:05 PM PST

Would you mind sending me the list that Emma / Zane have the states all of the agencies and schedule that are currently picking up our edible food? Erics given the okay for me to write a scathing letter to all electives, city managers and staff that I have interacted with on this issue. I'll put it together this weekend. They are successfully ignoring the concerns of a prominent local business that has been more than willing to educate them as to the complexity of our business - and ultimately asking me to put aside a successful program and replace it with one that is not fully thought out, will eventually lead to reduction of food to the needy in our community and put more of the burden on tier 1 generators.

3/11/22 4:15:53 PM PST

The names of the agencies picking up from Nugget, right? Nothing else?

3/11/22 4:16:39 PM PST

It would be helpful for me to share the specifics of my NPOs - names, pick-up schedules, volume and what type of reduction I will be facing. the listed of agencies that will be picking up will allow me to share what I believe to be the lack of capacity to pick up all that I have. Thanks! Have a great weekend!

3/11/22 4:20:12 PM PST

When you say volume, do you mean per week, month, all of 2021?

3/11/22 4:22:33 PM PST

How about for the year abs average monthly?

3/11/22 4:23:18 PM PST

What's abs?

Exported from iPhone (DNPT9700HX96) on 5/8/23, 11:40 AM with iMazing by DigiDNA. Database date when extracted: 5/6/23, 3:05 PM

Page 2 of 4

BISCH000770

BISCH EXHIBIT 14

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | michael@yolofoodbank.org |
| **Sent:** | Monday, March 14, 2022 3:30 PM |
| **To:** | aaronl@cityofwestsacramento.org |
| **Subject:** | RE: Yolo Food Bank Conceptual American Rescue Plan funding request |

Aaron,
Your reply clearly was a response to the YFB funding request (it's part of the same email exchange for heaven's sake). It's also obvious you were attempting to establish some connection between the funding request and SB 1383 (somehow involving Mercy Coalition it now seems?).

I have no confidence the YFB funding request will be given a fair, impartial, transparent evaluation. We've not even received an acknowledgement that the request was received by you until I sent the reminder last Friday. As far as I know, the request for <u>emergency</u> food assistance support hasn't even been presented to the city council despite the passing of seven additional months of a federally and state declared public health emergency (where is the sense of urgency?). Speaking of which, there is very little in the public record regarding how the City of West Sacramento intends on investing it's nearly $12 million in ARPA funding. I wish to call your attention to this provision from Treasury guidance:

*Finally, although the pandemic's impacts have been widespread, both the public health and economic impacts of the pandemic have fallen most severely on communities and populations disadvantaged before it began. Low-income communities, people of color, and Tribal communities have faced higher rates of infection, hospitalization, and death,[10] as well as higher rates of unemployment and lack of basic necessities like food and housing.[11] Pre-existing social vulnerabilities magnified the pandemic in these communities, where a reduced ability to work from home and, frequently, denser housing amplified the risk of infection. Higher rates of pre-existing health conditions also may have contributed to more severe COVID-19 health outcomes.[12] Similarly, communities or households facing economic insecurity before the pandemic were less able to weather business closures, job losses, or declines in earnings and were less able to participate in remote work or education due to the inequities in access to reliable and affordable broadband infrastructure.[13]*

Food assistance and other services to meet the basic needs of disadvantaged populations are specifically called out as eligible uses of ARPA funds. These eligible uses also come with reduced documentation requirements per Treasury guidance.  Given the lack of transparency regarding intended City uses and process, ==please email any public staff reports that are available.==

Your accusation regarding Mercy Coalition is wildly off base. A senior public official accusing a charitable cause of a crime is beyond the pale, particularly when the charitable cause has been delivering multi-million dollar services annually to the West Sacramento community. And you copied another senior official to boot? It's not clear to me how you are going to make this right, but I'm open to suggestions.

And finally, your inquiry regarding interactions between Yolo Food Bank and one of our many subcontractors is inappropriate. No local official has ever pried into our 3rd-party contractual affairs since I've been at the helm of Yolo Food Bank and I'd be astounded to hear of any such instances prior to my employment.

-Michael

**From:** Laurel, Aaron <aaronl@cityofwestsacramento.org>
**Sent:** Monday, March 14, 2022 7:51 AM

BISCH000535

**To:** Michael Bisch <michael@yolofoodbank.org>
**Subject:** RE: Yolo Food Bank Conceptual American Rescue Plan funding request

Michael:

This isn't about YFB's funding request, which we'll evaluate separately and impartially, and it's not about SB 1383.  It's about your recent treatment of the Mercy Coalition.  I would like an explanation for the ultimatum given to cut off their access to food from Raley's and Nugget.

**AARON LAUREL**
**City Manager**



1110 West Capitol Avenue, 3rd Floor
West Sacramento, CA 95691
Telephone: (916) 617-4500
aaronl@cityofwestsacramento.org

---

**From:** michael@yolofoodbank.org <michael@yolofoodbank.org>
**Sent:** Saturday, March 12, 2022 5:15 PM
**To:** Laurel, Aaron <aaronl@cityofwestsacramento.org>
**Subject:** RE: Yolo Food Bank Conceptual American Rescue Plan funding request

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**WARNING:** The sender of this email could not be validated and may not match the person in the "From" field.

Aaron,
This is an odd, accusatory response to Yolo Food Bank's July 2021 request for federal pass-through, pandemic relief funding to support YFB's ongoing food assistance services in West Sacramento. Is there going to be an actual formal response forthcoming anytime soon or is last night's email it?  As a reminder, the economic harms inflicted by the pandemic on low income West Sacramento residents is still ongoing even after two years of significant hardships.

As for the substance of your email, Yolo Food Bank has been providing food assistance services to the West Sacramento community for fifty plus years (the 2021 Civic Leadership for Community Award bestowed upon us was a terrific honor!). I do not know what you are getting at, but I'm guessing it has something to do with ongoing, SB 1383-related bullying and false accusations directed at Yolo Food Bank by local jurisdictions. If that's the case, are you tying pandemic relief funding to YFB submission to City of West Sac SB 1383 demands?

-Michael

---

**From:** Laurel, Aaron <aaronl@cityofwestsacramento.org>
**Sent:** Friday, March 11, 2022 6:55 PM
**To:** michael@yolofoodbank.org
**Cc:** Ken Hiatt <Ken.Hiatt@cityofwoodland.org>
**Subject:** RE: Yolo Food Bank Conceptual American Rescue Plan funding request

Yes, I would like an explanation for why YFB has attempted to extort one of our local service providers.

BISCH000536

**AARON LAUREL**
**City Manager**



1110 West Capitol Avenue, 3rd Floor
West Sacramento, CA 95691
Telephone: (916) 617-4500
aaronl@cityofwestsacramento.org

---

**From:** michael@yolofoodbank.org <michael@yolofoodbank.org>
**Sent:** Friday, March 11, 2022 1:05 PM
**To:** ken.hiatt@cityofwoodland.org; Laurel, Aaron <aaronl@cityofwestsacramento.org>
**Subject:** RE: Yolo Food Bank Conceptual American Rescue Plan funding request

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**WARNING:** The sender of this email could not be validated and may not match the person in the "From" field.

Dear Ken and Aaron,
I hope you and your city government teams are thriving. I have some terrific news to share with you regarding the American Rescue Plan funding request Yolo Food Bank submitted to County of Yolo, City of Davis, City of West Sacramento and City of Woodland.  The Board of Supervisors has directed $1,178,000 in pandemic relief funding to YFB food assistance programs and the Davis city council has approved another $500,000.

The Woodland and West Sacramento communities have been hit the hardest by the economic impacts of the pandemic and have had the greatest need for YFB food assistance services.  We would love to see your two cities partner with us alongside Davis and Yolo.  Is there additional information I can send you to support our July 26, 2021 request (see email further below)?

With gratitude,



**Michael Bisch**

*Executive Director*

p: 530.256.6412
a: 233 Harter Ave
   Woodland, CA 95776
e: michael@yolofoodbank.org
w: yolofoodbank.org

3

BISCH000537

**Please "Nurture Yolo" to COVID-19 resilience! Your donations HERE provide FOOD FOR ALL equitably and sustainably.**

**Want to learn more about local food systems? Click HERE and mark your calendar for the "Food For Fairness Summit," October 19-21, 2021.**

**From:** michael@yolofoodbank.org <michael@yolofoodbank.org>
**Sent:** Monday, July 26, 2021 5:56 PM
**To:** 'Michael Webb' <mwebb@cityofdavis.org>; aaronl@cityofwestsacramento.org; 'ken.hiatt@cityofwoodland.org' <ken.hiatt@cityofwoodland.org>
**Cc:** 'Daniel Kim' <Daniel.Kim@yolocounty.org>
**Subject:** Yolo Food Bank Conceptual American Rescue Plan funding request
**Importance:** High

Dear Mike, Aaron and Ken,

While it continues to be another hectic summer for our communities, especially related to ongoing COVID-related challenges and fallout, I do hope that each of you are finding some time to re-charge your batteries. We're struggling to do likewise here at Yolo Food Bank (YFB) amidst continued demand for assistance, but looking ahead to productive dialogue with you and your colleagues on the many pending matters of mutual interest.

