SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
Sanjiv N. Singh, Esq. (SBN 193525)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
Michael B. Indrajana, Esq. (SBN 258329)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Attorneys for Plaintiff MICHAEL BISCH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BISCH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF YOLO, CALIFORNIA, a public corporation; CITY OF WEST SACRAMENTO, a public corporation; CITY OF DAVIS, a public corporation; CITY OF WOODLAND, a public corporation; ANGEL BARAJAS, an individual; OSCAR VILLEGAS, an individual; CHAD RINDE, an individual; AARON LAUREL, an individual; KEN HIATT, an individual; MICHAEL WEBB, an individual; DONALD SAYLOR, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-00455-MCE-DB<br><br>**DECLARATION OF ZANE HATFIELD IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**<br><br>Judge: Hon. Morrison C. England<br>Hearing Date: TBD<br>Time:         TBD<br>Dept. No.:    7 |

# DECLARATION OF ZANE HATFIELD

1. My name is Zane Hatfield. I currently reside in Washington, D.C. where I work. I am over the age of eighteen. I am providing the declaration set forth here and below in support of Plaintiff Michael Bisch's Opposition to Defendants' Motion to Strike (ECF Dkt. No. 9). I am providing my recollection and statements below based on personal knowledge, except where stated, and am prepared to testify if called upon to do so. I have not been provided any kind of direct or indirect benefit or compensation by Michael Bisch, his attorneys or anyone else to provide this declaration.

2. I was hired at Yolo Food Bank ("YFB" or "Yolo Food Bank") in September of 2016 as the Agency Relations Coordinator. My direct supervisor was Stephanie Villegas, Director of Programs and Kevin Sanchez was the Executive Director at the time. I worked at Yolo Food Bank for 2 years prior to meeting Michael Bisch, and I had no knowledge of him before his hiring at YFB. Currently I am employed at Capital Area Food Bank (CAFB) in Washington D.C.as the Compliance Manager, where I work with internal staff and external stakeholders to ensure that CAFB is meeting its obligations to contracts, federal, state policies and laws, and funders related to food distribution programming, food sourcing, and data reporting and other needs. At the request of counsel, I have organized this declaration with subheadings to facilitate reading it and its use by the Court.

***Background Information on Yolo Food Bank and Its Obligations to Feeding America***

3. At the time of my hiring and to this day, Yolo Food Bank is a Partner Distribution Organization (PDO) of the Food Bank of Contra Costa and Solano (FBCCS). FBCCS is a Member of the Feeding America network and holds jurisdiction for service of Feeding America partnered retailers in the following California counties: Butte, Colusa, Contra Costa, Glenn, Lassen, Modoc, Napa, Plumas, Sacramento, Shasta, Sierra, Siskiyou, Solano, Sutter, Tehama, Trinity, Yolo, Yuba. Many of these counties have local food recovery organizations that FBCCS subcontracts to service the Feeding America partnered retailers. Yolo Food Bank was an example of this and has for many years operated under the Feeding America network as a subcontracted PDO of FBCCS. That agreement made Yolo Food Bank responsible for regular service to all FA partnered retailers in Yolo County for picking up their donated food, separating it into different categories, individually weighing each category,

distributing that food to eligible recipients and organizations, and then reporting that information to FBCCS. FBCCS compiles that data with the entirety of their service area and reports that monthly to Feeding America to ensure accountability from both the Member, its PDOs, and each retailer to ensure maximization of charitable tax credits for donated foods and maximum assistance into the community.

### *My Role and Responsibilities at Yolo Food Bank Managing Partner Relationships*

4. In my role at Yolo Food Bank, I was tasked with managing Yolo Food Banks nonprofit partnership program, up until recently called the Nonprofit Partner Organization Program (NPOP). NPOP was a Feeding America sponsored program that created a framework in which Yolo Food Bank could allow qualified nonprofit organizations to acquire food from its network. This is one of the most basic programs that is specifically outlined in all FA contracts. Participating in NPOP is a privilege, not a right, of nonprofit organizations in Yolo County. Yolo Food Bank also operates, as a subprogram of NPOP, a direct collection program called the Grocery Recovery Program (GRP).

5. Yolo Food Bank could choose to subcontract pickups from retail grocery stores to local nonprofits if they met eligibility requirements. Some of these requirements were timely reporting of data, areas to store both shelf-stable and perishable foods, means of distributing foods, and expectations of growth of the nonprofits' food distribution programs. By participating in this program, nonprofit organizations would be authorized to act as Yolo Food Bank's agent in picking up donated foods from retailers in Yolo County, and in that arrangement, shared maintenance fees of $0.19 per pound of food would be waived.

