SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
Sanjiv N. Singh, Esq. (SBN 193525)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
Michael B. Indrajana, Esq. (SBN 258329)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Attorneys for Plaintiff MICHAEL BISCH

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BISCH, an individual, | Case No.: 2:23-cv-00455-DC-SCR |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [ECF NO. 77]** |
| COUNTY OF YOLO, CALIFORNIA, a public corporation; CITY OF WEST SACRAMENTO, a public corporation; CITY OF DAVIS, a public corporation; CITY OF WOODLAND, a public corporation; ANGEL BARAJAS, an individual; OSCAR VILLEGAS, an individual; CHAD RINDE, an individual; AARON LAUREL, an individual; KEN HIATT, an individual; MICHAEL WEBB, an individual; DONALD SAYLOR, an individual; and DOES 1 through 50, inclusive, | |
| Defendants. | Judge:      Hon. Dena M. Coggins<br>Dept. No.:   8 |

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................................ 1

II.     THE F&R CORRECTLY APPLIED THE "CLEARLY ESTABLISHED" STANDARD, AND DEFENDANTS MISSTATE THAT STANDARD ........................................................................ 2

   A.   The "Clearly Established" Standard Does Not Require Factual Identity—It Requires That the Unconstitutionality Be Apparent to a Reasonable Official ............................................. 2

   B.   Defendants Concede the Underlying Constitutional Principle—Which Forecloses Their Argument at the Threshold ............................................................................................ 2

III.    DEFENDANTS MISREAD AND MISAPPLY COSZALTER AND AYDELOTTE {#iii} ......... 3

   A.   The "Employer" Distinction Has No Basis in *Coszalter* and Is Unsupported by Any First Amendment Authority ................................................................................................. 3

   B.   Defendants' Characterization of Their Conduct as Mere "Letter-Writing and Phone Calls" Distorts Both the Complaint and the Record ......................................................... 4

   C.   *Aydelotte* Confirms That the Right to Be Free from a Campaign of Retaliatory Harassment Was Clearly Established—and Defendants' Reliance on Its Unpublished Status Is Unavailing .................. 5

   D.   The Absence of "Defamatory Statements" from the Specific Fact Patterns in *Coszalter* and *Aydelotte* Does Not Exclude Such Conduct from Their Legal Framework ........................................... 6

IV.     DEFENDANTS MISREAD *ARIZ. STUDENTS' ASS'N* ON THE WITHHOLDING-OF-FUNDS ISSUE ................................................................................................................... 6

   A.   The Case Establishes That Government Benefits May Not Be Conditioned on the Surrender of Protected Speech—and That Principle Does Not Require a Completed Deprivation ........................... 6

   B.   Defendants' "Power Disparity" Argument Reads a Single Contextual Factor as a Threshold Requirement That the Case Does Not Impose ................................................................... 7

   C.   The Court's List of "Actual Deprivations" in *Ariz. Students' Ass'n* Was Illustrative, Not Exhaustive, and Does Not Require a Completed Vote ........................................................ 8

V.      DEFENDANTS MISAPPLY THE INDIVIDUAL PARTICIPATION DOCTRINE, AND THEIR CITED CASES DO NOT SUPPORT DISMISSAL OF SAYLOR OR RINDE ....................................... 8

PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [ECF NO. 77]
CASE NO.: 2:23-CV-004455- DC-SCR

A.      The Cases Defendants Cite Addressed Complaints with No Specific Allegations—Not a Complaint That Identifies Each Defendant's Individual Acts with Particularity ................................... 8

B.      The Complaint Specifically and Plausibly Pleads Defendant Saylor's Individual Participation10

C.      The Complaint Specifically and Plausibly Pleads Defendant Rinde's Individual Participation— and His Own Declaration Strengthens the Case Against Him ................................................. 11

VI.      CONCLUSION............................................................................................................. 12

PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [ECF NO. 77]
CASE NO.: 2:23-CV-004455- DC-SCR

# TABLE OF AUTHORITIES

## U.S. SUPREME COURT CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................................ 2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .......................................................................... 2

*Mullenix v. Luna*, 577 U.S. 7 (2015) .................................................................................... 2

*White v. Pauly*, 580 U.S. 73 (2017) .................................................................................. 2, 3

*Wilson v. Layne*, 526 U.S. 603 (1999) .................................................................................. 2

## U.S. COURT OF APPEALS CASES

*Ariz. Students' Ass'n v. Ariz. Bd. Of Regents,* 824 F.3d 858 (9th Cir. 2016) ................................ 1, 4, 7, 8