Among those opportunities to collaborate is in regards to the American Rescue Plan (ARP) funds allocated to the cities of Davis, West Sacramento and Woodland. What follows is a conceptual request for ARP funding for Yolo Food Bank. If it's your priority to maintain and increase food security in your communities, YFB is eager to work with you and your staff members to create the most impactful and transformational path forward.

Brookings Institute, California Public Policy Institute and Massachusetts Institute of Technology research makes clear that approximately one-third of the families in each of Yolo County's cities suffer from some level of housing and food insecurity due to low wages and high living costs. The statistics are even more alarming for our residents of color. The pandemic has significantly exacerbated the struggles of these families and has widened socioeconomic disparities, as we are all aware from countless media accounts and studies.

Fortunately, the entire county has effectively rallied around Yolo Food Bank and our distribution partners to mitigate some of the pandemic-induced harms throughout most of the pandemic. But YFB is now seeing signs of pandemic fatigue with community and governmental support receding.

According to state data, all but two or three food banks in California have dramatically reduced their food distributions by 20-40% since March, as federal pandemic food and funding provisions to food banks are receding. Yolo Food Bank has been one of the few exceptions, successfully maintaining extraordinary service levels, but in a matter of weeks we, too, will have no choice but to significantly cutback our food distributions, absent an intervention. These cutbacks will not only impact our direct distributions in the cities, but also our support for 84 community organizations such as Empower Yolo, HEART, YCCA, Mercy Coalition, STEAC, the ASUCD Student Pantry, Woodland Community College, Fourth and Hope, and more.

4

ARP support not only enables YFB to avoid cutting food distributions, but provides a clear path to a nutrition-secure county in perpetuity; a **transformational impact upon generations of children, in particular, in each of your cities**. YFB has submitted a conceptual funding proposal to Yolo County, which if granted, secures desperately needed food supplies and funding for distribution costs to backfill the federal cutbacks.  The proposal has four elements:

1. **Continuation of pandemic-relief food distributions.**  $3 million ($1 million per year over three years). Funded through ARP Tranches 1 and 2.
2. **Capacity expansion (second warehouse, refrigeration, trucks, and equipment).** $2 million over next twelve months. Funded through ARP Tranche 1. [Note: this funding need may no longer be necessary. The state is indicating it will fund this expansion. Details as yet unknown.]
3. **Buildout and deepening of the YFB community organization partnership network to more effectively reach underserved and difficult to access neighborhoods and rural communities.** $1 million total over three years. Funded through ARP Tranches 1 and 2.
4. **Securing a reliable source of locally grown produce for distribution via a food hub (either independently or in partnership with complementary organizations).** $5 million to $10 million over three years. Funded through ARP Tranches 1 and 2.

YFB requests each of the cities fund $700,000 of the total $11 million - $16 million ask of Yolo County, thereby sharing the service and capacity costs, and benefits with the county. Please note that Yolo Food Bank has been notified by the California Department of Social Services that we will be receiving a significant amount of food bank capacity-building funding.  This state capacity-building funding will reduce the amount requested under #2 above, although the details of the amount, timing, and eligible uses are as yet unknown. YFB is also actively seeking funding from other out-of-area sources, but there are no additional details to share at this time.

Again, this proposal is conceptual. Please let me know whether you have a general interest in maintaining the current level of nutritional services provided by Yolo Food Bank and our community partners in your cities, and building upon them for the future.  I look forward to our continued work together to nourish the future of our communities.

With gratitude,



**Michael Bisch**

*Executive Director*

p: 530.256.6412
a: 233 Harter Ave
   Woodland, CA 95776
e: michael@yolofoodbank.org
w: yolofoodbank.org

*Please "Nurture Yolo" to COVID-19 resilience! Your donations HERE provide FOOD FOR ALL equitably and sustainably.*

BISCH000539

**Want to learn more about local food systems? Click <u>HERE</u> and mark your calendar for the "Food For Fairness Summit," October 19-21, 2021.**

This message may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, re-transmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received. The sender does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. E-mail correspondence with the City, including attachments, may be subject to the California Public Records Act, and as such may be subject to public disclosure unless otherwise exempt by the Act.
This message may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, re-transmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received. The sender does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. E-mail correspondence with the City, including attachments, may be subject to the California Public Records Act, and as such may be subject to public disclosure unless otherwise exempt by the Act.

BISCH000540

BISCH EXHIBIT 15

**michael@yolofoodbank.org**

---

| | |
|---|---|
| **From:** | michael@yolofoodbank.org |
| **Sent:** | Friday, March 18, 2022 9:45 AM |
| **To:** | 'Chad Rinde' |
| **Subject:** | RE: Reaching out - Contract Request |

Dear Chad,
As I already wrote your West Sacramento counterpart in response to a similar inquiry, it is not prudent business practice to share bilateral agreements and details on interactions with contractual partners with 3rd parties. Indeed, it's completely inappropriate for governmental authorities to be requesting such information absent regulatory authority to do so given Yolo Food Bank is a private nonprofit.

And I did indeed respond to your other question. I'll cut-and-paste it here again:

"For the public record, the statements in your email below regarding Yolo Food Bank are inaccurate."

Warm regards,





**Michael Bisch**

*Executive Director*

p: 530.256.6412
a: 233 Harter Ave
   Woodland, CA 95776
e: michael@yolofoodbank.org
w: yolofoodbank.org

*Please "Nurture Yolo" to COVID-19 resilience! Your donations HERE provide FOOD FOR ALL equitably and sustainably.*

*Want to learn more about local food systems? Click HERE and mark your calendar for the "Food For Fairness Summit," October 19-21, 2021.*

---

**From:** Chad Rinde <Chad.Rinde@yolocounty.org>
**Sent:** Thursday, March 17, 2022 12:01 PM
**To:** michael <michael@yolofoodbank.org>
**Subject:** RE: Reaching out - Contract Request

Thank you, Michael, I appreciate the clarification on your Feeding America contracts and subcontracts and if possible would appreciate seeing a copy. There is a part of my original email that is unanswered on whether the YFB is

BISCH000541

terminating or threatening to terminate subcontracts with partner nonprofits who consider or accept funding from the County related to expansion of the edible food recovery program. We have heard there are concerns from nonprofits about jeopardizing their contract with YFB if they accept or sign a grant funding agreement with the County. Can you shed any light on this?

**Chad**

---

**From:** michael@yolofoodbank.org <michael@yolofoodbank.org>
**Sent:** Thursday, March 17, 2022 10:07 AM
**To:** Chad Rinde <Chad.Rinde@yolocounty.org>
**Subject:** RE: Reaching out - Contract Request

Dear Chad,
Thank you for your note. Yolo Food Bank is heartened by your closing statement regarding shared goals. Paraphrasing from our November 2, 2021 letter to the Yolo County Board of Supervisors, "We remain committed to partnering with the county and the cities of Davis, West Sacramento, Winters and Woodland and we are ready to engage in such conversations if the county and cities wish to do so. So many residents are depending upon our organizations for local improvements to both the environment and food security in order to live their very best lives in Yolo County."

For the public record, the statements in your email below regarding Yolo Food Bank are inaccurate. As your SB 1383 edible food recovery consultant shared with you and the other local jurisdictions in August 2021, Yolo Food Bank's Feeding America program is responsible for the bulk of edible food recovery in the county. The Food Bank has the exclusive right to solicit food donations from Feeding America affiliated donors in Yolo County and responsibility to then equitably distribute said food throughout the county. **We choose to subcontract this work in some instances with partner nonprofits on mutually agreeable terms.**

As stated at the outset, we remain ready to engage in conversations with the county and the cities. In addition to yourself, participation by all city managers would be particularly constructive. Yolo Food Bank is also open to a facilitated process.