6. Many food banks use this subcontracting program to reduce their costs by outsourcing all retail pickups; however, the nonprofit network of Yolo County is not reliable enough to maintain consistent service to retailers. Therefore, YFB recovers nearly all food in the county and would only subcontracts out minor retailers to the GRP. As nonprofit organizations participated in GRP, they acted as an agent of Yolo Food Bank and had to follow all guidance YFB gave them in order to maintain their direct pickups. Frequently, nonprofits were not able to maintain staff and volunteer schedules to conduct the pickups or would not be able to distribute the food donated. An overwhelming majority of organizations access food from YFB by acquiring it from the YFB warehouse for a nominal fee.

*Specific Facts Relevant to Mercy Coalition and YFB's Past Partnership History with Mercy Coalition*

7. In 2017, as the Agency Relations Coordinator, I applied for a grant funding opportunity from Feeding America called the "FY17 Walmart Retail Agency Capacity Building," for funding to provide specific nonprofit partners with equipment to begin conducting retail pickups from local grocery stores. YFB was awarded this grant and Mercy Coalition of West Sacramento ("Mercy Coalition") (at the time operating under Lighthouse Covenant Church) was provided equipment and assigned to Raleys in West Sacramento to begin conducting two pickups per week as an agent of YFB. At that time, they were required to sign an MoU related to the Grocery Recovery Program to receive the equipment for use.

8. Several years later, I began to work closely with Nugget Markets and Raleys to assist in fixing their donation programs as they transitioned into the Feeding America network. Both companies had not kept tabs on their donation programs prior to joining the Feeding America network and because of that, donations from these stores were not tracked in a reliable manner.

9. The 2020 COVID-19 pandemic was challenging for Mercy Coalition as they had to create alternate ways of continuing their programs with new health and safety guidance. Several times during this period, they failed to conduct pickups or informed YFB they would not be able to continue at the same level and asked for YFB to complete their pickups or identify another organization they may split the donation with. This caused YFB to absorb those pickups and service the retailers directly, as it had to do with many other retailers as nonprofits shuttered their doors during the pandemic, all the while the need was growing and YFB was expanding services.

*My Recollection of SB 1383 Outreach and the County SB 1383 Proposal Rejected By YFB*

10. The introduction and adoption of SB 1383 was a big opportunity for food banks and for the Grocery Recovery Program operated by YFB. After the bill was adopted and rulemaking began, Michael Bisch and I met with several of our subcontracted organizations to inform them of the opportunity. YFB viewed SB 1383 favorably because it was an opportunity to increase funding and recovery of edible food for redistribution into the Yolo County community. YFB conducted meetings with nearly all GRP organizations about this opportunity. Michael Bisch, Corkey Mapalo and I began meeting with several different nonprofit partners that were subcontracted to participate in Yolo Food

Banks Grocery Recovery Program to share our excitement about the opportunity and our concerns of the County of Yolo's SB 1383 vision.

11. In a 2021 meeting with Michael Bisch and Don Bosley (Executive Director of Mercy Coalition) at La Bou in West Sacramento, we explained our position and the concerns we had over this implementation, as it would affect his specific organization. During these private meetings, he shared our concerns and skepticism over the activities of West Sacramento and the County of Yolo, and he seemed excited about continuing our partnership. It was during these meetings that we reiterated that YFB was contracted by FBCCS to service these retailers and YFB was responsible for data reporting from retailers to FBCCS and Feeding America, and that we would like to continue working with our subcontractors and have them be compensated through the proposal YFB offered to the County of Yolo for SB 1383.

12. From 2020 and until the end of 2021, Yolo Food Bank attempted to be involved with planning of implementation of SB 1383 both at the state and county level. YFB staff met with state, county, and city officials to express our concerns over the limited scope and implementation that the County of Yolo was envisioning. YFB staff members spoke at City Council and Board of Supervisor meetings, as well as webinars and legislative committee meetings in an attempt to influence the decision makers regarding SB 1383 to view this as a poverty reduction opportunity. Our concerns often fell on deaf ears. Once the mandate began in January 2022, YFB had ceased interactions with officials regarding the scope of SB 1383, and to my knowledge did not engage in public advocacy after that while I worked for YFB. We were instead focused on private outreach to our partners and modifying any terms with partners required in order to achieve compliance and maintain our partner base.