*Aydelotte v. Town of Skykomish*, 757 Fed. Appx. 582 (9th Cir. 2018) ................................. 1, 5, 6

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ........................................................ 9

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) ...................................................... 1, 5, 6

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) .............................................................. 6

*Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) ............................................................... 9

*Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019) ......................................................................... 4

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ........................................................................... 9

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .......................................................... 9, 10

*Sheik-Abdi v. McClellan*, 37 F.3d 1240 (7th Cir. 1994) ............................................................. 9

*Taylor v. List,* 880 F.2d 1040 (9th Cir. 1989) ...................................................................... 9, 10

*Todd v. Hawk*, 72 F.3d 443 (5th Cir. 1995) ............................................................................... 9

- iii -

PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [ECF NO. 77]
CASE NO.: 2:23-CV-004455- DC-SCR

## I. PRELIMINARY STATEMENT

Defendants Barajas, Villegas, Saylor, and Rinde object solely to the Magistrate Judge's Findings and Recommendations' qualified immunity analysis at Section B(3) issued on February 20, 2026 as ECF No. 77 (the "F&R"). *See* ECF No. 83 (the "Defs.' Objections") at 2:1-3. They do not challenge the F&R's other findings. *Id.* The narrow question before this Court on Defendants' objections is whether the F&R correctly applied the qualified immunity framework under the relevant case law. Plaintiff respectfully submits that it did, that Defendants' objections rest on misreadings of their own cited authorities, and that this Court should adopt the F&R's analysis and deny qualified immunity to all four Defendants.

As this Court is aware, Plaintiff has filed his own objections to the F&R—objections focused predominantly on the F&R's misreading of a substantial factual record, including the F&R's failure to credit the unanimous state court jury verdict, its resolution of contested inferences in Defendants' favor in violation of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and its proposed dismissal of the First Amendment retaliation and other claims as to Defendants Laurel, Webb, Hiatt, and the municipal defendants. See ECF No. 82 generally.

In contrast, Defendants challenge what the F&R got right on the law—specifically, the F&R's conclusion that clearly established First Amendment doctrine put Defendants on notice that a coordinated, multi-actor defamatory campaign accompanied by funding threats directed against Plaintiff in retaliation for his protected speech was unconstitutional. On this legal question, the F&R's analysis is sound. The F&R's citation to *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), *Aydelotte v. Town of Skykomish*, 757 Fed. Appx. 582 (9th Cir. 2018), and *Ariz. Students' Ass'n v. Ariz. Bd. Of Regents,* 824 F.3d 858, 869 (9th Cir. 2016) is correct, and the F&R's conclusion—that the law clearly established the constitutional limits of the conduct alleged—reflects a proper application of the "clearly established right" standard. F&R at 20:13-21:28.

As such, there is no inconsistency in Plaintiff's position. De novo review under 28 U.S.C. § 636(b)(1) requires this Court to independently assess each portion of the F&R to which objection is made. Each section stands or falls on its own merits. Plaintiff's objections address the F&R's factual errors; Defendants' objections on the other hand improperly attack a portion of the F&R where the Court correctly applied the governing legal standard. Put another way, this Court is fully capable of, and indeed required by law to, reach the opposite conclusion from the F&R where it erred factually, while sustaining the F&R's legal analysis where the F&R got it right.

## II. THE F&R CORRECTLY APPLIED THE "CLEARLY ESTABLISHED" STANDARD, AND DEFENDANTS MISSTATE THAT STANDARD

Defendants' qualified immunity argument fails at two levels: (i) the governing standard does not require the factual identity they demand, and (ii) their own concession that a campaign of harassment in retaliation for protected speech is unconstitutional forecloses the argument before it begins.

### A. The "Clearly Established" Standard Does Not Require Factual Identity—It Requires That the Unconstitutionality Be Apparent to a Reasonable Official

Defendants' entire qualified immunity argument rests on a single methodological premise: that the cases cited by the F&R are factually dissimilar to this case, and that factual dissimilarity defeats the "clearly established" inquiry. This premise misreads the governing standard.