Warm regards,



**Michael Bisch**

*Executive Director*

p: 530.256.6412
a: 233 Harter Ave
   Woodland, CA 95776
e: michael@yolofoodbank.org
w: yolofoodbank.org

*Please "Nurture Yolo" to COVID-19 resilience! Your donations HERE provide FOOD FOR ALL equitably and sustainably.*

BISCH000542

*Want to learn more about local food systems? Click **HERE** and mark your calendar for the "Food For Fairness Summit," October 19-21, 2021.*

**From:** Chad Rinde <Chad.Rinde@yolocounty.org>
**Sent:** Wednesday, March 16, 2022 3:38 PM
**To:** michael <michael@yolofoodbank.org>
**Subject:** Reaching out - Contract Request

Hi Michael,

It's been a while since we've touched base. I wanted to reach out as my staff have let me know that the Yolo Food Bank (YFB) is possibly terminating or threatening to terminate access to food for those food recovery agencies that may opt-in to accept funding from the County and cities as part of the edible food recovery program that the County's Board of Supervisors and the cities of Davis, Woodland, West Sacramento and Winters collectively approved in October/November 2021.  My understanding is that the terms of an updated or new YFB agreement may be a point of concern because food recovery agencies are apparently under the impression that accepting funding from the County could jeopardize their agreements with YFB.  Are you able to share a copy of recent YFB agreements with the food recovery agencies in the area?

The County's intent is not to jeopardize the relationship of food recovery agencies with YFB, so if there is something that we can revise or adjust in our agreement with these same agencies to eliminate such a concern so these agencies do not feel compelled to refuse the funding offered for such items as the purchase of scales, a new refrigerators, and other equipment, I'd like to have an opportunity for me and my staff to discuss with you and have an opportunity to address.  The County is at a loss as to why YFB would terminate agreements or withhold food from agencies that also want to accept funding from the County and our partner cities so I'm hoping we have misunderstood and look forward to hearing from you so we can achieve our shared goal of ensuring that edible food ends up in the hands of those in need it instead of at the Landfill.

Thanks,

*Chad D. Rinde, CPA*
Interim County Administrator
County of Yolo
Off:  (530) 666-8050


[THIS EMAIL ORIGINATED FROM OUTSIDE YOLO COUNTY. PLEASE USE CAUTION AND VALIDATE THE AUTHENTICITY OF THE EMAIL PRIOR TO CLICKING ANY LINKS OR PROVIDING ANY INFORMATION. IF YOU ARE UNSURE, PLEASE CONTACT THE HELPDESK (x5000) FOR ASSISTANCE]

3

BISCH000543

BISCH EXHIBIT 16



# COUNTY OF YOLO
### Board of Supervisors

District 1, **Oscar Villegas, Vice-Chair**
District 2, **Don Saylor**
District 3, **Gary Sandy**
District 4, **Jim Provenza**
District 5, **Angel Barajas, Chair**

625 Court Street, Room 204 ▪ Woodland, CA 95695
(530) 666-8195 ▪ FAX (530) 666-8193
www.yolocounty.org

Interim County Administrator, **Chad Rinde**
Deputy Clerk of the Board, **Julie Dachtler**

March 18, 2022

Board of Directors
Yolo Food Bank
233 Harter Ave
Woodland, CA 95776

Re:     Request for Review of Actions Related to Alleged Termination of Nonprofit Contracts for Accepting Edible
Food Recovery Grant Funding

Dear Chair Muller and Directors:

This letter requests that your Board of Directors act immediately to protect local food recovery organizations—a vital part of the County food recovery network—against actions that compromise their ability to provide food to those in need. We continue to gather information about the role of Yolo Food Bank leadership in these actions, which may include deterring small food pantries, churches, and other organizations from accepting local government funding and retaliating against those that accept funding by curtailing their access to donated food. While we hope your leadership's role has been mischaracterized, the community stakes are too high for us to delay requesting your immediate attention to these concerns.

As you know, the County is dedicated to improving the food security of its residents. The County administers CalFresh, WIC, and other programs and efforts focused on local food security, nutrition, and public health. The County granted $500,000 to Yolo Food Bank in 2019 to expand food recovery and distributions. During the COVID-19 pandemic, the County and Yolo Food Bank partnered to increase food recovery and distribution efforts, with the County providing nearly $1,500,000 and significant County staff to support Yolo Food Bank operations. The County has also tentatively allocated $3,000,000 in American Recovery Plan Act ("ARPA") funding to local food security, including a grant of up to $2,000,000 to New Seasons Community Development Corporation to support construction of a regional food hub in Capay Valley. Finally, the County and the cities of Davis, West Sacramento, Winters, and Woodland (collectively, the "Cities"), are offering $761,698 to Yolo Food Bank (which declined funding) and nine other community organizations to increase food recovery and distribution capacity pursuant to Senate Bill 1383 ("SB 1383").

The latter effort, relating to SB 1383 implementation, appears to be central to the developing crisis that prompted this letter. The $761,698 allocated by the County and Cities to SB 1383 implementation in 2022 will achieve many capacity and logistics improvements for the recipient food recovery entities. For example, the County's proposed 2022 funding to Countryside Church would enable the purchase of scales, a new cold storage refrigerator, and a new freezer, and would also provide additional funding for staff salaries, stipends, or other discretionary expenditures to allow the collection of edible food from the Esparto Valley Market, thus redirecting food from the landfill to those in need.  Additional funding in future years would further help the Church—the only entity serving the Esparto area—improve its capacity to collect and distribute food.

BISCH000483

Board of Directors, Yolo Food Bank
Page 2

We acknowledge that Yolo Food Bank leadership disagree with the local approach to SB 1383 implementation and have advocated for local governments to "fully fund[] a surplus edible food recovery program countywide"[1] by providing a greater local contribution ($2 million or more annually) to Yolo Food Bank. We also recognize that your CEO, Michael Bisch, contends that the local approach to SB 1383 compliance is somehow legally deficient and that Yolo Food Bank has rejected local government funding offered in connection with SB 1383.[2] Some members of your Board have expressed a similar view regarding local efforts to comply with SB 1383, indicating that the County and Cities must provide more funding directly to Yolo Food Bank to reduce or eliminate its need to fundraise to support local food recovery efforts.[3]

The County has previously considered these perspectives. Among other things, the County retained an independent consultant to study local food recovery capacity and conferred with CalRecycle to ensure the County's edible food recovery program complies with SB 1383. The implementation decisions made at the October 12, 2021 meeting of the Yolo County Board of Supervisors reflect our assessment of the most appropriate near-term approach to local SB 1383 implementation. We decline to debate competing approaches further in this letter except to say that whatever disagreement may exist regarding local implementation of SB 1383, we must prevent it from harming the charitable organizations that feed those in need. Local community organizations must not be forced to choose between access to food and accepting funding to improve their work.

Mr. Bisch has responded to inquiries from the County regarding this issue to clarify that the Yolo Food Bank has the "exclusive right to solicit food donations from Feeding America affiliated donors in Yolo County and responsibility to then equitably distribute said food throughout the County." And that the Yolo Food Bank may, in turn, "choose to subcontract this work in some instances with partner nonprofits on mutually agreeable terms." But it is our understanding that the Yolo Food Bank may now be threatening to terminate subcontracts with partner nonprofits simply because they may also choose to accept funding from the County related to expansion of edible food recovery programs. Such actions, if accurate, are contrary to the shared goals of redirecting edible food from the landfill to those in need, regardless of disputes we may have regarding SB 1383 requirements.

We ask that you take all steps necessary to ensure that Yolo Food Bank leadership is not responsible and, if you determine otherwise, do whatever is needed to immediately end this situation. This could include reassuring all local community partners that Yolo Food Bank will not restrict food distribution or otherwise retaliate against those accepting SB 1383 funding to improve their capacity to feed more people. The County stands ready to take any actions necessary to resolve this crisis but will not be forced to the table—to the extent that may be the underlying goal—to revisit the discretionary policy decisions already made regarding near-term SB 1383 implementation.

We would be remiss if we did not express our concern that the actions attributed to Yolo Food Bank's leadership, if true, create a serious question about their commitment to local food security and the best interests of our

---

[1] Yolo Food Bank letter to Board of Supervisors and City Councils, July 10, 2021 (available at: https://yolofoodbank.org/in-the-news/food-recovery-support-letter/).

[2] M. Bisch letter to R. Yazdani, Oct. 3, 2021; see also Anon., *New Yolo Food Bank Mission and Vision Prioritize Nutrition, Food Equity, and Resilience as Pandemic Lingers in New Year,* Davis Vanguard, Jan. 22, 2022 (quoting Michael Bisch as stating: "As a result, in 2022 we're pivoting toward investing our donors' generous contributions in the food equity work of our new mission and vision, *setting aside state-mandated activities that are the responsibility of local governments to fund and execute such as SB 1383 edible food recovery*. Yolo Food Bank must focus upon advancing the healthy outcomes that all local residents deserve, thereby increasing their quality of life.").