13. On September 14th 2021, Michael Bisch, Robb Davis, Joy Cohan and I were invited to a Zoom meeting with Marissa Juhler and Ramin Yazdani wherein they proposed an agreement between the County of Yolo and YFB. This proposal would task YFB with ensuring the County of Yolo's compliance with SB 1383 by funding YFB only a percentage of the cost of the food recovery program currently in operation. It was during this meeting that Michael Bisch, under direction from the Board of Directors of Yolo Food Bank, declined the proposal and the meeting ended.

14. The concern the Board of Directors and YFB leadership had about the proposal the county was offering was that the County of Yolo would only compensate a portion of the work but expect Yolo Food Bank to report the entirety of the food recovery happening in Yolo County.  As such, YFB as an organization rejected the proposal.

***My Recollection of Private 2022 Phone Calls with Mercy Coalition***

15. In March 2022, Michael Bisch asked me to follow up with Don Bosley after YFB had declined the County proposal. These meetings and this kind of follow up were not unique to Mercy Coalition—we were addressing these kinds of issues with other nonprofit partners. YFB had become aware that the County of Yolo was offering direct payments to YFB subcontractors for SB 1383 compliance by subcontractors sharing YFB data. Prior to this, YFB had met with leaders of Countryside Community Church (CCC) in Esparto and matched the compensation that the County of Yolo offered to CCC to ensure that they would remain in our network and be compensated for their work.

16. During my call with Don Bosley on March 2, 2022, Mr. Bosley informed me that Mercy Coalition, despite being our partner, had intended to sign an agreement with the County of Yolo to share YFB data with the County. I informed him that if he did that, it would be a potential breach of YFB agreement with Feeding America and because of that he would lose access to Feeding America retailers like Raleys and Nugget. I informed him that YFB had made an agreement with Countryside Community Church to match the funding the County of Yolo was offering to them, so they could remain in our network, continue their work without losing potential funding. I informed Don Bosley that I had the authority to offer that same agreement to Mercy Coalition.

17. Mr. Bosley expressed concern that if he refused the deal from the County of Yolo, he would jeopardize funding MC was receiving from governmental entities to provide homeless services. He became upset on the phone, and I became aware that he did not understand the Feeding America relationship with retailers, the Food Bank of Contra Costa and Solanos jurisdiction and subsequent subcontracting of Yolo County to Yolo Food Bank, and Yolo Food Banks Grocery Recovery Program that he had been participating in since 2017. After this phone call, I called Michael Bisch and explained that the phone call I had with Don did not go well.

18. This interaction I had with Don Bosley was a private interaction between two private nonprofits, contractor and subcontractor, regarding Feeding America contract compliance. At no point was Mercy Coalition cut off from food, as the organization still had access to the NPOP store that YFB offers at 233 Harter Avenue, Woodland. Additionally, Mercy Coalition had signed various documents and attended various training sessions regarding compliance in both NPOP and GRP throughout their partnership with Yolo Food Bank.

19. At no point was I ever contacted by Angel Barajas, Oscar Villegas, Susan Strand, Marissa Juhler or Aaron Laurel to get my side of the story.

***My Recollection of the Turkey Drive Calls and the YFB April 27, 2022 Zoom Board Meeting***

20. In March of 2022, due to the declining funding that had sustained Yolo Food Banks elevated service from 2020-2022, YFB began to downsize operations to a sustainable level. As part of the YFB cost reducing plan that had been developed by the Executive Team of Yolo Food Bank and shared with the Board of Directors, I made calls to specific nonprofits that would be affected by these changes. One of those changes was a reorganization of Yolo Food Bank's "Holiday Food Distribution" program that operates around the Thanksgiving Holiday.

21. I made phone calls to the leadership of affected organizations and informed them, by reading from a pre-established script, that YFB would be altering the programming in November 2022 and YFB would not be providing Thanksgiving Meal Kits at the same level as 2021. I informed them that this was happening as YFB would be reducing our costs as elevated pandemic era funding was not continuing. I informed them that their communities would remain receiving service from YFB, but their specific organization would not receive Thanksgiving Meal Kits for redistribution.

22. On April 27th, 2022 I attended the Yolo Food Bank Board of Supervisors meeting as normal. The meeting took place over Zoom and included a final training regarding Big Day of Giving activities for Board Members to participate in and other normal board agenda items. Upon the end of the listed agenda items, the meeting did not close as usual. Chairman Tom Muller, who had been on YFB Board of Directors since 2011, instead asked the Board of Directors, Executive Director Michael Bisch, Director of Philanthropy Steven Loya, Director of Operations Corkey Mapalo and myself, Director of

Programs, to stay on the call. He then dismissed Director of Accounting, Katie Schroeder, Director of Administration Valerie Dennis and Director of Communications, Maria Segoviano.