Qualified immunity attaches only when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While existing precedent must have "placed the statutory or constitutional question beyond debate," the law does not require "a case directly on point." *Id*. Critically, the inquiry is not whether prior cases involved identical facts, but instead whether in light of pre-existing law, the unlawfulness of the defendant's conduct was apparent. *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

*Wilson* illustrates how this works in practice. The question there was not whether every element of the officers' media ride-along had been addressed by prior decisions, but "the objective inquiry of whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful." *Id*. at 615. Defendants here quote *Wilson* for the general proposition that the law must be particularized to the case's facts. *See* Defs.' Objections at 4:24-27. They then use that proposition to demand a level of factual precision that *Wilson* itself does not require and that *White v. Pauly* expressly rejects. *White* warns against "defin[ing] clearly established law at too high a level of generality," 580 U.S. at 79—but that is a caution against overly abstract formulations, not a requirement that every fact pattern in the defendant's conduct appear in a prior case.

### B. Defendants Concede the Underlying Constitutional Principle—Which Forecloses Their Argument at the Threshold

Defendants appear to concede that "a campaign of harassment in response to protected speech violates the constitution" and that they "do not dispute this general concept." See Defs.' Objections at 3:25-4:1; 4:16-20, 4:27-5:3. They only appear to take issue with whether a power dynamic existed. That concession is outcome-determinative.

The F&R's finding was precisely that Defendants were on notice—via *Coszalter*, *Aydelotte*, and *Ariz. Students' Ass'n*—that a sustained, multi-actor campaign of defamation and funding threats in retaliation for protected speech violates the First Amendment. See F&R at 21:10-28 (It is worth noting that unlike the police officers in *White*, Yolo County and the Defendants all had counsel at their disposal and consulted with said counsel during the critical time period. *See e.g.,* ECF No. 50-2 at **Singh Ex. 17** at pp. 240, 246). If the principle itself is conceded, the only remaining question is whether the specific conduct alleged falls within that principle clearly enough to put reasonable officials on notice. In view of *Coszalter* and *Aydelotte*, no reasonable government official could have believed that orchestrating a twelve-week, multi-actor, cross-jurisdictional retaliation campaign incorporating defamatory communications and explicit funding threats directed at a private employee because of his protected whistleblowing was constitutionally permissible. Indeed, Plaintiff Bisch put them on notice of the laws violated through communications. *See e.g.,* ECF No. 50-1 at **Bisch Ex. 14** at BISCH000535-000537, **Bisch Ex. 15** at BISCH000541-543.

### III. DEFENDANTS MISREAD AND MISAPPLY *COSZALTER* AND *AYDELOTTE*

Defendants' reading of *Coszalter* and *Aydelotte* fails on four independent grounds: (i) the "employer" distinction they urge has no basis in either case; (ii) their characterization of the conduct at issue as mere letter-writing distorts both the Complaint and the record; (iii) the unpublished status of *Aydelotte* is immaterial where the principle it confirms derives from published, binding precedent; and (iv) the absence of defamatory statements from those cases' specific fact patterns does not exclude such conduct from their legal framework.

#### A. The "Employer" Distinction Has No Basis in *Coszalter* and Is Unsupported by Any First Amendment Authority

Defendants' central argument regarding *Coszalter* is that it cannot have put them on notice of the unconstitutionality of their conduct because the defendants in *Coszalter* were the plaintiff's employer, whereas these Defendants were not Plaintiff Bisch's employer. *See* Defs.' Objections at 3:5–4:20.

This argument collapses on examination of what *Coszalter* actually holds. *Coszalter* actually clarifies how primal first amendment protection is—even a governmental employment context does not override that fundamental right. This distinction when applied here argues for even more stringent application of this principle: Government entities here sought to retaliate against a ***private citizen*** and interfere with his private employment. Indeed, the power relationship in this case arguably makes the constitutional violation more serious, not less—county supervisors and city managers exercising their official authority over grant funding, and leveraging that authority to compel a nonprofit board's employment decisions, is precisely the kind of government conduct the First Amendment's anti-

retaliation principles are designed to reach. Moreover, It is settled law that § 1983 First Amendment retaliation claims are available to non-employees subjected to government retaliation. The Ninth Circuit does not limit the "adverse action" inquiry to employment consequences; it expressly encompasses any government conduct reasonably calculated to chill protected speech: "A plaintiff may bring a [§] 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Ariz. Students' Ass'n*, 824 F.3d at 867 (where claim for prospective relief by nonprofit student organization was permitted against government entity); *see also Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (First Amendment retaliation claim brought by student led nonprofit against government entity).

### B. Defendants' Characterization of Their Conduct as Mere "Letter-Writing and Phone Calls" Distorts Both the Complaint and the Record

Defendants argue that their conduct—described as "writing a letter, emailing, or talking to others"—is categorically different from the retaliatory actions in *Coszalter*, and thus that *Coszalter* could not have put them on notice. *See* Defs.' Objections at 4–5. This characterization bears no relationship to the allegations in the Complaint or the record before this Court.