[3] J. Durst, *Guest Commentary: Feeding All Residents, Especially Vulnerable Children, Highest Priority,* Davis Vanguard, Sept. 20, 2021.

BISCH000484

Board of Directors, Yolo Food Bank
Page 3

communities. We urge you to perform your own assessment as the Board of Directors and, additionally, to evaluate matters beyond the scope of the immediate controversy. While we acknowledge that the final decision is within your sound discretion, your attention to the matters described herein will assure us that Yolo Food Bank remains an essential community partner—one of a small number of non-profit organizations that the community simply cannot do without. If your priorities are instead evolving away from reliably collaborating to enhance local food security, we will evaluate increasing the role of other partners and direct funding (including ARPA funding) to those entities rather than Yolo Food Bank.

We look forward to moving past the current challenges and reaffirming our strong partnership with Yolo Food Bank. We sincerely appreciate your consideration of the concerns raised in this letter and look forward to hearing from you shortly.


Sincerely,

Angel Barajas
Chair
Yolo County Board of Supervisors

Oscar Villegas
Vice Chair
Yolo County Board of Supervisors


cc:     Board of Supervisors, Yolo County
        Chad Rinde, Interim County Administrative Officer
        Philip Pogledich, County Counsel
        Mike Webb, City Manager, City of Davis
        Aaron Laurel, City Manager, City of West Sacramento
        Kathleen Trepa, City Manager, City of Winters
        Ken Hiatt, City Manager, City of Woodland

BISCH000485

BISCH EXHIBIT 17

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | Jesse Loren <jesse.loren@cityofwinters.org> |
| **Sent:** | Friday, March 18, 2022 11:17 PM |
| **To:** | Michael Bisch |
| **Subject:** | Fwd: [EXTERNAL]County Letter to Yolo Food Bank Board |
| **Attachments:** | 2022-0318-FINAL Letter to YFB Board.pdf |

Letter sent to my council

Jesse Loren
Cell 530-554-8087

Begin forwarded message:

> **From:** Kathleen Trepa <kathleen.trepa@cityofwinters.org>
> **Date:** March 18, 2022 at 10:16:43 PM PDT
> **To:** Wade Cowan <wade.cowan@cityofwinters.org>, Bill Biasi <bill.biasi@cityofwinters.org>, Harold Anderson <harold.anderson@cityofwinters.org>, Jesse Loren <jesse.loren@cityofwinters.org>, Pierre Neu <pierre.neu@cityofwinters.org>
> **Cc:** Kristine DeGuerre <Kristine.DeGuerre@cityofwinters.org>
> **Subject: Fwd: [EXTERNAL]County Letter to Yolo Food Bank Board**
>
> Good evening. Please see attached letter from the County to Yolo Food Bank. Please feel free to cal me if you have any questions.
>
> Thank you,
>
> Kathleen Trepa
> City of Winters
>
> Begin forwarded message:
>
>> **From:** Chad Rinde <chad.rinde@yolocounty.org>
>> **Date:** March 18, 2022 at 5:09:22 PM PDT
>> **To:** Tom@mullerag.com, jdurst@durstorganicgrowers.com, Westsacramento@groceryoutlet.com, hartmad3@sutterhealth.org, MattMariani@marianinut.com, danramos@ramco-ent.com, esspang@ucdavis.edu, kate.stille@nuggetmarket.com, LWalker@thatsmybank.com
>> **Cc:** Philip Pogledich <Philip.Pogledich@yolocounty.org>, "Mike Webb (MWebb@cityofdavis.org)" <mwebb@cityofdavis.org>, Aaron Laurel <aaronl@cityofwestsacramento.org>, Kathleen Trepa <kathleen.trepa@cityofwinters.org>, "ken.hiatt" <ken.hiatt@cityofwoodland.org>, michael <michael@yolofoodbank.org>
>> **Subject: [EXTERNAL]County Letter to Yolo Food Bank Board**
>>
>> Good evening Yolo Food Bank Board of Directors,

1

BISCH001166

Attached, please find a letter that I am sending on behalf of the Yolo County Board of Supervisors. I would appreciate if you can ensure that your full board has received a copy. While we endevoured to send electronically to the full board, I was unable to obtain an e-mail for Ms. Schmitz and a thus a hard copy was be sent to her attention.

Thank you,

*Chad D. Rinde, CPA*
Interim County Administrator
County of Yolo
Off:  (530) 666-8050

BISCH001167

BISCH EXHIBIT 18

**michael@yolofoodbank.org**

| | |
|---|---|
| **From:** | Hartman, Donald E. <HartmaD3@sutterhealth.org> |
| **Sent:** | Monday, March 21, 2022 12:12 PM |
| **To:** | michael@yolofoodbank.org; Tom@mullerag.com; jdurst@durstorganicgrowers.com; Westsacramento@groceryoutlet.com; MattMariani@MarianiNut.com; danramos@ramco-ent.com; esspang@ucdavis.edu; kate.stille@nuggetmarket.com; LWalker@thatsmybank.com; Elizabeth Schmitz |
| **Subject:** | RE: [**External**] RE: County Letter to Yolo Food Bank Board |

Michael,

We know that these allegations are not true and factual and you as well as Zane only have the best interest of YFB, the Board, and the communities we serve at heart.   This looks
like some sort of a conspiracy plot or something.   I'm sure the Board has your back!

Donald E. Hartman
Human Resources Director
Sutter Davis Hospital
(530) 759-7459  **Office**
(916) 524-4445  **Cell Phone**
**(916) 503-7824  Right Fax**
HartmaD3@sutterhealth.org





---

**From:** michael@yolofoodbank.org <michael@yolofoodbank.org>
**Sent:** Monday, March 21, 2022 11:36 AM
**To:** Tom@mullerag.com; jdurst@durstorganicgrowers.com; Westsacramento@groceryoutlet.com; Hartman, Donald E.
<HartmaD3@sutterhealth.org>; MattMariani@MarianiNut.com; danramos@ramco-ent.com; esspang@ucdavis.edu;
kate.stille@nuggetmarket.com; LWalker@thatsmybank.com; Elizabeth Schmitz <ekpschmitz@gmail.com>
**Subject:** [**External**] RE: County Letter to Yolo Food Bank Board

---

**WARNING:** This email originated outside of the Sutter Health email system!
**DO NOT CLICK** links if the sender is unknown and never provide your User ID or Password.

---

Dear YFB Board,
I am still developing the requested range of responses to the county letter for the board's consideration. I am also aware
that some individual board members are mulling over responses. In the meantime, I wish to address the county
accusations for the record. ==I categorically deny the accusations entirely. The accusations are absolutely false and have
undeniably caused Yolo Food Bank, Zane Hatfield and myself irreparable reputational and financial harm (and==

BISCH000546

==possible emotional harm as well in my case, I can't speak for Zane).== Statements in the letter are undeniably defamatory. They have been widely disseminated to all of the city managers in Yolo County, the Winters City Council, Feeding America headquarters in Chicago, the Food Bank of Contra Costa & Solano and to Abound Food Care. And those are only the entities that we know about.

Furthermore, the city manager of West Sacramento sent me an email the evening of March 11th, accusing Yolo Food Bank of extortion while CC-ing the city manager of Woodland. This too is defamatory and harmful to Yolo Food Bank and by extension to me. Here is the exact written comment:

*"Yes, I would like an explanation for why YFB has attempted to extort one of our local service providers."*

The West Sacramento city manager's one-sentence, defamatory reply was to my email to him earlier in the day requesting a response to Yolo Food Bank's request for ARP funding (submitted last summer with no reply to date).

This pattern of false and defamatory accusations against Yolo Food Bank, and against me personally, has been ongoing for nearly eighteen months. The only difference now is it's out in the open and in writing instead of reputational assassination behind closed doors.

But wait, it gets even worse. The Board of Supervisors has framed the letter in such a way where if the Yolo Food Bank board fails to accede to county demands, whether in regards to investigating YFB "leadership", doing the county's bidding in regards to other nonprofits, or continuing to criticize the county's actions in regards to SB 1383, Yolo Food Bank's board is then guilty of harming other "local food recovery organizations" and of actively undermining food security in Yolo County.