23. Mr. Muller then recollected a communication exchange he had with Supervisor Angel Barajas. Supervisor Barajas was recounting a closed session meeting of the Board of Supervisors wherein the Yolo County Board of Supervisors were discussing emails forwarded to them from nonprofits discussing a private agreement between them and Yolo Food Bank. Mr. Muller then said, "I had a big stink of shit thrown on me and you are to blame." He then proceeded to ask several questions about my communications with Yolo County Children's Alliance and RISE, Inc. When informing Mr. Muller that the decision to downsize YFB operations had been a decision made jointly as an Executive Team, he seems confused as to which staff members were on the Executive Team. During the conversation, Board of Director member Dan Ramos stated he had been contacted by Supervisor Villegas about the agreement between two private nonprofits. During this meeting, Michael Bisch explained the intricacies of this issue and his communications with the Board of Directors, the governmental officials, community members and staff about the reduction of pandemic era funding and the strategic reduction of services to a sustainable level. Chairman Muller continued to speak as if we had been disloyal to him personally and specifically we had "stuck him in the back", and that Michael and I were entirely to blame for the Board of Supervisors members being upset. Chairman Muller then agreed that reductions of service needed to happen. He then claimed that three other Board of Directors members had been contacted by Board of Supervisors members and had to do "damage control." Board Member Jim Durst also agreed that reductions were needed however he seemed concerned over the perception this would have on the Board of Supervisors. Board of Directors member Ned Spang insinuated that I was withholding food from communities to "gain a bargaining chip or retribution." Without seeing or hearing any of my communication with these outside entities, Chairman Muller stated "Your communication sucks. It sucked. It was horrible." Mr. Muller also berated me for not personally asking him to fund all of the turkeys for the entire Holiday Food Distribution, despite Mr. Muller previously saying to Director of Philanthropy, Steven Loya that he would be unable to make a large donation this year due to tight finances. Board of Directors member Donald Hartman then claimed that the Board of Directors cared immensely about perception because "perception is reality." Board

Member Louise Walker then asked that YFB should consider canceling the farmworker food program that was being funded through Big Day of Giving this year and use that funding to purchase turkeys for Thanksgiving. Board Member Donald Hartman then complained that this operation decision would put a "big black eye on the YFB board," furthering my opinion that these Board members were more concerned with their personal reputations than the financial and operational well-being of Yolo Food Bank. Chairman Muller ended the conversation by saying his favorite holiday is Thanksgiving and "the reason I'm on this board is because people don't have food at Thanksgiving and Christmas" which I felt was an extremely shortsighted view of professional food banking. My view of the entire exchange that happened during this meeting was incredibly unprofessional and ignorant and I was very upset and embarrassed to be so publicly berated in front of my colleagues and the Board of Directors.

### *My Recollection and Impression of Michael Bisch's Tenure at Yolo Food Bank*

24. During Michael Bisch tenure at Yolo Food Bank, he had made a tremendous impact on the food insecurity of Yolo County. When he arrived at Yolo Food Bank, the food bank was 5 months from insolvency with a stalled Capital Campaign and no separation of financial accounts, and almost no financial controls implemented. In 2018, before his arrival, Yolo Food Bank only distributed 3.9 million pounds of food each year and fund raised only $1.6 million per year and YFBs participation in *Big Day of Giving* only netted $34.161.55. The food bank had 27 staff members, the minimum wage was $10 an hour (CA mandated minimum), and the average annual staff salary was $36,425.00.

25. In Michael Bisch's last year as Executive Director (FY 2021-2022), he had overseen the completion of the Capital Campaigns fundraising and construction, YFB distributed 12.6 million pounds of food that year. The annual fundraising was up to $6.2 million, and Big Day of Giving had netted $368,061. Yolo Food Bank had over 50 staff members, the minimum wage at YFB was $17.60 and the average annual staff salary was $51,100. Michael Bisch had lifted the food bank from a small nominally effective food bank to one of the highest performing food banks in California by size.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge or belief based on reliable

information, that I have personal knowledge of the facts stated above, and that, if sworn as a witness, I would be competent to testify thereto.

Executed this **12th** Day of June, 2023, in Washington, District of Columbia.

*Zane Hatfield*
Zane Hatfield