The F&R did not characterize the conduct at issue as a single letter. The F&R identifies a sustained, multi-actor campaign that unfolded over multiple months commencing immediately after Plaintiff Bisch's February 2022 whistleblowing to CalRecycle. *See* F&R at 13:17-15:2; *see also* 21:10-28. The record on which the Complaint rests, and which Plaintiff's Objections and the accompanying Singh Declaration set forth in detail, establishes the following coordinated course of conduct: On March 11, 2022, without investigation of any kind, Defendant Laurel accused Plaintiff Bisch of "extortion" in a written communication and approved his defamatory narrative to be used in the March 18, 2022 letter threatening withholding ARPA funding. ECF No. 82 at Section III(C)(4); ECF No. 50-1 (the "2nd Bisch Decl.") at ¶ 21(c), **Bisch Ex. 14**. On March 14 and 15, 2022, Defendant Saylor was privately exchanging texts coordinating the pressure campaign—confirming the exact ARPA funding amount available as a lever and signaling to fellow Supervisor Gary Sandy that a campaign was underway and "not for attribution yet." ECF No. 82-1 (the "Singh Obj. Decl.") at **Obj. Ex. 6** (Saylor Text Messages) at COUNTY000770, COUNTY000821. On March 17, 2022—the day before the letter issued—Yolo County was pre-announcing the letter threatening to withhold ARPA funding to city managers and inviting them to "voice support along with Yolo County," and Defendant Saylor placed a direct call to YFB Board Chair Muller threatening to withhold County funds. ECF No. 82 at Section III(C)(7); ECF No. 82-1 at **Obj. Ex. 5** at COUNTY001997; Complaint at ¶ 48(c)(ii). On March 18, 2022, Defendants Barajas and Villegas signed the funding-threat letter, and Defendant Rinde transmitted the funding-threat

letter on County letterhead to every member of Plaintiff's employing Board, with copies to all four city managers. ECF No. 50-2 at **Bisch Ex. 16**; **Bisch Ex. 17** at BISCH001166. That letter was then separately amplified to individual Board members by Defendants Webb, Hiatt, and Rinde—each of whom added their own affirmative communications to YFB Board members who had authority over Plaintiff Bisch's employment. ECF No. 82 at Sections III(C)(5)–(7); **Bisch Ex. 17**; **Obj. Ex. 5**. This continued through May 9, 2022, when Defendants Saylor and Villegas were exchanging texts confirming that their "outreach" to the YFB Board "has struck a chord." **Obj. Ex. 6** at COUNTY000759, COUNTY000766-67. Plaintiff was terminated on May 31, 2022—and Bosley, the originator of the false narrative and personal friend of both Villegas and Laurel, wrote that government pressure "had a lot to do with" the decision. ECF No. 50-2 at **Singh Ex. 2** at BOSLEY000214.

That is not merely "writing a letter." It is precisely the kind of "severe and sustained campaign of . . . retaliation" that *Coszalter* held sufficient to establish a First Amendment violation. *Coszalter*, 320 F.3d at 977. The twelve individual acts of retaliation in *Coszalter* span two years of employment conduct. The conduct here spans twelve weeks, involves at least eight identified government officials across county and city lines, incorporates a written funding threat delivered on County letterhead but without a vote to an entire nonprofit Board, and was coordinated in real time through text messages and private calls—all without a single official conducting any investigation of the allegations against Plaintiff, despite his express written denial. *See* Rinde Decl. (ECF No. 40-6), Ex. G (Bisch March 18, 2022 denial email); ECF No. 82 at Section III(C)(7).

C. ***Aydelotte* Confirms That the Right to Be Free from a Campaign of Retaliatory Harassment Was Clearly Established—and Defendants' Reliance on Its Unpublished Status Is Unavailing**

Defendants observe that *Aydelotte v. Town of Skykomish,* 757 Fed. App'x 582 (9th Cir. 2018) is unpublished. See Defs.' Objections at 4:5-7. This observation does not assist their argument.

*Aydelotte* did not announce new law. It expressly relied on *Coszalter*, 320 F.3d at 975–76, and *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) in concluding that "Aydelotte's right to be free from a campaign of harassment and humiliation in retaliation for constitutionally protected speech was clearly established." *Aydelotte*, 757 Fed. App'x at 584. Whether or not *Aydelotte* is independently citable for precedential purposes, the principle it confirms—derived from *Coszalter* and *Gibson*, both fully published, binding Ninth Circuit authorities—was clearly established well before March 2022. The F&R's analysis did not rely on *Aydelotte* in isolation; the F&R cited it as corroborating a principle anchored in published precedent. See F&F at 21:18-23.