Finally, I'd like to point out another ambiguous threat in the county letter (which is in addition to the unambiguous threat of withholding ARP allocation). I have no idea what the BOS is referring to with the last part of this sentence (the underlined portion):

*"We urge you to perform your own assessment as the Board of Directors <u>and, additionally, to evaluate matters beyond the scope of the immediate controversy.</u>"*

-Michael

---

**From:** michael@yolofoodbank.org <michael@yolofoodbank.org>
**Sent:** Saturday, March 19, 2022 9:35 AM
**To:** 'Tom@mullerag.com' <Tom@mullerag.com>; 'jdurst@durstorganicgrowers.com' <jdurst@durstorganicgrowers.com>; 'Westsacramento@groceryoutlet.com' <Westsacramento@groceryoutlet.com>; 'hartmad3@sutterhealth.org' <hartmad3@sutterhealth.org>; 'MattMariani@MarianiNut.com' <MattMariani@MarianiNut.com>; 'danramos@ramco-ent.com' <danramos@ramco-ent.com>; 'esspang@ucdavis.edu' <esspang@ucdavis.edu>; 'kate.stille@nuggetmarket.com' <kate.stille@nuggetmarket.com>; 'LWalker@thatsmybank.com' <LWalker@thatsmybank.com>; Elizabeth Schmitz (ekpschmitz@gmail.com) <ekpschmitz@gmail.com>
**Subject:** RE: County Letter to Yolo Food Bank Board

Dear YFB Board,
I wanted to let you all know that Tom has me developing a range of responses to the county letter for you to review, discuss and act upon at the Wednesday board meeting.

-Michael

---

**From:** Chad Rinde <Chad.Rinde@yolocounty.org>
**Sent:** Friday, March 18, 2022 5:09 PM

BISCH000547

**To:** Tom@mullerag.com; jdurst@durstorganicgrowers.com; Westsacramento@groceryoutlet.com; hartmad3@sutterhealth.org; MattMariani@MarianiNut.com; danramos@ramco-ent.com; esspang@ucdavis.edu; kate.stille@nuggetmarket.com; LWalker@thatsmybank.com
**Cc:** Philip Pogledich <Philip.Pogledich@yolocounty.org>; Mike Webb (MWebb@cityofdavis.org) <mwebb@cityofdavis.org>; Aaron Laurel <aaronl@cityofwestsacramento.org>; Kathleen Trepa <kathleen.trepa@cityofwinters.org>; ken.hiatt <ken.hiatt@cityofwoodland.org>; michael <michael@yolofoodbank.org>
**Subject:** County Letter to Yolo Food Bank Board

Good evening Yolo Food Bank Board of Directors,

Attached, please find a letter that I am sending on behalf of the Yolo County Board of Supervisors. I would appreciate if you can ensure that your full board has received a copy. While we endevoured to send electronically to the full board, I was unable to obtain an e-mail for Ms. Schmitz and a thus a hard copy was be sent to her attention.

Thank you,

*Chad D. Rinde, CPA*
Interim County Administrator
County of Yolo
Off:  (530) 666-8050

3

BISCH000548

BISCH EXHIBIT 19

Dear Chair Barajas and Supervisor Villegas,

I am writing this letter on behalf of the Yolo Food Bank's Board of Directors in response to your letter dated March 18, 2022. We take the concerns you shared very seriously.

The Yolo Food Bank Board (YFB) recognizes the tremendous amount of planning and effort the county is making on SB 1383 compliance. While we have some differences of opinion on the ways the plan could be executed and were very disappointed that promised outreach meetings to the Yolo Food Bank and Tier One Generators by County staff were not kept, we look forward to being a participant and contributor in continued discussions with all concerned parties including the County, Cities, and Network Partners.

We have investigated the most recent events that led to the writing of your letter. Below are our comments, plans and suggestions that we hope will allow us all to work together in a positive manner moving forward.

The board recognizes that our Executive Director's communication with several of our regional partners, particularly the county and the Mercy Coalition, has not been well received and has strained relationships between the food bank, our partner nonprofits and local government.

I, along with other board members, have shared and discussed with our Executive Director, Michael Bisch, these issues. Additionally, a board representative, Dan Ramos, recently met personally with both Michael and Don Bosley of the Mercy Coalition of West Sacramento in West Sacramento to discuss and rectify the situation. The outcome of this meeting was very positive and the Yolo Food Bank's relationship has been restored with the Mercy Coalition and both parties are now focused on continuing the work of providing food to those in need in the West Sacramento community. Please contact Don Bosley for an update on the meeting.

At this time, our Board is not aware of any incidents of YFB staff deterring non-profit partners from accepting SB 1383 funding. If there are any other occurrences of this or strained relationships that we should be aware of, we ask that you please communicate these to us. We will proactively address and work through any issues or misunderstandings, as we did with the Mercy Coalition.

BISCH000566

The board is actively working on a plan to designate a YFB senior staff member as the primary liaison between the food bank and local government agencies.   Once appointed, this senior staff member will work with you, the Yolo County Board of Supervisors, and your staff, as well as City Council Members, City Managers, and their staff. We hope this shift in the YFB's senior staff communication responsibilities will allow us to refresh, reset and deepen the YFB's relationships with the Yolo County and the cities of Davis, West Sacramento,Winters and Woodland.

Once, we have activated this plan, we propose a three to six (3 to 6) month check-in with elected representatives from the county and cities, and YFB Board representatives. The last two years have been extremely difficult for all of us, non-profits and county government alike. Our staff, like yours are exhausted and the fatigue of keeping pace with pandemic demands have strained relationships and increased tensions. We'd like to work together, board to board, to rebuild our relationship.

Upon receiving the county's SB 1383 proposal, extensive analysis was shared and discussed by our Board of Directors. The board unanimously agreed that it would not be fiscally responsible to accept the proposal. We, individually and collectively, have a responsibility to put the financial interests of the Food Bank first, and we respectfully declined.

We would like our newly appointed YFB communication liaison to meet with you and your staff to revisit the proposal. We'd like to better understand the intent of your proposal and determine if there are parts of the proposal that we can accept and not jeopardize the financial state of YFB. Please let me know when such a meeting can be scheduled and with whom.

Lastly, we were very concerned and frustrated that our top tier generators in the Yolo County were not allowed to participate in the development of the County and City's SB 1383 programs. Yolo County is fortunate to have industry leaders in the food recovery space that use a widely accepted "Feeding America" criteria for recording food recovery information. We respectfully request that you meet with tier one generators, giving them the opportunity to share their challenges and possible solutions to the current program. Board members, Kate Stille (Nugget Markets) and Jennifer Engstrom (Grocery Outlet, West Sacramento), are willing to pull together a group of generators that are interested in meeting. Kate and Jennifer will be reaching out to you to arrange such a meeting.

In the last three years, we have ramped up our food security efforts almost 3-fold and we could not do that without the sizeable financial contributions from our local government partners. As the pandemic begins to subside, we are not seeing a

BISCH000567

corresponding decline in the number of Yolo County residents using our services. We are experiencing a significant decrease in revenue from pandemic and philanthropic sources. Our resources and ability to meet community needs relative to community need are diminishing. Financially, the Yolo Food Bank is solid, but we do not have the capability to maintain the capacity we have been serving indefinitely.

In closing, we deeply value our partnerships with the county and local cities. We need to maintain that relationship and our community needs us working together to make sure they have food on their plates. Our mission and partnership are as vital today as it has ever been.

We appreciate the county bringing concerning issues to our attention. We look forward to future discussions and a long and productive relationship moving forward.


In Gratitude,


Tom Muller,
Chair, Board of Directors
Yolo Food Bank

BISCH000568

BISCH EXHIBIT 20

# YOLO COUNTY BOARD OF SUPERVISORS

# MINUTES & SUPPORTING MATERIALS

**Pursuant to County Code Section 2-1.103**

# MAY 10, 2022



**COUNTY BOARD OF SUPERVISORS**
**CHAIR, ANGEL BARAJAS, DISTRICT 5**
**VICE-CHAIR, OSCAR VILLEGAS, DISTRICT 1**
**DON SAYLOR, DISTRICT 2**
**GARY SANDY, DISTRICT 3**
**JIM PROVENZA, DISTRICT 4**

**NOTE: This meeting was held via teleconference, pursuant to Government Code section 54953(e)(1) (as amended by Assembly Bill 361), available at the following link.**

BISCH001168

**CHAD RINDE**                                               **PHILIP J. POGLEDICH**
**INTERIM COUNTY ADMINISTRATOR**                                **COUNTY COUNSEL**

**Roll Call:**
**Villegas**
**Saylor**
**Sandy**
**Provenza**
**Barajas**

**Chad Rinde, Interim County Administrator**
**Philip J. Pogledich, County Counsel**

---

| **9:00 A.M. CALL TO ORDER** |
| :---: |

Open Meeting

1. Call to Order.

2. Pledge of Allegiance.

3. Roll Call.

4. Consider Approval of Agenda.

> Minute Order No. 22-56: Approved agenda as submitted noting Agenda Item No. 42 (Implementation of the Voter's Choice Act for the 2022 statewide election cycle) will be included in the approval of the Consent agenda.
>
> MOVED BY: Provenza / SECONDED BY: Saylor
> AYES: Villegas, Saylor, Sandy, Provenza, Barajas.
> NOES: None.
> ABSTAIN: None.
> ABSENT: None.