### D. The Absence of "Defamatory Statements" from the Specific Fact Patterns in *Coszalter* and *Aydelotte* Does Not Exclude Such Conduct from Their Legal Framework

Defendants contend that because *Coszalter* and *Aydelotte* do not specifically discuss defamatory statements, those cases cannot have put Defendants on notice that allegedly defamatory communications could rise to the level of a retaliatory campaign. *See* Defs.' Objections at 3:2-4, 16-20.

This argument confuses the element (a sustained campaign of retaliation reasonably likely to chill protected speech) with one category of acts that may constitute such a campaign. *Coszalter* enumerated twelve distinct acts of retaliation—including reassignments, reprimands, criminal investigations, termination, and harassment—and held that their "sustained" and "coordinated" character established the First Amendment violation. *Coszalter*, 320 F.3d at 970–77. Defendants also ignore that the *Coszalter* court expressly listed "withholding of customary public recognition" (conduct clearly less severe than outright defamation but targeting a person's reputation) as an act, which considered individually, could deter free speech. *Id*. at 976-77. Moreover, the principle announced is not confined to those specific twelve acts. It is that a course of government conduct, taken together, which is designed to deter protected speech, rises to the level of a constitutional violation. Coordinated defamation campaigns designed to destroy a private individual's professional reputation and cause his termination—in direct retaliation for whistleblowing to a state regulatory agency—are at least as likely to deter future protected speech as the acts catalogued in *Coszalter*. No reasonable reading of the cases suggests otherwise.

### IV. DEFENDANTS MISREAD *ARIZ. STUDENTS' ASS'N* ON THE WITHHOLDING-OF-FUNDS ISSUE

Defendants' challenge to the F&R's *Ariz. Students' Ass'n* analysis fails on three grounds: the constitutional injury requires no completed deprivation, only a credible funding threat; the power-disparity factor they invoke is a contextual observation in that case, not a threshold requirement; and the court's citation of completed-deprivation cases was illustrative of what constitutes a valuable government benefit, not a limitation on when a First Amendment claim may lie.

### A. The Case Establishes That Government Benefits May Not Be Conditioned on the Surrender of Protected Speech—and That Principle Does Not Require a Completed Deprivation

The F&R found that, as of March 2022, it was "clearly established within the Ninth Circuit . . . that government officials 'may not retaliate against a person by . . . conditioning receipt of a government benefit on a promise to limit speech, or refusing to grant a benefit on the basis of speech.'" *See* F&R at 21:24-27 (*citing Ariz. Students' Ass'n*, 824 F.3d 858 at 869).

Defendants argue that *Ariz. Students' Ass'n* is inapplicable because the Regents "actually voted to withhold" funds, while here the March 18, 2022 letter merely "threatened" to withhold ARPA funding, with no actual vote to do so. See Defs.' Objections at 5:11–6:19. This argument misconceives the constitutional injury at stake and, moreover, fundamentally misreads the Complaint.

First Amendment retaliation doctrine centers on the chilling of protected speech, not solely on its complete suppression. A credible threat by government officials to withhold a material benefit in retaliation for protected speech is actionable precisely because such a threat operates to deter future expression before any completed deprivation occurs. The F&R's analysis on this point requires no completed funding termination; it requires a credible nexus between protected speech and the threatened withdrawal of a government benefit. The March 18, 2022 letter—on purported County of Yolo letterhead, signed by the Chair of the Board of Supervisors and transmitted to Plaintiff's entire employing Board, explicitly conditioning continued ARPA funding support on the Board's action regarding Plaintiff Bisch—is as credible a threat as it gets. It is an overtly threatening government communication delivered by two of the county's most senior elected officials, transmitting a direct and specific funding threat to the entity that controlled Plaintiff's employment. *See* **Bisch Ex. 16**; **Bisch Ex. 17** at BISCH001166; ECF No. 82 at Section III(C)(8). That it was acted upon is confirmed by the subsequent termination and the fourteen-day gap between that termination and the County's execution of the ARPA grant agreement. *See* Singh Obj. Decl. ¶ 14, **Obj. Ex. 13**. Put simply, Defendants are dead wrong. The promised funds were withheld, and then granted after Michael Bisch's termination. The conduct here is therefore *more* horrific because there is an apparent *quid pro quo*, not just withheld funds, that played out in the campaign to chill Plaintiff's Bisch's whistleblowing speech. Complaint at ¶ 38; **Obj. Ex. 13** at ECF 82-1 p. 209.