5. Public Comment: To be afforded a brief period of time to speak before the Board of Supervisors, please refer to further instructions at the end of the agenda on how to electronically participate and submit your public comments. Note: per the Ralph M. Brown Act, Board members may briefly respond to statements made or questions posed during the public comment period on items that are not on the agenda, but may not take action on such items. You may also share your thoughts with the Board of Supervisors by submitting a written statement via email to clerkoftheboard@yolocounty.org.

> Richard Lauckhart (El Macero Resident), Marlen Garcia, Cass Sylvia, Deborah Francis, Lisa Salinas, John Amnah, Suzanne Reed (West Sacramento Resident), Elaine Roberts Musser, Valerie Olson (Woodland Resident), Janee Rawlings (Woodland Resident), Dawn Myers, Kate Laddish, Stan and Mary Nisson addressed the Board of Supervisors during public comment.

---

| **CONSENT AGENDA** |
| :---: |

BISCH001169

Minute Order No. 22-57: Approved Consent Agenda Item Nos. 6 through 31 plus Regular Agenda Item No. 42. Additionally, comments were made on Item Nos. 12 and 13.

MOTION BY: Provenza / SECONDED BY: Villegas
AYES: Villegas, Saylor, Sandy, Provenza, Barajas.
NOES: None.
ABSTAIN: None.
ABSENT: None.

# General Government

## Clerk of the Board

6. Approve the minutes of the April 26, 2022 Board of Supervisors meeting.

Approved the minutes of the April 26, 2022 Board of Supervisors meeting on Consent.

7. Ratify the following:

   A. Resolution No. 22-55 declaring Public Works Week May 15-21, 2022.

   B. Resolution No. 22-56 proclaiming May 30, 2022 as Memorial Day in Yolo County.

   C. Resolution No. 22-57 proclaiming May 2022 as Asian American and Pacific Islander Heritage Month.

   D. Resolution No. 22-58 declaring May 2022 as Foster Care Month.

Ratified **Resolution Nos. 22-55 thru 22-58** on Consent.

8. Accept resignations, consider appointments and reappointments.

Approved recommended action on Consent.

9. Correspondence.

Approved Correspondence on Consent.

BISCH001170

10. Conferences, meetings and events the Board of Supervisors attended.

> Approved recommended action on Consent.

## County Administrator

11. Adopt an Initial Study/Mitigated Negative Declaration and Mitigation Monitoring and Reporting Program, as the appropriate level of environmental review in accordance with the California Environmental Quality Act, for the Knights Landing Flood Management Project's Drainage Infrastructure Improvements element; approve the project; and direct County staff to file a Notice of Determination with the County Clerk-Recorder and the State Clearinghouse.  (No general fund impact) (Perez/Sabatini)

> Approved recommended action on Consent.

12. Adopt resolution establishing the Yolo Youth Commission as a 2-year pilot program and approve and authorize the Interim County Administrator or designee to sign the Grant Funding Agreement with Yolo County Office of Education for $400,000 to administer the Yolo County Youth Commission. (No general fund impact) (Perez/Van Hoosear)

> Approved **Resolution No. 22-59 and Agreement No. 22-78** on Consent.

## County Counsel

13. Approve and authorize the Board Chair to sign a budget resolution and related agreement with Ducks Unlimited to pass-through $2.5 million in state funding for agricultural, drainage, and wetland management improvements in the Yolo Bypass Wildlife Area. (No general fund impact) (4/5 vote required) (Pogledich)

> Approved **Budget Resolution No. 21-124.35 and Agreement No. 22-79** on Consent.

## Financial Services

14. Receive and file the Yolo County Treasurer's Report on Investments for the quarter ended March 31, 2022. (No general fund impact) (Haynes/Xiong)

> Approved recommended action on Consent.

BISCH001171

Case 2:23-mc-00455-MCE-DB  Document 14-1  Filed 06/13/23  Page 116 of 134

15. Receive and file the Yolo County Treasurer's Debt Report for the fiscal year ending June 30, 2021.  (No general fund impact) (Haynes/Xiong)

> Approved recommended action on Consent.

## General Services

16. Amend two work authorizations with Kitchell and Lionakis related to the SB 863 Leinberger Replacement Project and adopt a budget resolution to approve acceptance of additional grant award funds from the State of California Board of State and Community Corrections and increase the 2021-22 appropriations for the Project budget by $3,850,000. (General fund impact $150,000) (4/5 vote required) (Yarris)

> Approved **Budget Resolution No. 21-124.36** on Consent.

17. Approve first amendment to PO176688, contract change order 1 with Glass West, Inc for an increase of $14,619 for the replacement of the windows at the District Attorney Building at 301 2nd Street in Woodland for a total contract of $71,061; approve the use of Accumulated Capital Outlay funds in the amount of $42,000; adopt a budget resolution increasing the General Services Facilities 2021-22 budget by $42,000; amend 2021-22 authorized equipment list to include the replacement windows; approve a total project budget of $82,000; and upon project completion authorize the Director of General Services to sign and record the Notice of Completion.  (No general fund impact) (4/5 vote required) (Yarris)

> Approved **Budget Resolution No. 21-124.37** on Consent.

## Human Resources

18. Adopt Authorized Position and Salary Resolution to implement changes in Financial Services, Health & Human Services Agency and the Public Defender's Office. (No general fund impact) (Lara)

> Approved **Resolution No. 22-60** on Consent.

# Health & Human Services

## Adult & Aging

19. Approve fourth amendment to Agreement No. 19-144 with Yolo Community Care Continuum to extend the term of the agreement through June 30, 2023; add funding in the amount of $524,200 by adding $28,500 for 2021-22 and $495,700 for 2022-23 for a new contract maximum of $1,987,291 for the period of July 1, 2019 through June 30, 2023; and update and clarify language in the agreement for the provisions of adult residential services. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-80** on Consent.

20. Approve third amendment to Agreement No 21-117 with TLCS, Inc. dba Hope Cooperative to reduce funding in the amount of $100,670 by reducing California Department of Social Services Project Roomkey/Rehousing funding in the amount of $83,892 for 2021-22 and reducing Community Services Block Grant funding in the amount of $16,778 for 2022-23 for a new contract maximum of $5,715,416 for the period of April 1, 2021 through June 30, 2023 to provide Full-Service Partnership Services for Medi-Cal eligible Seriously Mentally Ill Adult and Older Adult clients; and to update and clarify language in the agreement. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-81** on Consent.

21. Approve second amendment to Agreement No. 21-194 with Yolo Wayfarer Center to extend the term of the agreement through September 30, 2022; increase funding in the amount of $51,485 for a new contract amount of $311,485 for the period of December 22, 2020 through September 30, 2022; and to revise line item amounts in the budget and update and clarify language in the agreement for the provision of Emergency Shelter/Non-Congregate Shelter as a subrecipient of the Emergency Solutions Grant-Coronavirus Round 2. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-82** on Consent.

22. Approve second amendment to Agreement No. 21-195 with Yolo Wayfarer Center to extend the term of the agreement through September 30, 2022; increase funding in the amount of $51,485 for a new contract amount of $331,485 for the period of December 22, 2020 through September 30, 2022; revise line item amounts in the budget and to update and clarify language in the agreement for the provision of Street Outreach Services as a subrecipient of the Emergency Solutions Grant-Coronavirus Round 2. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-83** on Consent.

23. Approve fourth amendment to Agreement No. 18-55 with CommuniCare Health Centers to add funding in the amount of $264,918.56, by adding $20,428.52 to 2021-22 and extending the term of the agreement through June 30, 2023; adding funding in the amount of $244,490.04 to 2022-23, for a new contract maximum of $716,495.67, for the period of

BISCH001173

February 23, 2018 through June 30, 2020 for the provision of Housing and Disability Advocacy

County 22-0045 5g MOE - DD Document 16 - Filed 06/18/23    Page 118 of 134
Program Services and update and clarify language in the agreement. (No general fund
impact) (Sullivan)

> Approved **Agreement No. 22-84** on Consent.