**B. Defendants' "Power Disparity" Argument Reads a Single Contextual Factor as a Threshold Requirement That the Case Does Not Impose**

Defendants argue that *Ariz. Students' Ass'n* is distinguishable because the court there noted a drastic power disparity between the Regents and the student association, whereas here YFB is a $28 million entity—supposedly too large to be a victim of unconstitutional government coercion. *See* Defs.' Objections at 5:11-26.

This argument lifts one factor from the court's analysis and elevates it to a constitutional limit that *Ariz. Students' Ass'n* itself nowhere imposes. The court's discussion of the power disparity in that case was directed at defeating the appellee's argument that the Regents' conduct was analogous to a "disagreement between similarly situated political rivals." *Ariz. Students' Ass'n,* 824 F.3d at 869. The court used the power analysis to explain why the Regents' act of withholding a fee they controlled was

not mere peer disagreement. It did not hold that government entities may withhold benefits from organizations—and coerce employment decisions—with impunity so long as the target is financially established.

Moreover, Defendants' framing misidentifies the relevant power relationship. The question is not YFB's annual budget relative to the County's. ***The relevant power relationship is Defendants on the one hand and a lone private citizen on the other***. The question is whether Defendants' control over the specific ARPA grant funds, and their ability to direct those funds toward or away from YFB based on whether the Board took the employment action they demanded, constituted an exercise of coercive government power *against Michael Bisch*. They held the power of the purse on $1.178 million in committed public funds, and they explicitly conditioned those funds on a private nonprofit's internal employment decisions. That is an exercise of government authority to target a private individual, not a conversation between equals. And notably, within fourteen days of Plaintiff Bisch's termination—the precise outcome they had demanded—the County executed the ARPA grant agreement. Complaint at ¶ 38; **Obj. Ex. 13** at ECF 82-1 p. 209. The record confirms this was not a dispute between "similarly situated political rivals." ECF No. 82 at Section III(A), (B), (C)(1)-(10); ECF No. 82-1 at **Obj. Ex.'s 4-7, 10-13, 15**.

### C. The Court's List of "Actual Deprivations" in *Ariz. Students' Ass'n* Was Illustrative, Not Exhaustive, and Does Not Require a Completed Vote

Defendants point to the court's citation in *Ariz. Students' Ass'n.* of prior cases involving completed deprivations—rejected permit applications, prison job terminations, revoked licenses—to argue that only completed deprivations are actionable. *See* Defs.' Objections at 6:1-19. The *Ariz. Students' Ass'n.* court cited those cases in explaining what constitutes a "valuable government benefit" for First Amendment retaliation purposes—not to establish that a completed official act is required before a First Amendment claim may lie. *Ariz. Students' Ass'n*, 824 F.3d at 869-70.

### V. DEFENDANTS MISAPPLY THE INDIVIDUAL PARTICIPATION DOCTRINE, AND THEIR CITED CASES DO NOT SUPPORT DISMISSAL OF SAYLOR OR RINDE

### A. The Cases Defendants Cite Addressed Complaints with No Specific Allegations—Not a Complaint That Identifies Each Defendant's Individual Acts with Particularity

Defendants rely on *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994); *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995); and *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir.

2008), for the proposition that each defendant must be individually implicated. Defs' Objection at 6:22-7:17. Plaintiff does not dispute that legal principle. The dispositive issue is what these cases condemn.

In *Barren*, the plaintiff "offered no more than conclusory allegations that the defendants were involved in a conspiracy to deprive him of his constitutional rights." *Barren*, 152 F.3d at 1194–95. There was no identification of specific acts, dates, or communications by any individual defendant. In *Hydrick*, the court dismissed because "Plaintiffs' complaint is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing by each Defendant"—and the "defendants" in question were a large group of institutional officials against whom the complaint contained essentially no individualized allegations. *Hydrick*, 669 F.3d at 942. In contrast, here, unlike in *Barren* or *Hydrick*, the Complaint is replete with specific allegations for the conduct of each Defendant including Barajas, Villegas, Saylor, and Rinde. Complaint at ¶ 35(a)-(u) (chronologically) ¶ 48(a) (Barajas individually); ¶ 48(b) (Villegas individually); ¶48(c) (Saylor individually); and ¶ 48(d) (Rinde individually).