## Child, Youth & Family

24. Approve and authorize the Chair to sign Agreement No. 75440274 with California Health and
Human Services Agency, Office of Systems Integration in the amount of $787,478 for the
period of June 1, 2022 through May 31, 2025 to provide the state with a county employee to
perform subject matter expertise related to the Child Welfare Services – California Automated
Response and Engagement System Project. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-85** on Consent.

25. Approve fifth amendment to Agreement No. 19-16 with CommuniCare Health Centers to add
one (1) additional six (6) month optional extension for 2022-23 in an amount not to exceed
$36,000; revise the maximum payment obligation; and update the collection rate for the
provisions of continued securing supervised toxicology specimen collection for County
referred Child Welfare clients. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-86** on Consent.

## Community Health

26. Approve and authorize the Chair to sign State Agreement No. 22-10211 with California
Department of Public Health in the amount of $1,005,980 for the period of July 1, 2022
through June 30, 2027 for the provision of the Local Oral Health Program. (No general fund
impact) (Sullivan)

> Approved **Agreement No. 22-87** on Consent.

27. Approve and authorize the Chair to sign State Agreement No. 21-10600 with California
Department of Public Health in the amount of $640,280 for the period of July 1, 2021 through
December 31, 2025 for implementing the Disease Intervention Specialist workforce grant. (No
general fund impact) (Sullivan)

> Approved **Agreement No. 22-88** on Consent.

BISCH001174

Service Centers

28. Approve first amendment to Agreement No. 21-08 to Subsidized Employment Agreement No. SE 21-7 with Yolo County Children's Alliance to increase funding in the amount of $32,604 for 2021-22; add funding of $63,888 for 2022-23; and extend the term of the agreement through June 30, 2023 for a new contract maximum of $129,492, for the provision of subsidized employment services. (No general fund impact) (Sullivan)

> Approved **Agreement No. 22-89** on Consent.

## Community Services

Community Services

29. Adopt resolution requesting the collection of charges on the 2022-23 tax roll for the County Service Areas. (No general fund impact) (Echiburu/Villa)

> Approved **Resolution No. 22-61** on Consent.

30. Approve the Russell Boulevard Corridor Vision Plan and direct staff to pursue funding opportunities for implementing the project concepts. (No general fund impact) (Echiburú/Burton)

> Approved recommended action on Consent.

31. Approve first amendment to Agreement No. 15-72 with Mark Thomas & Company, Inc., to extend the term of the agreement through May 18, 2026 for the County Road 98 Bike and Safety Improvement Project, Phase II Survey Services. (No general fund impact) (Echiburú/Razo)

> Approved **Agreement No. 22-90** on Consent.

## HONORARY RESOLUTIONS

Honorary Resolutions

BISCH001175

32. Present Honorary Resolutions

   A. Resolution declaring Public Works Week May 15-21, 2022. (Supervisor Saylor)

   B. Resolution proclaiming May 30, 2022 as Memorial Day in Yolo County. (Supervisor Barajas)

   C. Resolution proclaiming May 2022 as Asian American and Pacific Islander Heritage Month. (Supervisor Sandy)

   D. Resolution declaring May 2022 as Foster Care Month. (Supervisor Villegas)

---

| |
|---|
| Resolutions were presented. |

---

**TIME SET AGENDA**

9:00 a.m. County Administrator

33. Hold public hearing, adopt a resolution approving the purchase of the St. John's Retirement Village property located at 135 Woodland Avenue, Woodland, CA (APNs 005-720-028-000 and 005-720-027-000), and approve various additional actions related to the purchase of the Property, including execution of a purchase and sale agreement in substantially the form provided, adoption of a budget resolution to utilize American Rescue Plan funds for the acquisition of property in the total remaining amount of $2,500,000 including making a payment of a $50,000 good faith deposit, and adoption of a Notice of Exemption pursuant to the California Environmental Quality Act. (No general fund impact) (4/5 vote required) (Rinde/Hood)

---

| |
|---|
| Dawn Myers, Pat Leary, Linda Wight, Timothy Allen, Tom Barth, Pamela Kaufmann and Anson Houghton addressed the Board of Supervisors on this item. |

---

| |
|---|
| Minute Order No. 22-58: Directed staff to revise purchase and sale agreement to reflect pending litigation, adjusting timeframes for closing and including appropriate conditions to ensure resolution of litigation and any other outstanding issues to satisfaction of County and continue public hearing to 9:00 a.m. on May 24, 2022 for final consideration of a revised purchase agreement and any related matters, including consideration of a budget resolution and CEQA documentation, as well as further review of a draft reuse plan and transportation relating to Adult Day Health Center operation and service throughout the County. <br><br> MOTION BY: Saylor / SECONDED BY: Provenza <br> AYES: Villegas, Saylor, Sandy, Provenza, Barajas. <br> NOES: None. <br> ABSTAIN: None. <br> ABSENT: None. |

---

9:00 a.m. Financial Services

34. Receive presentation, hold a public hearing, and adopt a resolution approving documents and actions, including authorizing the execution and delivery of an Installment Sale Agreement, Assignment Agreement and certain other documents, to complete the debt financing with the

BISCH001176

Yolo County - Public Agencies Financing Authority for Solid Waste System improvement projects. (No general fund impact) (Haynes/Xiong)

> Minute Order No. 22-59: Held public hearing and approved recommended action by **Resolution No. 22-62 and Agreement Nos. 22-91 and 22-92.**
>
> MOVED BY: Sandy / SECONDED BY: Provenza
> AYES: Villegas, Saylor, Sandy, Provenza, Barajas.
> NOES: None.
> ABSTAIN: None.
> ABSENT: None.

## 9:00 a.m. County Administrator

35. Hold public hearing regarding the renewal of the Yolo County Tourism Business Improvement District. (No general fund impact) (Rinde/Tengolics)

> Held public hearing regarding the renewal of the Yolo County Tourism Business Improvement District.

---

**REGULAR AGENDA**
**(NOTE: Items below may be heard at any time during the meeting)**

## County Affiliated Agencies

### Sacramento-Yolo Mosquito & Vector Control District

36. Receive annual update from Sacramento-Yolo Mosquito & Vector Control District. (No general fund impact) (Gary Goodman)

> Received annual update from Sacramento-Yolo Mosquito & Vector Control District.

## General Government

### Board of Supervisors

37. Action items and reports from members of the Board of Supervisors, including announcements, questions to be referred to staff and reports on various 2x2s and meetings with other agencies. (Board of Supervisors)

BISCH001177

A.  Budget Ad Hoc Subcommittee update. (Supervisors Villegas and Barajas)

B. Cannabis Regulation Ad Hoc Subcommittee update. (Supervisors Saylor and Barajas)

C. Capital Investments Committee update. (Supervisors Saylor and Barajas)

D. County Debt Committee update. (Supervisors Sandy and Barajas)

E. Rolling Acres Flooding Ad Hoc Board Subcommittee update. (Supervisors Saylor and Barajas)

F. Tribal Ad Hoc update. (Supervisors Villegas and Barajas)

---

Received Board Reports.

---

38. Long Range Planning Calendar - recurring opportunity for Board members to discuss and as needed, direct staff regarding future Board agenda items. (Board of Supervisors)

## County Administrator

39. Action items and reports from the Interim County Administrator. (Rinde)

---

Received report from the Interim County Administrator.

---

# General Government

---

## County Administrator

40. Receive presentation on the Yolo County Mass Notification System. (No general fund impact) (Rinde/Carey)

---

Kate Laddish addressed the Board of Supervisors on this item.

---

Received presentation on the Yolo County Mass Notification System.

---

41. Adopt resolution authorizing execution of a Revenue Sharing and Property Tax Exchange Agreement between Yolo County and the City of Davis related to planned annexations for the Davis Innovation and Sustainability Campus (DiSC 2022), and approve memorandum of

Case 2:23-cv-00455-MCE-DB   Document 14-1   Filed 06/13/23   Page 123 of 134

understanding between City, County, and the project applicants on traffic and traffic infrastructure. (Potential positive general fund impact contingent on development and sales tax receipts) (Rinde/Tengolics)

> Matt Keasling addressed the Board of Supervisors on this item.

> Minute Order No. 22-60: Approved recommended action by **Resolution No. 22-63 and Agreement Nos. 22-93 and 22-94.**
>
> MOVED BY: Provenza / SECONDED BY: Saylor
> AYES: Villegas, Saylor, Sandy, Provenza, Barajas.
> NOES: None.
> ABSTAIN: None.
> ABSENT: None.