In *Robbins*, the complaint failed because it employed "either collective term 'defendants' or list of employees named individually but with no distinction as to what acts were attributable to whom." *Robbins*, 519 F.3d at 1250. The court dismissed because "it was impossible for any of employees to ascertain what particular unconstitutional acts they were alleged to have committed." *Id*. This level of deficiency bears no resemblance to the highly specific allegations of the Complaint. Complaint at ¶¶ 48(a)-(g).

In *Taylor*, unlike here, the plaintiff claimed that certain senior officials were liable based solely on their knowledge of their subordinates' conduct—with no personal participation alleged. *Taylor*, 880 F.2d at 1045. The court upheld dismissal of those officials while reversing as to the defendants for whom specific facts had been alleged. *Id.*

None of these cases involved what is present here: a Complaint that, for each named Defendant, specifies the date of each communication, identifies its recipient, describes its content and defamatory character, and places it in the context of a documented, coordinated campaign. See Complaint ¶¶ 35(a)–(u), 44, 48(a)–(g); ECF No. 82 at Sections III(C)(1)–(10) (summarizing the record specific to each Defendant). The state court jury—which assessed the same kind of coordinated campaign (indeed the coordinated campaign triggered by the coordinated pressure exerted by Defendants) following weeks of testimony from multiple defendants—found liability against every actor it evaluated. *See* ECF No. 73-1 (the "Singh Supp Trial Ex. Decl.") at **Supp. Ex. 1** (the "Verdict Form") generally. The Complaint here is the antithesis of a shotgun pleading; it is a precisely documented account of coordinated government

misconduct, confirmed by documentary evidence, text messages, and effective trial admissions from the Defendants themselves.

**B. The Complaint Specifically and Plausibly Pleads Defendant Saylor's Individual Participation**

Defendants argue that Saylor's alleged conduct amounts to nothing more than a characterization—"propagated the false and defamatory narrative"—insufficient under *Iqbal* to state a claim. *See* Defs.' Objections at 7:18-23 (citing Complaint at ¶ 73(c)). This argument ignores both the Complaint and the record. As set forth in Plaintiff's Objections and the Singh Declaration:

- On March 14–16, 2022—two days before the March 18 funding-threat letter issued—Defendant Saylor was texting to confirm the exact ARPA funding amount committed to YFB ($1.178 million) and receiving notice that another official had "important intel re: Yolo food bank [sic]" for a private call. Dkt. No. 82-1 at **Obj. Ex. 6** at COUNTY000821. That text sequence confirms advance coordination and deliberate identification of the ARPA funding as a specific financial lever to be deployed against YFB—two days before the letter that used that lever was transmitted. *See also* Complaint at ¶ 35(a)-(u).

- On March 15, 2022, in a contemporaneous text thread, Saylor referred to the pressure plan on YFB as "little birds are chirping," signaled to his fellow Supervisor Sandy that a campaign was underway, and asked that those communications remain "not for attribution yet." *Id*. at COUNTY000770-771. *See also* Complaint at ¶ 35(h).

- On March 17, 2022—the day before the letter—Saylor allegedly placed a direct call to YFB Board Chair Tom Muller in which he explicitly threatened to withhold County funds from YFB "until YFB addresses the problem with Plaintiff Bisch." Complaint at ¶ 48(c)(ii). *See also* Complaint at ¶ 35(h).

- On April 27, 2022, Saylor and Villegas were texting in real time about which cities were being supposedly cut off from food distribution by YFB—not to investigate, but to continue the coordinated pressure campaign. **Obj. Ex. 6** at COUNTY000764. *See also* Complaint at ¶ 35(a)-(u).

- On May 9, 2022, twenty-two days before Plaintiff's termination, Saylor texted Villegas: "Looks like our outreach on the food distribution's at holiday time has struck a chord with the Food Bank board." *Id*. at COUNTY000766. Villegas replied: "Yup. Just got a call from Dan Ramos." *Id. See also* Complaint at ¶¶ 35(s)-(u), 36.

The Complaint's reference to Saylor "propagating the false and defamatory narrative" is not a conclusory allegation in the mode condemned by *Barren* and *Hydrick*. It is a characterization that is fully

supported by specific, documented acts attributed to Saylor individually—acts confirmed by the County's own document production. *Iqbal* requires factual allegations that are "plausibly suggestive" of unconstitutional conduct, not a verbatim transcript of every communication. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The specific text messages, phone calls, and coordination described in the record—and alleged in the Complaint—satisfy that standard as to Saylor by a considerable margin.