## Assessor/Clerk-Recorder/Elections

42. Ratify the Yolo County Registrar of Voter's implementation of the Voter's Choice Act for the 2022 statewide election cycle. (Potential general fund impact) (Salinas)

> Approved recommended action on Consent.

## Library

43. Receive presentation regarding the management of the Yolo County Historical Collection from the Yolo County Museum Curator as well as an update on the operation of the Gibson House from YoloArts. (No general fund impact) (Fink)

> Received presentation regarding the management of the Yolo County Historical Collection from the Yolo County Museum Curator as well as an update on the operation of the Gibson House from YoloArts.

---

## CLOSED SESSION

## Closed Session

44. Conference with Real Property Negotiator
Pursuant to Government Code Section 54956.8
Property: 135 Woodland Avenue, Woodland, CA (APN:005-720-027)
Agency negotiator: Jill Perez
Negotiating parties: St. John's Retirement Village
X Price X Terms of Payment

BISCH001179

Case 2:23-cv-00455-MCE-DB   Document 1-1   Filed 06/13/23   Page 124 of 134

45. Conference with Legal Counsel Existing Litigation
Government Code Section 54956.9(d)(1)
Yolo County Supervisor and Professional Employees Association v. County of Yolo
California Public Employment Relations Board Case No. SA-CA-1196-M

46. Public Report of action taken in Closed Session.

---

**ADJOURNMENT**

---

In memory of:

- Helena Helmold (Supervisor Villegas)

Next meetings scheduled for:

- Board Governance Session, May 23, 2022
- Board of Supervisors Meeting, May 24, 2022

**GO TO PREVIOUS PAGE**     **GO TO THE TOP OF THE PAGE**



AgendaQuick ©2005 - 2023 Destiny Software Inc. All Rights Reserved.

BISCH001180

BISCH EXHIBIT 21
PROVISIONALLY FILED UNDER
SEAL

BISCH EXHIBIT 22



Yolo Food Bank Executive Team Vote of No Confidence

IN

Yolo Food Bank Board of Directors

May 20, 2022

To Yolo Food Bank Board of Directors,

We, the Executive Team of Yolo Food Bank (Food Bank), have composed this letter to express our profound disappointment and distress with the current Board of Directors of Yolo Food Bank.

As members of the Food Bank's Executive Team, we are deeply committed to ensuring that the food insecure residents of Yolo County are represented by leaders who have an unwavering dedication to building an equitable and sustainable local food system.

We submit this letter only after much discussion, as an expression of our "Vote of No Confidence" in the Food Bank Board of Directors and their ability to function as the volunteer leaders of the Food Bank. We understand the severity of this decision and did not arrive at it hastily.

The majority of the members on this Board participated in the near demise of the Food Bank in 2018. It took an extraordinary staff-led effort, including a renewed successful 5.1 million dollar second capital campaign to save the Food Bank. In recent years, we've navigated the COVID-19 pandemic, expanded services three-fold to serve additional communities facing food insecurity as a result of the pandemic, professionalized our workforce, raised staff compensation to living wages, grew the Food Bank donor base, and expanded the Food Bank's influence and community support.

While the aforementioned has been successful, more recently, we have been disheartened and have had grave concerns regarding the Board of Directors' professionalism and leadership especially regarding trust, integrity, collaboration, decision making, and vision. The most appalling activities include the Board of Directors' lack of self-governance over conflicts of interest, as well as the Boards' denigration of staff members' reputation in communication with community members and elected officials.

A number of board members' decisions, comments, and actions have been utterly at odds with the organization's mission and values, and the interest of those we serve. The Board of Directors has shown they are not able to refrain from interfering with the necessary Food Bank operations by placing the interests and personal relationships of individual board members above feeding our community.

The Executive Team has created many opportunities to course correct the relationship between the Board of Directors and Executive Team through ongoing board training and workshops. The Executive Team has failed to see any change. At the most recent Board of Directors meeting on April 27th, some members of the Executive Team witnessed tremendous regression of basic etiquette, respect, curiosity, and trust. In addition to this regression, the Board of Directors broke several Yolo Food Bank policies in their transgressions and failed to uphold our organizational values which are: bold, collaborative, compassionate, creative, curious, genuine, grateful, introspective, nimble, resourceful, visionary.

BISCH000585

For the reasons outlined above, we believe the Board of Directors lack a sincere desire to seek meaningful change in improving food security in Yolo County. And we remain concerned about Board retaliation against the Food Bank's staff members.

In closing, we would like to remind you that we are executive team members of one of the most successful organizations in Yolo County. Our steadfast dedication to the people we serve gives us courage to write this very difficult letter. We implore you to fulfill your duty by working with the Food Bank's law firm to expeditiously replace the current board with a new board so that we can continue our mission uninterrupted.


Yolo Food Bank Executive Team,


Michael Bisch, Executive Director

Steven Loya, Director of Philanthropic Engagement


Corkey Mapalo, Director of Operations

Maria Segoviano, Director of Marketing and Communications


Valerie Dennis, Director of Administration

Katie Schroeder, Director of Accounting


Genevieve Pyeatt, Director of Programs

Zane Hatfield, Director of Programs

BISCH EXHIBIT 23



May 24, 2022

Re: Letter of No Confidence Second Follow Up

To Yolo Food Bank Board of Directors,

It has come to the attention of the Executive Team that a total of four members are currently valid board members: Jennifer Engstrom, Donald Hartman, Ned Spang, and Kate Stille. The following Yolo Food Bank Board (Board) members have resigned: Board Chair Tom Muller; Board Secretary Jim Durst; Board Member Dan Ramos; and Board Member Louise Walker (also serving as the Finance and Audit Committee Chair). Yolo Food Bank (Food Bank) corporate records indicate Board Vice Chair Liz Schmitz and Board Member Matt Mariani have also termed out. According to current Food Bank bylaws, the Board has failed to maintain the minimum board member requirement thereby putting the Food Bank in jeopardy.

We have a similar alarming situation at YFB Foundation where the Food Bank Board has failed to properly maintain a minimum number of board members. As a consequence, YFB Foundation has failed to hold its required 2022 annual meeting.

The Executive Team is completely united and resolute in our request for the remaining Food Bank board members to act in the best interest of the Food Bank by working with our law firm to replace the current board with a new one who will embrace the transformational change required to serve the people of Yolo County.

Given the numerous accusations of mismanagement, ethical lapses, and conduct harmful to the Food Bank, the Executive Team will not accept any Food Bank board direction until these matters have been properly and fully investigated. A full, holistic, third party investigation must be completed in order to ensure full community and donor trust. It is important to note that the board members who first made false accusations against our highly-regarded executive director and another executive team member have all now resigned.

There is tremendous public interest in the future of the Food Bank. The looming public relations crisis instigated by the Food Bank Board represents a very concerning threat to our ongoing operations and financial viability.

The Food Bank's legal advisors have cautioned the Board against taking any actions against Food Bank staff until the HR investigations are complete, declaring that such actions would be detrimental to the best interests of the Food Bank. Any attempt to terminate the Food Bank's executive leadership only weeks after the organization's most successful Big Day of Giving campaign, while topping the regionwide BDOG leaderboard, is unequivocally putting the Food Bank's reputation in doubt and its financial stability at risk.

1

BISCH000598

These attempts by the Board to preempt the various investigations have the appearance of Board retaliation against high-performing staff.

Nourishing the tens of thousands of Yolo County children, families, seniors, unhoused individuals, and students is the Executive Team's only priority. We are not willing to put the food insecure residents of Yolo County on the line – our accountability to the community is what keeps us grounded and united.

Yolo Food Bank Executive Team,


Valerie Dennis, Director of Administration

Steven Loya, Director of Philanthropic Engagement


Corkey Mapalo, Director of Operations

Maria Segoviano, Director of Marketing and Communications


Zane Hatfield, Director of Programs

Katie Schroeder, Director of Accounting


Genevieve Pyeatt, Director of Programs

2

BISCH000599

BISCH EXHIBIT 24

 **Jennifer** › 

Tue, May 31, 8:30 AM

Michael, this is Jennifer from the Yolo Food Bank Board. We voted unanimously last night to terminate you. Please report to the Food Bank at 9:30 am this morning to receive your final paycheck and separation paperwork, return your Food Bank computer and other property, and gather your personal belongings. We also voted to revoke the separation package we previously offered you. Thank you.

  iMessage 

           

BISCH000608

# BISCH EXHIBIT 25 PROVISIONALLY FILED UNDER SEAL