### C. The Complaint Specifically and Plausibly Pleads Defendant Rinde's Individual Participation—and His Own Declaration Strengthens the Case Against Him

Defendants argue that Rinde "merely relayed" the March 18, 2022 letter to the YFB Board and that no clearly established law held that transmitting a letter constituted adoption of its contents. *See* Defs.' Objections at 7:24-28.

This argument is factually incorrect on two independent grounds. First, Rinde did not merely relay the letter. On March 17, 2022—the day before the letter issued—Rinde sent his own email to Plaintiff Bisch, in which he communicated concerns that YFB was "possibly terminating or threatening to terminate access to food" for agencies that accepted SB 1383 funding. Complaint at ¶ 35(k); F&R at 46:2-8. That communication was not a transmission of another actor's letter. It was Rinde's own independent communication, made before the letter existed, amplifying the same false narrative that was being coordinated across county and city lines at that moment. Rinde then also pre-announced the letter to city managers on March 17, 2022, inviting them to "voice support along with Yolo County"— confirming his active role in orchestrating the coordinated government response. ECF No. 82 at Section III(C)(7); **Obj. Ex. 5** at COUNTY001997.

Second, the manner in which Rinde transmitted the March 18, 2022 letter removes any suggestion that this was passive conduct. On the morning of March 18, 2022, Plaintiff Bisch responded to Rinde's March 17, 2022 email by categorically denying the allegations, stating in writing that "the statements in your email regarding Yolo Food Bank are inaccurate." Rinde Decl. (ECF No. 40-6) at **Ex. G**. Rinde had Plaintiff's express written denial in hand that same morning. He did not pause. He did not request reconsideration from the Supervisors. He did not investigate. He transmitted the March 18 letter—which made the same allegations Plaintiff had just denied—to every member of Plaintiff's employing Board, copying Defendants Webb, Laurel, Hiatt, and Trepa, on the same day he received Bisch's denial. ECF No. 82 at Section III(C)(7); Dkt. 50-1 at **Bisch Ex. 16**; **Bisch Ex. 17** at BISCH001166.

Transmitting a defamatory communication to the target's employing Board with actual knowledge of a specific written denial from the target—without investigation, without pause, and in coordination with a multi-actor campaign designed to cause that target's termination—is not passive transmission. It is active propagation in the face of known falsity. That is not "merely relaying" a letter.

It is precisely the kind of individual knowing participation that *Taylor* and *Barren* require, and which the Complaint adequately alleges. Complaint at ¶¶ 48(a)-(g).

None of the cases Defendants cite—all of which address complaints containing no specific individual acts—support dismissing a defendant whose individual acts are documented with this precision. The cases stand for the proposition that liability requires individual participation; they do not address situations where individual participation is specifically alleged and corroborated by the defendant's own declarations and the defendant's own documents.

## VI. CONCLUSION

The F&R correctly identified a clearly established body of First Amendment law—anchored in *Coszalter, Aydelotte*, and *Ariz. Students' Ass'n.*—that put Defendants Barajas, Villegas, Saylor, and Rinde on notice that coordinating a sustained defamatory campaign while withholding and threatening to withhold government benefits in retaliation for a private individual's protected whistleblowing was unconstitutional. The F&R did not define the "clearly established" right at an impermissible level of generality; it identified a specific and well-documented constitutional principle governing precisely the kind of coordinated government retaliation the Complaint alleges.

Defendants' objections rest on three errors, each of which this Court should reject. They demand that "clearly established" mean "identical facts"—a standard neither *White* nor *Wilson* endorses, and one that would effectively immunize all government retaliation that takes a novel form. They characterize the conduct alleged as a handful of isolated communications—a characterization that defies the Complaint, the record, and the Defendants' own text messages. And they seek dismissal of Defendants Saylor and Rinde on individual participation grounds, relying on cases that condemned complaints containing no specific allegations—not one, like this, that documents each actor's role, communications, and coordination in detail.

For the foregoing reasons, Plaintiff respectfully requests that this Court overrule Defendants' objections in their entirety and adopt the F&R's analysis denying qualified immunity to Defendants Barajas, Villegas, Saylor, and Rinde.

DATED: March 20, 2026                    Respectfully Submitted by,

SANJIV N. SINGH, APLC                    INDRAJANA LAW GROUP, APLC

By: */s/ Sanjiv N. Singh*                By: */s/ Michael B. Indrajana*
Sanjiv N. Singh                          Michael B. Indrajana
Attorneys for Plaintiff Michael Bisch    Attorneys for Plaintiff Michael Bisch